1

2

3

4                                                          Hon. James L. Robart

5

6

7                       UNITED STATES DISTRICT COURT
                 WESTERN DISTRICT OF WASHINGTON AT SEATTLE

8   JOHN R. BUND II, personally, as Executor of
    the Estate of Richard C. Bund, deceased;
9   MANDY HANOUSEK and GARETT                      No. 2:16-cv-920-JLR
    HANOUSEK, a married couple, and on behalf
10  of others similary situated,                   STIPULATED MOTION TO SEAL
                                                   UNDER LCR 5(g) AND ORDER
11                      Plaintiff,
                                                   NOTED FOR HEARING: JULY 14,
12          vs.                                    2017

13  SAFEGUARD PROPERTIES, LLC, a
    Delaware corporation,
14
                        Defendant.
15

16                              I. INTRODUCTION

17          Pursuant to LCR 5(g)(2) and the protective order in this case, Plaintiffs will file certain

18  documents designated confidential under seal as exhibits to the Declaration of Clay M. Gatens

19  in Support of Plaintiffs' Motion for Class Certification ("Gatens Decl."). The parties jointly

20  request the Court to grant this motion regarding those documents.

21                    II. STIPULATED STATEMENT OF FACTS

22          The parties entered into a stipulated protective order, which the Court signed March 22,

23  2017. Dkt. Nos. 67, 68. The order permits parties to designate documents as confidential, Dkt.

24  No. 68, p. 2 (¶ 2) and p. 4 (¶ 5.3), and to file confidential documents under seal in accordance

25  with LCR 5(g). *Id.*, p. 4.

STIPULATED MOTION TO SEAL UNDER LCR 5(G) -
1
2:16-cv-920 JLR
6136647.doc

On Thursday, June 22, 2017, Plaintiffs' counsel alerted Defendant's counsel that it intended to file documents designated confidential pursuant to the protective order from the following enumerated categories:   Defendant's policies and procedures, as well as its agreements with vendors. *See* Dkt. No. 68, p. 2, ll. 3-8.  The parties conferred pursuant to LCR 5(g)(1)(A) on Wednesday, June 28, 2017, and on Thursday, June 29, 2017, to discuss and to explore alternatives to filing documents under seal.   Attorneys Devon Gray (for Plaintiffs) and Pamela DeVet (for Defendant) conferred via telephone.  The parties certify the foregoing pursuant to LCR 5(g)(3)(A).

Plaintiffs do not challenge Defendant's confidentiality designations in connection with the documents Plaintiffs intend to file in support of their motion for class certification.

## III. AUTHORITY

### A.   This motion to seal complies with the Court's order and the local rule.

A party may file documents under seal if the party also files a stipulated motion to seal the document before or at the same time the party files the sealed document or if a prior court order expressly authorizes filing under seal.  LCR 5(g)(2).  In support of their motion for class certification, Plaintiffs will file confidential documents under seal pursuant to this rule and the stipulated protective order, and both parties request that the Court grant this motion to seal.

### B.   Courts seal confidential business information.

A stipulated motion to seal documents must include a specific statement of the applicable legal standard and reasons for keeping a document under seal.  LCR 5(g)(3)(B). Courts employ two legal standards in motions to seal:  the *compelling reasons* standard and the *good cause* standard. *Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1096–97 (9th Cir.), *cert. denied sub nom. FCA U.S. LLC v. Ctr. for Auto Safety*, 137 S. Ct. 38, 196 L. Ed. 2d 26 (2016).  Under the first, "a court may seal records only when it finds a compelling reason

LEE·SMART
P.S., Inc. · Pacific Northwest Law Offices
1800 One Convention Place · 701 Pike Street · Seattle · WA · 98101-3929
Tel. 206.624.7990 · Toll Free 877.624.7990 · Fax 206.624.5944

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

and articulates the factual basis for its ruling, without relying on hypothesis or conjecture. The court must then conscientiously balance the competing interests of the public and the party who seeks to keep certain judicial records secret." *Id.* (citations and internal punctuation omitted). The second requires only a showing of good cause to seal the documents. *Id.* at 1097.

In past decisions, courts in this jurisdiction have employed the shorthand of "dispositive" versus "non-dispositive" motions, using the stricter standard to analyze whether to seal materials filed in support of dispositive motions. *E.g., Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1179 (9th Cir. 2006). However, the Ninth Circuit does not view this as a mechanistic formulation; the relevant inquiry is "whether the motion is more than tangentially related to the merits of a case." *Ctr. for Auto Safety*, 809 F.3d at 1101.

