UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JOHN R. BUND II, et al., and on
behalf of others similarly situated

               Plaintiffs,

    v.

SAFEGUARD PROPERTIES LLC,

               Defendant.

CASE NO. C16-920 MJP

ORDER ON:
  (1) MOTION TO CERTIFY
      CLASS AND MOTION TO
      STRIKE
  (2) MOTION TO DISMISS
      INJUNCTIVE RELIEF
      CLAIMS

The above-entitled Court, having received and reviewed:

1.  Plaintiffs' Motion to Certify Class (Dkt. No. 86), Defendant's Response (Dkt. No.
    97), Plaintiffs' Reply (Dkt. No. 123), Plaintiffs' Notices of Supplemental Authority
    (Dkt. Nos. 166 and 187), and Defendant's Motion to Strike Material in Plaintiffs'
    Reply Brief (Dkt. No. 128);

2.  Defendant's Motion to Dismiss Claims for Injunctive Relief (Dkt. No. 149),
    Plaintiffs' Response (Dkt. No. 163), and Defendant's Reply (Dkt. No. 169);

all attached declarations, exhibits, and relevant portions of the record; and having heard oral

argument thereon, rules as follows:

IT IS ORDERED that Plaintiffs' motion to certify a class is GRANTED IN PART; to wit, the Court certifies a class which is defined as:

> All current and former citizens of Washington State who own or owned residential property in Washington State subject to a loan that was in default, which residence was entered by Safeguard or its agents and the lock(s) changed prior to completion of a foreclosure and within the applicable statute of limitations.

IT IS FURTHER ORDERED that Plaintiffs' motion to certify a sub-class defined as

> All current and former citizens of Washington State who own or owned real property in Washington State subject to a loan that was in default, which property was, at any time within the applicable statute of limitations entered upon by Safeguard or its agents prior to the completion of a foreclosure, and during which entry personal property located on the property was removed by Safeguard or its agents.

is DENIED.

IT IS FURTHER ORDERED that Defendant's motion to strike the material associated with Plaintiffs' reply brief is DENIED.

IT IS FURTHER ORDERED that Defendant's motion to dismiss Plaintiffs' claims for injunctive relief is DENIED as premature.

## Background

Defendant Safeguard Properties LLC ("Safeguard") provides property-related services on defaulted, pre- and post-foreclosure properties to lending institutions and loan servicers throughout Washington State; its services include determining the occupancy status of the properties, securing those considered to be vacated, and removing debris/personal property. Dkt. No. 82, Third Amended Complaint ("TAC"), ¶¶ 1.1, 1.2. Safeguard provides these services through a wide network of vendors. Dkt. No. 87, Gatens Decl. at ¶ 10, Ex. 4.

Plaintiffs allege that information obtained through discovery reveals pre-foreclosure activity (including interior occupancy inspection, property preservation actions – e.g., changing the locks on the doors, winterizing, and/or boarding up the windows -- or removal of personal

property) by vendors employed by Safeguard in over 18,000 homes during the class period.  Id. at ¶ 18, Ex. 11.  Plaintiffs maintain that the information obtained from Safeguard "readily identifies each member of the Class and their property address."  Dkt. No. 86, Motion at 14.

Safeguard has developed a system of uniform policies and practices for conducting property-related activities (Id. at Exs. 2, 13, 14) which are utilized by all its vendors on their assignments for the company.  Id., Ex. 3, Depo of Meyer at 23:18-24:20, 34:25-35:9.  In 2016, the Washington Supreme Court declared that provisions in a trust deed permitting entry onto an encumbered property after default but prior to foreclosure (including activities like changing the locks) were an invalid interference with a homeowner's exclusive right to possession.  Jordan v. Nationstar Mortgage, LLC, 185 Wn.2d 876 (2016).  The Washington Supreme Court further found that entry onto an encumbered property prior to the completion of foreclosure constituted "possession" in violation of state law.  Id. at 888.

Plaintiffs allege that Safeguard orders its vendors to enter the properties of its class members and change the locks prior to completion of foreclosure, in violation of Jordan as well as common law and statutory prohibitions against trespass.  TAC, §§ VII and VIII.  Plaintiffs further allege that Safeguard's practices (including forcible non-consensual entry into homes, destruction of locks, and conversion of personal property), combined with generating revenues from the practices at the homeowners' expense constitute "unfair and deceptive acts" in contravention of the CPA.  Id. at § IX.  Finally, Plaintiffs allege that the removal of personal property from the home of the potential class members prior to foreclosure amounts to conversion.  Id. at § X.