The parties request that the Court apply the "good cause" standard. Although a trial court considering a motion for class certification may consider the merits of a party's underlying claim to a certain extent, *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351-52 (2011), the focus of a motion for class certification is determining whether the procedural device of a class action is appropriate. *See id.* at 348-49; Fed. R. Civ. P. 23(a), (b). *See also Weidenhamer v. Expedia, Inc.*, No. C14-1239RAJ, 2015 WL 7157282, at *2 (W.D. Wash. Nov. 13, 2015) (good cause existed to seal documents filed to support class certification motion). The questions at issue are not intended to decide the relative merits of the causes of action and defenses alleged. *See Dukes*, 564 U.S. at 348-49. Moreover, a trial court that does certify a class may then decertify it – again without determining the merits of the cause of action. Fed. R. Civ. P. 23(c)(1)(C). A class certification order is "inherently tentative," and the district court "remains free to modify [the order] in the light of subsequent developments in the case." *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 160 (1982).

However, the parties believe that regardless of which legal standard applies, the

STIPULATED MOTION TO SEAL UNDER LCR 5(G) - 3
2:16-cv-920 JLR
6136647.doc

**LEE·SMART**
P.S., Inc. · Pacific Northwest Law Offices
1800 One Convention Place · 701 Pike Street · Seattle · WA · 98101-3929
Tel. 206.624.7990 · Toll Free 877.624.7990 · Fax 206.624.5944

documents at issue are properly filed under seal. The U.S. Supreme Court established that "the right to inspect and copy judicial records is not absolute," and, in particular, "the common-law right of inspection has bowed before the power of a court to insure that its records are not used ... as sources of business information that might harm a litigant's competitive standing." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598, (1978). *See also* Fed. R. Civ. P. 26(c)(1)(G) (protective orders authorized for "a trade secret or other confidential research, development, or commercial information"); *Nat'l Football Scouting, Inc. v. Rang*, 912 F. Supp. 2d 985, 995 (W.D. Wash. 2012) (in Washington, a trade secret is "information that derives economic benefit from not being generally known and is the subject of reasonable efforts to maintain secrecy"). Courts have sealed confidential business information under both legal standards.

In *Selling Source, LLC v. Red River Ventures, LLC*, the district court sealed information related to the propriety business operations and trade secrets. No. 2:09-CV-01491-JCM, 2011 WL 1630338, at *1 (D. Nev. Apr. 29, 2011). The material consisted of detailed information regarding the parties' business operations, customer agreements, corporate structure, the details of plaintiff's customer base and how the company works with and licenses products to its customers, as well as measures it takes to protect its intellectual property. The court applied both the good cause and compelling reasons standards to the documents filed in support of different motions and found that both standards were satisfied because "the parties' interest in protecting their trade secrets and proprietary business practices outweighs the general public interest in public filings" and "the public's interest in understanding the judicial process is outweighed by the possibility that disclosure of these materials could reasonably result in infringement of the trade secrets of [the parties] and their customers." *Id.* at *2, *6.

In re *Elec. Arts, Inc.*, the Court of Appeals reversed the trial court's decision that compelling reasons did not exist to seal the company's pricing terms, royalty rates, and

STIPULATED MOTION TO SEAL UNDER LCR 5(G) - 4
2:16-cv-920 JLR
6136647.doc

LEE·SMART
P.S., Inc. · Pacific Northwest Law Offices
1800 One Convention Place · 701 Pike Street · Seattle · WA · 98101-3929
Tel. 206.624.7990 · Toll Free 877.624.7990 · Fax 206.624.5944

guaranteed minimum payment terms found in a licensing agreement. 298 F. App'x 568, 569–70 (9th Cir. 2008). "Once [the material] is released to the public, [the company] will be irreparably damaged in a way not correctable on appeal." *Id.* The Court of Appeals also found that the information "plainly falls within the definition of 'trade secrets.' A trade secret may consist of any 'formula, pattern, device or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it.'" *Id.* (quoting Restatement of Torts § 757, cmt. B).

In *Eagle View Techs., Inc. v. Xactware Sols., Inc.*, the court found compelling reasons to seal sensitive business information not publicly available, specifically "certain non-public customer identities, royalty information, and stock warrant information," where the parties argued "that this information, if made publicly available, could result in a competitive disadvantage in the market and/or harm the parties' competitive standing or client relations." No. C12-1913RSM, 2015 WL 12940038, at *1 (W.D. Wash. Oct. 29, 2015).