Safeguard indicates that their practices have changed since Jordan.  See Dkt. No. 107, Meyer Depo. at 86:2-87:17.  While Defendant claims in its responsive briefing that presently

"Safeguard and its Clients generally do not order or permit removal of personal property until after foreclosure" (Dkt. No. 97, Response at 11), testimony of Safeguard's 30(b)(6) representative indicates that, if a client directs that personal property be removed from a property, Safeguard will order its vendors to do so. Dkt. No. 107, Meyer Depo. at 78:23-79:1.

### Discussion

## Motion for Class Certification

There are four prerequisites to the certification of any class: numerosity, commonality, typicality and adequacy of representation. FRCP 23(a); Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 346 (2011)("Dukes"). Additionally, at least one of the sections of FRCP 23(b) must be satisfied – Plaintiffs indicate from the outset that they seek certification under FRCP 23(b)(3), requiring proof that (1) questions of law or fact common to class member predominate over questions affecting only individual members, and (2) class litigation is the superior method of adjudication.

### *FRCP 23(a)*

#### 1. Numerosity

Plaintiffs initially cited to the spreadsheet created from the data supplied by Defendant during discovery for their claim that there are over 18,000 homes which were entered and locks changed. Gatens Decl. at ¶ 18; Ex. 11. They cite to case law finding numerosity in proposed classes of forty or more members; e.g., Toering v. EAN Holdings, LLC, 2016 WL 4765850, *2 (W.D. Wa. Sept. 13, 2016).

Defendant objects on two grounds. First (citing to the class definition regarding properties "entered upon by Safeguard *or its agents*" [emphasis supplied]), it argues that (1) Safeguard itself does not enter anyone's property and (2) the vendors which performed services

on its behalf were independent contractors, not agents.  The second point will be analyzed in greater depth in the FRCP 23(b)(3) section *infra*; suffice it to say at this point that the Court is not persuaded.  Under either an actual or apparent agency analysis, the vendors are Defendant's agents.

Second, Safeguard argues that the spreadsheet data which it provided Plaintiffs is "inconclusive," that they have a list of work orders that might or might not have been completed[1] and that it would require a time-intensive manual search – file by file – to determine which jobs belonged within the class qualification.  While the Court is not entirely convinced that class members cannot be identified through a refined cross-matching of data which Defendant has in its possession[2], it is not necessary at this point.

Plaintiffs have produced evidence of a "Complaint Log" supplied by Defendant (Dkt. No. 87-2, Ex. 26) which "identifies a number of complaints submitted by consumers regarding various property-related activities."  (Dkt. No. 87, Declaration of Gatens, ¶ 35.)  While not all of the complaints concern activities which fall within parameters of the proposed class definition, the Court is satisfied that there are well in excess of forty (the number found minimally sufficient in Toering to satisfy the class numerosity requirement) involving complaints concerning entry into the residence related to the changing of locks within the statutory time limits for this proposed class.  In addition to listing the date and nature of the complained-of activity, the log lists the names and contact numbers of the complaining parties.

---

[1] At oral argument, Defendant explained in greater detail that, while a work order might indicate that it was "completed," such a designation did not establish the *nature* of the work which had been done; i.e., "completed" could mean that a vendor had visited the property, found it occupied, and on that basis <u>not</u> done the work which had been requested by Safeguard.

[2] For example, cross-matching "closed" work orders with invoices of fee payments to identify fee amounts which correspond to the fees habitually charged for changing locks would yield a list of residences where the homes had actually been entered and re-keyed pursuant to orders by Safeguard.

For purposes of class certification, the numerosity requirement has been established.

    2.  <u>Commonality</u>

Plaintiffs must demonstrate that the claims of their proposed class "depend on a common contention" such that "determination of its truth or falsity will resolve an issue that is central to the validity of each claim in one stroke." <u>Toering</u>, *supra* at *3 (quoting <u>Mazza v. Amer. Honda Motor Co., Inc.</u>, 666 F.3d 581, 588 (9th Cir. 2012), and <u>Dukes</u>, 564 U.S. at 349-50).