In *Algarin v. Maybelline, LLC*, the court found compelling reasons to seal a company's confidential business data to avoid disclosure to "business competitors seeking to replicate [the company's] business practices and circumvent the time and resources necessary in developing their own practices and strategies. No. 12CV3000 AJB DHB, 2014 WL 690410, at *3 (S.D. Cal. Feb. 21, 2014). *Accord, Sullivan v. Deutsche Bank Americas Holding Corp.*, No. 08-CV-2370 LPOR, 2010 WL 3448608, at *2 (S.D. Cal. Aug. 31, 2010) (likelihood of an improper use by competitors and the proprietary nature of the confidential information are compelling reasons); *Network Appliance, Inc. v. Sun Microsystems Inc.*, No. C-07-06053 EDL, 2010 WL 841274, at *3 (N.D. Cal. Mar. 10, 2010) (compelling reasons exist where disclosure of "detailed information about proprietary procedures" has potential to cause significant harm to party's competitive and financial position within its industry).

LEE·SMART
P.S., Inc. · Pacific Northwest Law Offices
1800 One Convention Place · 701 Pike Street · Seattle · WA · 98101-3929
Tel. 206.624.7990 · Toll Free 877.624.7990 · Fax 206.624.5944

1    In *Weidenhamer v. Expedia, Inc.*, the court found good cause to seal documents relating

2    to Expedia's business practices, such as an "a la carte air administration tool," airline ticketing

3    agreements, and internal sales figures. *Weidenhamer*, 2015 WL 7157282, at \*2.

4    In *Clearly Food & Beverage Co. v. Top Shelf Beverages, Inc.*, the court found good

5    cause to seal confidential business information such as "confidential financial projections,

6    marketing strategies, and business plans, all of which could be used against [the party] by

7    competitors." 102 F. Supp. 3d 1154, 1178 (W.D. Wash. 2015).

8    The court in *BitTitan, Inc. v. Skykick, Inc.* granted the parties' motions to seal

9    proprietary business information. No. C15-0754RSM, 2015 WL 12159149, at \*1 (W.D. Wash.

10   Aug. 14, 2015); *BitTitan, Inc. v. SkyKick, Inc.*, No. C15-0754RSM, 2015 WL 12151073, at \*2

11   (W.D. Wash. July 29, 2015).  Without specifying which standard it used, the court ruled that if

12   released to the public, the information "has the potential to harm the parties' positions in the

13   industry." *BitTitan, Inc.*, 2015 WL 12159149, at \*1.

14        **C.    Good cause and compelling reasons exist to seal Safeguard's confidential
15             business information.**

16   For the purposes of this motion, Plaintiffs do not dispute the facts set out in Safeguard's

17   declaration, cited in this section.  Plaintiffs reserve the right to challenge such assertions in

18   other contexts.

19   Safeguard's interest in protecting its confidential business information outweighs the

20   public's interest in access to court files.  As described in more detail below, the documents

21   represent Safeguard's efforts over more than two decades to develop many aspects of its

22   business.  Decl. of Joe Iafigliola in Supp't of Mot. to Seal ("Iafigliola Decl."), ¶¶ 2-14.

23   Safeguard has acquired and compiled these materials in the course and conduct of its business.

24   *Id.*, ¶ 5.  The materials are proprietary and contain trade secrets and confidential business

25   information, including confidential research and development, and the results thereof.  *Id.*

STIPULATED MOTION TO SEAL UNDER LCR 5(G) -
6
2:16-cv-920 JLR
6136647.doc

LEE · SMART

P.S., Inc. · Pacific Northwest Law Offices
1800 One Convention Place · 701 Pike Street · Seattle · WA · 98101-3929
Tel. 206.624.7990 · Toll Free 877.624.7990 · Fax 206.624.5944

Disclosure of Safeguard's confidential documents and information would permit its competitors to unfairly duplicate Safeguard's processes, compete for its customers, and interfere with its business plan – all because of the fortuity of a lawsuit. *Id.*, ¶ 7. Publicizing it would lead to improper use of the materials by competitors. *Id.* Disclosure would therefore unduly harm Safeguard's competitive standing in the market and its financial position. *Id.*

Safeguard has grown over the past 25 years from a two-employee operation to a national company. *Id.*, ¶ 2. During this time period, Safeguard has carefully cultivated and nurtured its relationships with its clients. *Id.* Safeguard has invested heavily in systems and processes to support its services and growth. *Id.* It has painstakingly developed business strategies and processes, built its vendor network, and cultivated its vendor relationships. *Id.* The documents being filed under seal contain detailed information regarding Safeguard's business operations, specifically how the company works with its vendors and clients. *Id.*, ¶ 5.