Plaintiffs provide a series of question which they contend present "common questions of law and fact:"

1. Were Safeguard's common practices/procedures unfair and deceptive?
2. Must Safeguard compensate class members for damage resulting from forcible entries and lock changes?
3. Is Safeguard liable to the class for restitution of the fees it received from its clients for the pre-foreclosure activities?
4. Is Safeguard liable for the personal property converted by its agents in pre-foreclosure seizures?
5. Did Safeguard take possession of member homes prior to foreclosure?
6. Is Safeguard liable for reasonable rents to class members for the time it possessed their home pre-foreclosure?
7. Did Safeguard wrongfully commit waste or injury to the class members' property pre-foreclosure?
8. Is Safeguard liable for treble damages and attorneys' fees under the CPA?

*See* Motion at 24-25.

Defendant argues that Questions 2, 3, 4, 6, and 8 all pose variations of the question "what remedies should Plaintiffs get?" and that such questions cannot constitute "common questions of law." *See* <u>Dukes</u>, 564 U.S. at 359. The Court agrees: questions which assume that a common question of liability has been satisfactorily asked and answered for a class cannot qualify as common questions of law.

1    Nevertheless, the Court finds that the questions concerning whether the actions of the

2    vendors employed by Safeguard (specifically, the entry into the homes of class members for the

3    purpose of changing the locks) constituted a form of trespass and/or "unfair or deceptive acts" as

4    defined by the CPA are questions of law common to all members of the class and susceptible of

5    a common answer.  There is no requirement that the proposed class members "share every fact in

6    common or completely identical legal issues" (Rodriguez v. Hayes, 591 F.3d 1105, 1122 (9th

7    Cir. 2009) – Rule 23(a)(2) requires only "a  single significant question of law or fact."  Abdullah

8    v. U.S. Sec. Assocs., Inc., 731 F.3d 952, 957 (9th Cir. 2013).

9    Defendant argues that the damages which Plaintiffs seek for the class will entail

10   individualized assessments (locks are worth varying amounts, different amounts and values of

11   property may have been damaged, rents vary, etc.).  In the Ninth Circuit, a variable amount of

12   damages between class members will not defeat certification if they are bound by a common

13   question of liability.  ("The amount of damages is invariably an individual question and does not

14   defeat class action treatment;" Blackie v. Barrack, 524 F.2d 891, 905 (9th Cir. 1975).)

15   Furthermore, if the issue of whether Defendant is liable for the damages can be resolved on a

16   common basis, then the matter of amount of damages can if necessary be bifurcated into a

17   separate, non-class proceeding.  Jiminez v. Allstate Ins. Co., 765 F.3d 1121, 1128 (9th Cir.

18   2017).

19   The Court is satisfied that Plaintiffs have meet their burden of establishing commonality

20   for purposes of class certification.

21

22

23

24

### 3. Typicality

FRCP 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class."

> The test of typicality is whether other members have the same or similar injury whether the action is based on conduct which is not unique to the named plaintiffs and whether other class members have been injured in the same course of conduct.

Ellis v. Costco Wholesale Corp., 657 F.3d 970, 984 (9th Cir. 2011)(citation omitted).  It is not a requirement in the Ninth Circuit that the members' injuries be identical: claims are considered "typical" "if they are reasonably co-extensive with those of absent class members; they need not be substantially identical."  Hanlon v. Chrysler Corp., 150 F.3d 1011, 1020 (9th Cir. 1998).

Plaintiffs' allegations arise out of a course of conduct which is similar to that contained in the class description; i.e., the pre-foreclosure inspections of defaulted properties.  Safeguard does not contest the similarity of its actions as regards the potential members of the class (i.e., that it routinely sent its vendors onto pre-foreclosure properties to perform inspections), but instead asserts that the named Plaintiffs have unique challenges and defenses which are not applicable to all the members of the class, and thus they are not typical.

*Bund*

Safeguard argues that Bund is subject to unique defenses.  One of them concerns the fact that the allegedly missing items are Bund's personal property, therefore "the Estate of Richard Bund" (whom John Bund appears as a representative of) is not a real party in interest to that claim.  Plaintiffs conceded this at oral argument, but since the Court does not intend to certify the "conversion" sub-class, the point is a moot one.