Since its founding, Safeguard has developed and maintained a reputation as an industry leader to advance best practices through innovation, raise the profile of the industry, and open the lines of communication between the servicing industry and government officials across the country. *Id.*, ¶ 3. Safeguard's standing as the largest mortgage field service company in the industry means that Safeguard has business competitors seeking to replicate its business practices so as to avoid expending the time and resources necessary to develop their own practices and strategies. *Id.*, ¶ 4.

The documents and information are sensitive and have significant economic value to Safeguard. *Id.*, ¶ 6. That economic value exists, in large part, because Safeguard does not publicly disseminate their contents, but rather vigilantly protects them, and the information they contain, from disclosure to the public in general, and to its competitors in particular. *Id.*

Plaintiffs will file under seal some of Safeguard's policies and procedures. Gatens

LEE·SMART
P.S., Inc. · Pacific Northwest Law Offices
1800 One Convention Place · 701 Pike Street · Seattle · WA · 98101-3929
Tel. 206.624.7990 · Toll Free 877.624.7990 · Fax 206.624.5944

Decl., Exs. 2, 13, 14, 21, 22, 25, 27. The protective order expressly covers Safeguard's policies and procedures. Dkt. No. 68, p. 2, ¶ 2(a)(i). Internal policies, *e.g.*, Gatens Decl. Ex. 25, are not available to the public. Iafigliola Decl., ¶ 8. Employees access them only internally. *Id.*

Safeguard's vendor policies, *e.g.*, Gatens Decl. Ex. 2, 13, and 14, are also kept private. Iafigliola Decl., ¶ 10. The vendor-related policies and procedures contain detailed information about proprietary procedures Safeguard has developed and adapted over the life of the company. *Id.*, ¶ 11. They are the result of Safeguard's extensive research, preparation, and experience in the industry. *Id.* They reflect Safeguard's relationships with its clients, whose requirements must be followed and incorporated into the vendors' agreements. *Id.* The policies and procedures, too, are integrated into the vendor agreements. *Id.* Vendor memoranda, *e.g.*, Gatens Decl. Exs. 21, 22, and 27, are updates and supplements to the policies and procedures, issued when laws or lender requirements change. *Id.*, ¶ 12. They reflect Safeguard's judgment regarding such changes. *Id.* These memoranda are also incorporated into the vendor agreements. *Id.* They are not publicly available. *Id.*, ¶ 10.

Before seeing Safeguard's policies and memorandum updates, a vendor has to complete Safeguard's rigorous application, review, and vetting process. *Id.* The applying vendor must provide certain information about its principals and/or employees, such as contact information and criminal background checks. *Id.* If a vendor is approved, Safeguard and the vendor enter into a written contract. *Id.*

If the vendor is approved, it receives password-protected access to the vendor information storehouse, where it can review the written policies and procedures and existing vendor memoranda. *Id.* Only then will it be eligible to receive ongoing vendor memoranda. *Id.* When the vendor and Safeguard formalize their contractual relationship, the vendor agrees not to disclose or publish non-public material Safeguard provides or makes available to the

LEE·SMART
P.S., Inc. · Pacific Northwest Law Offices
1800 One Convention Place · 701 Pike Street · Seattle · WA · 98101-3929
Tel. 206.624.7990 · Toll Free 877.624.7990 · Fax 206.624.5944

vendor, including reference guides, policies, memoranda, procedures, and guidelines.  *E.g.,* Gatens Decl., Ex. 15, pp. 8-9 (Safeguard 714-15), ¶ 27(a)(iii).

Plaintiffs will file under seal Safeguard's master services agreement with one of the vendors. Gatens Decl., Ex. 15. Safeguard's agreements with vendors are expressly covered by the protective order. Dkt. No. 68, p. 2, ¶ 2(a)(i). They are not publicly available. Iafigliola Decl., ¶ 10. The vendor agreement contains the general terms of the relationship between Safeguard and the vendor, including that vendor's pricing terms and minimum payment terms. *Id.*, ¶ 13. While the document Plaintiffs plan to file under seal is particular to one vendor, other vendors have signed similar agreements. *Id.* The agreement is the product of Safeguard's research and practices during its long history of work with vendors in the industry. *Id.*

Finally, Plaintiffs will file under seal a spreadsheet of Safeguard's vendors which have serviced properties in Washington. Gatens Decl., Ex. 4. Safeguard's extensive vendor network is part of what makes it an attractive choice for clients. Iafigliola Decl., ¶ 14. This compilation represents extensive work on Safeguard's part, including vetting the vendors, correcting their missteps when possible, terminating the contracts when necessary, and otherwise maintaining the relationships.  *Id.* The compilation contains information about hundreds of vendors, including their contact information and their status as active or inactive vendors. *Id.* Laying this compilation bare for public consumption would permit Safeguard's competitors to benefit from Safeguard's extensive efforts to identify reliable vendors and weed out others – and give competitors the means to contact all of them immediately. *Id.*

Safeguard's extensive investment in time and expense in compiling and preparing the materials at issue, its vigilance in keeping them from being published, and the potential for misuse of the information and harm to Safeguard's competitive standing and financial position are compelling reasons – and good cause – to seal the confidential documents.