The Court does find that, based on his claims regarding entry into the home for purposes of changing the locks, Bund remains a typical class member as regards the trespass/CPA claims. Defendant argues in this regard that, because Bund (presumably again in his capacity as representative for the Estate of Richard Bund) was a certified class member in the <u>Jordan</u> case, he is at risk to lose both standing and incentive if that class is awarded damages (which Defendant represents has, in fact, recently occurred).

Defendant raised two possible issues in regard to Bund's "dual status" as a member of this class and the <u>Jordan</u> class: (1) the possibility of a double recovery of damages and (2) whether pursuing claims against Nationstar and Safeguard in separate lawsuits represented an impermissible practice of "claim splitting." While the Court is concerned with the public policy implications represented by the prosecution of multiple separate CPA lawsuits against multiple defendants, neither side has had an opportunity to fully brief these issues, and their resolution will await another day. At this point, the Court will find that Bund satisfies the "typicality" requirement for this class.

*Haynes*

Safeguard argues that this Plaintiff is subject to unique defenses which render her atypical of the proposed class; namely, (1) she gave her consent to the inspection ordered for her home, and (2) "no work order for pre-foreclosure property preservation services resulted in entry into her home." Response at 21. The first objection appears to concern an incident about which Haynes is <u>not</u> complaining (i.e., she does not contest that, at some point <u>following</u> the conduct of which she complains, there was a consensual entry onto her property).

It became apparent at oral argument, however, that Haynes does not dispute the truth of the second objection. Instead, Plaintiffs take the position that the cost and property injury associated with the removal of the Safeguard sticker which vendors employed by Defendant place on the homes they inspect is sufficient to satisfy the damage requirement of common law and statutory trespass. On this basis – the argument goes – even defaulted homeowners whose homes were not forcibly entered and the locks changed (but were, instead, merely externally inspected) qualify as class members.

Plaintiffs presented no legal authority in support of this theory and the Court is unconvinced that the *de minimis* nature of any injury to a house left by the Safeguard sticker is sufficient to satisfy the damages requirement of a trespass cause of action.[3]  On this basis, the Court finds that Haynes is not a typical class member. The Court further finds, based on the same rationale, that Plaintiffs should not be permitted to maintain a class whose membership includes persons whose property was entered upon without permission prior to foreclosure but subject only to an external inspection (i.e., no home entry) and "damaged" only by the placing of a sticker on the exterior of the home. The Court will modify the class definition accordingly.


*Hanouseks*

These two named plaintiffs are the subject of a separate summary judgment motion seeking dismissal of their claims. As evidenced by the Court's ruling on that motion (*see* Dkt. No. 203), the Court agrees with Defendant that it is entitled to summary judgment dismissing the

---

[3] In fact, Plaintiffs conceded at oral argument that, if the Court were unwilling to accept the "Safeguard sticker = property damage" theory, Haynes would not qualify as a typical class member.

Hanouseks' claims with prejudice. On that basis, the Court has no need to analyze whether the Hanouseks are typical class members under FRCP 23(a)(3).

In summary, while the claims of the Hanouseks and Ms. Haynes are not typical of the proposed class, the Bund claim relating to entry into the house for purposes of changing locks is typical of the proposed class and the Court finds that Plaintiffs have satisfied that element.

### 4. Adequacy

This element of class certification requires a finding that the named plaintiffs and their counsel (1) have no conflicts of interest with other class members and (2) will prosecute the action vigorously on behalf of the class. FRCP 23(a)(4); Ellis, 657 F.3d at 985; Hanlon, 150 F.3d at 1020. Since the only remaining named Plaintiff is Bund, this factor will be analyzed as regards him alone.

Specific to Bund, Safeguard asserts the argument (similar to the one raised concerning his "typicality" *supra*) that his status as a member of the Jordan class creates a conflict with other potential class members both in terms of its impact on his standing and his incentive to prosecute the action vigorously. Concerning standing, the Court has already made its position clear. As regards his incentive to prosecute the matter vigorously, Defendant has presented no proof that whatever award Bund might have received pursuant to the resolution of Jordan is of such a size that Bund will be stripped of his need for further funds in perpetuity; i.e., the Court doubts that Bund will fail to seek further compensation eagerly, and Defendant has provided no evidence (outside of its theoretical speculation) to the contrary.