LEE·SMART
P.S., Inc. · Pacific Northwest Law Offices
1800 One Convention Place · 701 Pike Street · Seattle · WA · 98101-3929
Tel. 206.624.7990 · Toll Free 877.624.7990 · Fax 206.624.5944

1

## IV. CONCLUSION

2     For the foregoing reasons, the parties jointly request that the Court grant the motion to

3 seal the documents pursuant to the protective order and the requirements under the local rules.

4     Respectfully submitted this 30th day of June, 2017.

5                 LEE SMART, P.S., INC.

6

7                 By:/s *Pamela J. DeVet*

8                     Marc Rosenberg, WSBA No. 31034
                    Pamela J. DeVet, WSBA No. 32882
                    Of Attorneys for Defendant

9                     Safeguard Properties Management, LLC
                    Lee Smart, P.S., Inc.

10                     701 Pike Street, Suite 1800
                    Seattle, WA 98101

11                     206-624-7990
                    mr@leesmart.com

12                     pjd@leesmart.com

13

    Respectfully submitted this 30th day of June, 2017.

14

15                 JEFFERS, DANIELSON, SONN &
                AYLWARD, P.S.

16

17                 By: s/Clay M. Gatens

18                     Clay M. Gatens, WSBA No. 34102
                    Sally F. White, WSBA No. 49457

19                     Devon A. Gray, WSBA No. 51485
                    Jeffers, Danielson, Sonn & Aylward, P.S.

20                     2600 Chester Kimm Road
                    P.O. Box 1688

21                     Wenatchee, WA 98807-1688
                    Telephone: 509-662-3685

22                     Fax: 509-662-2452
                    Email: ClayG@jdsalaw.com

23                     SallyW@jdsalaw.com
                    DevonG@jdsalaw.com

24                     Attorneys for Plaintiffs

25

LEE·SMART
P.S., Inc. · Pacific Northwest Law Offices
1800 One Convention Place · 701 Pike Street · Seattle · WA · 98101-3929
Tel. 206.624.7990 · Toll Free 877.624.7990 · Fax 206.624.5944

1

2

## ORDER OF THE COURT

3

It is so ordered.

4

Dated this 5th day of July , 2017.

5

6

_____
THE HONORABLE JAMES L. ROBART
UNITED STATES DISTRICT JUDGE

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

STIPULATED MOTION TO SEAL UNDER LCR 5(G) -
11
2:16-cv-920 JLR
6136647.doc

LEE·SMART

P.S., Inc. · Pacific Northwest Law Offices

1800 One Convention Place · 701 Pike Street · Seattle · WA · 98101-3929
Tel. 206.624.7990 · Toll Free 877.624.7990 · Fax 206.624.5944

**CERTIFICATE OF SERVICE**

I hereby certify that on the date provided at the signature below, I electronically filed the preceding document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following individuals:

Mr. Clay Gatens
Ms. Sally F. White
Ms. Devon A. Gray
Jeffers, Danielson, Sonn & Aylward, P.S.
2600 Chester Kimm Road
Wenatchee, WA 98801-811
clayg@jdsalaw.com
leel@jdsalaw.com

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, to the best of my knowledge.

DATED this 30th day of June, 2017 at Seattle, Washington.

LEE SMART, P.S., INC.

By: /s Pamela J. DeVet
    Marc Rosenberg, WSBA No. 31034
    Pamela J. DeVet, WSBA No. 32882
    Of Attorneys for Defendant
    Safeguard Properties Management, LLC
    Lee Smart, P.S., Inc.
    701 Pike Street, Suite 1800
    Seattle, WA 98101
    206-624-7990
    mr@leesmart.com
    pjd@leesmart.com

**LEE·SMART**
P.S., Inc. · Pacific Northwest Law Offices
1800 One Convention Place · 701 Pike Street · Seattle · WA · 98101-3929
Tel. 206.624.7990 · Toll Free 877.624.7990 · Fax 206.624.5944