Safeguard raises other arguments concerning the general adequacy of all the named plaintiffs. One is an argument that, because the asserted damages of the proposed plaintiffs

(and, presumably, the class as a whole) will vary, the class representatives will have variable incentives to pursue relief according to how much they will be compensated. The Court fails to see the logic of this: before <u>anyone</u> is compensated, liability has to be established. As precedent establishes, a varying amount of damages will not suffice to disqualify a class from certification; nor will it operate to render an otherwise satisfactory class representative somehow inadequate.

In summary, the Court finds that Plaintiffs have satisfied the numerosity and commonality elements of FRCP 23(a) and that Bund qualifies as a typical and adequate representative of the class. For the reasons stated in this order, however, the Court will certify a class with a narrower definition than that proposed by Plaintiffs, and will decline to certify the Plaintiffs' proposed sub-class.

### ***FRCP 23(b)(3)***

Plaintiffs must also satisfy one of the sections of FRCP 23(b) to qualify for class certification. They have chosen only to request certification under FRCP 23(b)(3), which dictates certification upon proof that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and… a class action is superior to other available methods for the fair and efficient adjudication of the controversy."[4] The existence of individual issues, by itself, will not defeat certification; those individual issues must simply be less significant than the common issues and not so unmanageable as to outweigh the benefits of a class litigation approach. <u>Eisenberg v. Gagnon</u>, 766 F.2d 770, 786 (3rd Cir. 1985).

---

[4] Plaintiffs' decision not to seek certification under FRCP 23(b)(2) – class injunctive relief – has led Defendant to seek a ruling dismissing all injunctive claims. *See* Dkt. No. 163. That dispositive motion is analyzed in the section following the class certification analysis.

       1.  <u>Predominance</u>

     "Predominance" exists where "a common nucleus of facts and potential remedies

dominate th[e] litigation." <u>Chamberlan v. Ford Motor Co.</u>, 402 F.3d 952, 962 (9th Cir. 2005).

The predominance analysis is not a merit determination of claims or defenses, nor an assessment

of whether Plaintiffs are likely to succeed. <u>United Steel, Paper & Forestry</u>, 593 F.3d 802, 809

(9th Cir. 2010).

     Plaintiffs argue that the uniformity of the procedures and practices enforced by Safeguard

render this case particularly well-suited to class litigation; the common issue of whether

Safeguard's uniform procedures and practices violate Washington law and common law,

Plaintiffs contend, will predominate over any individual issues.

     Defendant's arguments to the contrary fall into two main categories: (1) predominance of

individual inquiries, and (2) lack of agency.

     Plaintiffs' proposed class (persons whose property was "entered upon by Safeguard or its

agents prior to completion of a foreclosure") is not subject to the criticism that individual

inquiries will predominate over the class issues. The Court is convinced that, using Safeguard's

own records, Plaintiffs have identified (through the "Complaint Logs" at Dkt. No. 87-2) a

sufficiently numerous group of people who have been subject to a uniform practice of entry into

their homes prior to completion of foreclosure for the purposes of changing the locks and that

(with further discovery) the potential for locating an even greater number of people subject to

similar conduct under similar circumstances is strong.[5]

---

[5] One of Safeguard's arguments against certification is that the "wrongfulness" of that activity pre-<u>Jordan</u> has not been established. To the extent that is true, it is a class-wide – not individual – defense and can be addressed in a class action just as effectively as in personal lawsuits.

However, as regards Plaintiffs' proposed sub-class (persons whose homes were "entered upon by Safeguard or its agents prior to completion of a foreclosure, and during which entry personal property located on the property was removed by Safeguard or its agents"), the Court finds that FRCP 23(b)(3) requires that certification be denied. For this sub-class, it is highly likely that individual inquiries would predominate over common questions of fact or law.

In those circumstances where personal property was removed from a premises, the explanations would tend to fall into two categories: (1) the removal was authorized by Safeguard and (2) the removal was not authorized by Safeguard (i.e., the person has been the victim of theft). While it appears that authorized removals may have been tracked in Safeguard's records-keeping,[6] the Court has no difficulty finding that a certain percentage of the "missing personal property" cases are going to come down to instances where there is no record of the removal being authorized but the class member insists that their property was there before the inspection began and was gone after it concluded (in fact, that is exactly the case with the Hanouseks).

Where theft on the part of the vendor can be established, it breaks the chain of agency by which Safeguard could be held vicariously liable (*see below*); nor could Defendant be held responsible for thefts which occur outside the purview of its involvement with the property, but during a period when the premises may have been unoccupied by the class member (which evokes the <u>third</u> possibility of theft of the personal property by unknown third party). The bottom line is that these varying permutations and combinations of possible occurrences set up a scenario where inquiries into the individual circumstances of each class member's loss threaten to overwhelm the common questions of fact and law. On that basis, the Court finds that common

---

[6] In fact, in Defendant's Field Manual there is a specific instruction that no personal property is to be removed from a premises without written authorization (Dkt. No. 88, Ex. 13 at 26).

1  questions of fact and law will not predominate over individualized inquiries as regards the sub-

2  class and it will not be certified.

3      With the proposed sub-class eliminated, the Court still needs to address Safeguard's

4  argument that, as regards the proposed class, (1) the company itself entered no one's home and

5  (2) it cannot be held vicariously liable for the actions of its vendors because of lack of agency.

6  Safeguard's position is that, since the company itself did not enter onto anyone's property, it can

7  only be held *vicariously* liable, which requires proof that the network of vendors employed to

8  execute the company's orders were <u>agents</u> of Defendant.  Safeguard relies on Washington case

9  law holding that "a principal who hires an independent contractor is not liable for harm resulting

10  from that contractor's work.  The crucial distinction is the right to control… Where there is no

11  right to control, then the subordinate party is an independent contractor."  <u>Wilcox v. Basehore</u>,

12  187 Wn.2d 772, 789-90 (2017).

13      Defendant maintains that (1) determination of agency is a factual question that must be

14  decided on a case-by-case basis and (2) the facts of its relationship with its vendors (including

15  contractual language specifically stating that its vendors are independent contractors) indicate

16  that the company does not retain control of its vendors' work.  The Court is not persuaded.

17      Plaintiffs present an impressive array of evidence establishing that Safeguard, as a matter

18  of uniform procedure, retains the right to control every aspect of its vendors' work.  Using

19  depositions from Defendant's employees, Plaintiffs demonstrate that Safeguard controls each

20  vendor's geographic area, the training of those vendors, the details of each work order (including

21  what tools are needed, what vendors can and cannot wear, and when the work must be

22  completed), as well as how the vendors respond to complaints and speak to homeowners or third

23  parties.  The evidence shows that Defendant requires immediate submission of a comprehensive

24

report upon completion of the work order; every report is reviewed and vendors who do not comply with Safeguard's expectations do not get paid.  (*See* Dkt. No. 123, Reply at 6-7.)

There is no doubt in the Court's mind that Defendant exercises a high level of control over its vendors. As for the language inserted into Defendant's vendor contracts identifying them as "independent contractors:" it is the case law in Washington that simply calling a vendor an "independent contractor" in the vendor's contract does not alter the nature of the relationship where the hiring entity has the right to exercise significant control.  Wilcox, 187 Wn.2d at 787. Such is the case here.

Additionally, while there is sufficient evidence to establish the status of the vendors as Safeguard's actual agents, the facts also suffice to create the existence of an "apparent agency," which exists where (1) the defendant's conduct would lead a reasonable person to believe that the acting party was an agent of the defendant and (2) plaintiff relied upon the apparent agency relationship.  Wilson v. Grant, 162 Wn.App. 731, 744.  Safeguard argues that its prohibition against the vendors displaying the Safeguard logo on their clothing, vehicles or business cards establishes that the first element is not true "as a matter of law."  It is not a convincing argument.

In fact (as Plaintiffs point out), following a determination of vacancy, a vendor installs a Safeguard "first time vacancy sticker" instructing the owner to contact Safeguard immediately. Similarly, when a lock is replaced, the vendors place Safeguard's "securing sticker" and sign-in sheet on the door – both state that "Safeguard" entered the property.  Plaintiffs' briefing contains several other examples of procedures which operate to create the impression that it is Defendant which is responsible for the determinations and activities taking place in regard to the homeowner's property.  (*See* Reply at 8.)

This same sort of activity undermines Safeguard's second "apparent agency" argument – that the fact that the homeowners are rarely home when the vendors visit the property renders it unlikely that the class members would have relied on the apparent agency of the vendors. But the fact that all the traces of activity which the vendors leave behind direct the owner to contact Safeguard leads to exactly the opposite conclusion: that whoever was on the property <u>must have</u> been an agent of Safeguard's.

The Court finds, in light of all this evidence, that the class will have no difficulty establishing Safeguard's vicarious liability regarding the proposed class if the vendors' pre-foreclosure conduct of entering the homes and replacing the locks is found to have been tortious and/or a CPA violation.

2. <u>Superiority of a class action</u>

The class must still establish that a class action is superior to any other means of adjudicating this controversy. The Court finds the threshold for that determination is cleared with little difficulty.

Two factors mitigate in favor of the superiority of a class action. One is the size of the potential class. Defendant disputes Plaintiffs' declaration of a class of 18,000+, but even if the class is a fraction of that size, it is still an unwieldy number of lawsuits to prosecute individually. And, because gathering the evidence of the pre-foreclosure work ordered, the pre-foreclosure work completed, and which of those work orders represented a lock change ordered and completed seems at this point to be an achievable goal, large-scale proof of Defendant's activities falling within the (revised) class definition does not appear to be overly burdensome or complex.

Finally, the fact is that the potential class members are uniformly financially distressed (which is why most of them found their homes to be the objects of Defendant's services) and are unlikely to be able to pursue a legal remedy on their own. The Court is far from persuaded by Defendant's argument that its response time to complaints is so swift and efficient that affected members of the potential class would be better off pursuing non-legal resolution of their problems.[7] A class action offers them their only realistic opportunity for redress of any wrongs done to them.

## Conclusion

The main class proposed by Plaintiffs satisfies both the requirements of FRCP 23(a) (numerosity, commonality, typicality and adequacy) and the requirements of FRCP 23(b)(3) – common questions of fact and law predominate over individual questions and a class action is the best way to attain a legal remedy for any wrong potentially done to the class members.

The subclass does not fare as well, primarily because the wrong it is attempting to redress – personal property missing from the premises of the proposed class members – is not amenable to proof on a mass scale and is subject to a variety of individual defenses. The Court declines to certify the sub-class.

**Motion to strike**

Defendant filed a supplemental motion to strike material contained in Plaintiffs' reply brief. (*See* Dkt. No. 128.) The material falls into two categories:

---

[7] Defendant's motion to strike (discussed *infra*) seeks to render inadmissible Plaintiffs' evidence of the difficulty of achieving resolution through Safeguard's administrative channels, but the motion will be denied.

1.  *Declarations from nine fact witnesses not previously disclosed.*  Plaintiffs responded to a single sentence in Defendant's brief, aimed at Plaintiffs' argument that a class action was superior to individual actions ("Because Safeguard strives to timely respond to and resolve claims [*citation omitted*], individuals have an interest in direct resolution;" Response at 29) by filing nine affidavits attesting to Safeguard's non-responsiveness to complaints about their "foreclosure service" tactics.  (*See* Dkt. No. 125-1, Exs. K – S.)

    Defendant protests that these witnesses were previously undisclosed, but provides no legal authority that Plaintiffs are not entitled to use otherwise admissible testimony of witnesses (previously disclosed or not) to controvert arguments raised by Defendant in its responsive briefing.

2.  *Previously undisclosed damages***:** Plaintiffs have indicated they will seek damages in the form of rents paid by class members while wrongfully excluded (pre-foreclosure) from their homes, as well as restitution for "fees" (Defendant identifies them in their motion to strike as "bank fees," but Plaintiffs indicate they are intending to seek restitution for "standard fees and charges for 'allowables' such as lock changes, winterizations, and utility shut-offs" which they maintain were charged to Defendant's clients and then passed along to them (Reply at 10:10-11.))

    Defendant moves that the argument and evidence regarding damages for restitution and recovery of reasonable rents be stricken because those remedies had not previously been identified by Plaintiffs.  This is not an appropriate subject for a motion to strike.  FRCP 12(f), which governs motions to strike, grants the Court authority to strike "an insufficient defense, or any redundant, immaterial, impertinent, or scandalous

matter." The rent/restitution material in Plaintiffs' reply does not fit any of those categories. The case Defendant cites in support of its request (Hoffman v. Constr'n Prot. Svcs., 541 F.3d 3d 1175, 1179 (9th Cir. 2008)) involves a motion in limine to exclude evidence and argument, not a motion to strike.

Defendant's motion to strike the material contained in Plaintiffs' reply brief is DENIED.

**Defendant's Motion to Dismiss Claims for Injunctive Relief**

**Background**

When this matter was originally before the Court in 2015, the class allegations were struck and the matter remanded back to state court. (*See* C15-1773-MJP, Order Granting Motion to Dismiss Class Allegations, Remanding Case to State Court at Dkt. No. 27.) Plaintiff Bund amended his complaint in state court to (1) reinsert the class allegations and (2) add allegations related to injunctive relief under FRCP 23(b)(2). Defendant again removed the action to federal court, where it was eventually reassigned to this Court.

The deadline to move for class certification was July 3, 2017. Plaintiffs timely moved for certification, but under FRCP 23(b)(3) only. Defendant now moves for dismissal of the injunctive relief claims.

**Discussion**

Plaintiffs object to this request on several grounds:

1. *The motion represents an additional dispositive motion in violation of LCR 7(e)(3)*: Defendant justifies this on the grounds that there are four named plaintiffs and multiple causes of action and that addressing them all in a single motion is not possible.

Safeguard has also attempted to address this issue with its pending Motion under LCR 7(e)(3) seeking permission to file more than a single dispositive motion.

2. *The motion represents an ill-disguised attempt to make additional argument against class certification in general:* In fact, Defendant's motion does reiterate several of the arguments it has already made as to why certification should not be granted at all.

3. *That injunctive relief is still necessary:* Plaintiffs allege (with no evidentiary support) that (a) Defendant is continuing to order pre-foreclosure inspections in violation of <u>Jordan</u> and (b) Defendant has failed to remove any of the new locks that it installed in violation of <u>Jordan</u>.

4. ***That, assuming that their motion for class certification is granted, Plaintiffs are entitled to move for modification of that certification order:*** While this is technically correct, it does not mean that Plaintiffs can successfully move for modification any time they want (e.g., on the eve of trial) or that they can at any time advance a legal remedy which they may have plead but for which they have not laid the groundwork prior to trial.

5. *That they will not know if injunctive relief is necessary until they have reviewed the results of a pending RFP ("RFP #6"):* In response, Defendant asserts out that (1) the deadline for class-related discovery has long since passed and (2) RFP #6 concerns information related to their restitution theory of damages (payments which Safeguard made to vendors and then charged to clients which may have been passed along to class members) and has nothing to do with the theories Plaintiffs have advanced related to injunctive relief.

Defendant also asserts some arguments against injunctive relief (e.g., there is no future harm at issue here and Plaintiffs can be adequately – and more appropriately – compensated by monetary damages). The Court will not address those arguments at this time.

The entire motion is premature and unwarranted at this stage of the proceedings. The Court is certifying a class under FRCP 23(b)(3), as requested by Plaintiffs. If there is to be certification under FRCP 23(b)(2), Plaintiffs will have to move to amend the existing order. Should they chose to do so, they can make their legal arguments as to why that should be permitted, Defendant can make its counterarguments and the Court can rule on the merits of the request. None of that has happened. The Court should not and will not rule on the issue as a speculative matter at this time.

Defendant's motion to dismiss Plaintiffs' claims for injunctive relief is DENIED.


**Conclusion**

The Court finds that Plaintiffs have satisfied the elements of FRCP 23(a) and FRCP 23(b)(3) for a class action lawsuit as regards a class defined as:

> All current and former citizens of Washington State who own or owned residential property in Washington State subject to a loan that was in default, which residence was entered by Safeguard or its agents and the lock(s) changed prior to completion of a foreclosure and within the applicable statute of limitations.

The Court further finds that Plaintiffs' proposed sub-class, defined as:

> All current and former citizens of Washington State who own or owned real property in Washington State subject to a loan that was in default, which property was, at any time within the applicable statute of limitations entered upon by Safeguard or its agents prior to the completion of a foreclosure, and during which entry personal property located on the property was removed by Safeguard or its agents.

does not satisfy the requirements of FRCP 23 and declines to certify the sub-class.

Defendant's motion to strike the material contained in Plaintiffs' class certification reply brief is DENIED, as is its motion to strike Plaintiffs' claims for injunctive relief.

The clerk is ordered to provide copies of this order to all counsel.

Dated: January 12, 2018.

Marsha J. Pechman
United States District Judge