1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

The Honorable Marsha J. Pechman

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON

JOHN R. BUND II, personally, as Executor of the
Estate of Richard C. Bund, deceased,  S. SCOTT
JAMES and NOEL L. JAMES, a married couple,
and on behalf of others similarly situated,

       Plaintiffs,

       vs.

SAFEGUARD PROPERTIES, LLC, a Delaware
corporation,

       Defendant.

NO. 2:16-cv-920-JLR

FOURTH AMENDED COMPLAINT
FOR CLASS ACTION AND
DAMAGES

JURY DEMAND

JOHN R. BUND II, as Executor of the Estate of Richard C. Bund, deceased,  S. SCOTT

JAMES and NOEL L. JAMES, a married couple, and on behalf of others similarly situated,

through their attorneys of record, Jeffers, Danielson, Sonn & Aylward, P.S., by Clay M. Gatens

and Devon A. Gray, Daudt Law PLLC, by Michael D. Daudt, and Terrell Marshall Law Group

PLLC, by Beth E. Terrell and Blythe H. Chandler, bring this Fourth Amended Complaint for

Class Action and Damages against Safeguard Properties, LLC, and allege as follows:

JEFFERS, DANIELSON, SONN & AYLWARD, P.S.
Attorneys at Law
(509) 662-3685 / FAX (509) 662-2452
2600 Chester Kimm Road / P.O. Box 1688
Wenatchee, WA  98807-1688

## I.     NATURE OF THE CASE

1.1     Safeguard contracts with mortgage lending and servicing institutions to conduct services on default and pre-foreclosure properties located throughout Washington State that are subject to loans owned, held, or serviced by lending or servicing institutions.

1.2     Specifically, Safeguard is hired by lending and servicing institutions to determine the occupancy status of properties, secure properties deemed vacant or abandoned by Safeguard, remove personal property from within the property, and provide miscellaneous other so-called "property preservation services." Such lending and servicing institutions purportedly derive their authority to conduct such activities from a form deed of trust provision utilized across the industry (the "Entry Provision"). Safeguard purportedly derives its authority to conduct these activities from its clients' Entry Provision.

1.3     Safeguard derives revenue from recovering fees from its clients for completing property preservation and other property related services.

1.4     Such services include but are not limited to:  forcibly entering the property to change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off.

1.5     On July 7, 2016, in *Jordan v. Nationstar Mortgage, LLC*, No. 92081-8 (the "*Jordan* Decision"), the Washington State Supreme Court deemed such form deed of trust provisions unenforceable as contrary to Washington State law, thereby eroding any purported legal justification for Safeguard to even enter upon borrowers' properties.  Exhibit M.

1.6     But even setting aside for the moment the unenforceability of these form deed of trust provisions, the form deed of trust provisions as written do not permit Safeguard's damage to, destruction of, or removal of borrowers' property, and/or denial of the full use and

JEFFERS, DANIELSON, SONN & AYLWARD, P.S.
Attorneys at Law
(509) 662-3685 / FAX (509) 662-2452
2600 Chester Kimm Road / P.O. Box 1688
Wenatchee, WA  98807-1688

enjoyment of borrowers' real and/or personal property prior to the completion of foreclosure.

1.7     Yet, Safeguard has a common course of conduct whereby it wrongfully and forcibly enters borrowers' properties prior to completion of a foreclosure to perform destructive and disruptive acts, including destroying the existing lock(s) on a borrower's home, removing the borrower's destroyed locks from the home, damaging property inside the home, and removing the borrower's personal property from the home.

1.8     These actions result in damage to the borrower's real and personal property, removal of the borrower's personal property, and interference with the borrower's full use and enjoyment of their real and personal property.

1.9     Safeguard conducts these actions and this common course of conduct by and through property preservation and property inspection vendors, which vendors enter properties and conduct property preservation services on Safeguard's behalf.

1.10    Safeguard's vendors are subject to Safeguard's comprehensive policies that regulate most aspects of the vendor's relationship with Safeguard, including its activities conducting property preservation and other property-related services.

1.11    Safeguard purportedly instructs its property preservation vendors that they may not remove any non-hazardous personal property from properties prior to the completion of any foreclosure during pre-foreclosure property entries.

1.12    Safeguard's common course of conduct and actions are widespread throughout Washington.  Safeguard recently reported that, between October 2011 and October 2015, there were "53,467 properties in Washington that Safeguard might have entered during that time period," and of the borrowers who then made claims against Safeguard requesting compensation for damaged properties, "No claimant in that time period demanded less than

JEFFERS, DANIELSON, SONN & AYLWARD, P.S.
Attorneys at Law
(509) 662-3685 / FAX (509) 662-2452
2600 Chester Kimm Road / P.O. Box 1688
Wenatchee, WA  98807-1688

$1,000.  More than 85 percent of the claimants demanded more than $1,000.  More than 75 percent demanded $1,500 or more.  More than 50 percent of the claimants demanded more than $3,500."  Exhibit L.

1.13    Thus, not only does Safeguard have no legal right to be present on borrowers' properties in advance of the completion of any foreclosure proceedings, but Safeguard regularly acts beyond the scope of the unenforceable and illegal form deed of trust provisions relied upon by Safeguard.

1.14    Safeguard's common course of conduct and common practices constitute common law trespass, intentional trespass, negligent trespass, negligent supervision,  and violate Washington's Consumer Protection Act ("CPA") (RCW 19.86, *et seq.*), all in violation of Washington State law.

## II.    PARTIES

2.1    Representative Plaintiff John Bund.   JOHN R. BUND II ("Mr. Bund"), an individual, is the Executor of the Estate of Richard C. Bund, deceased (the "Estate").

2.2    The Estate owns the real property located at 2485 Timaru Lane, Oak Harbor, Washington (the "Bund Property").

2.3    The Estate has agreed to act as Class representative in this matter as "Plaintiff Bund" or "Representative Plaintiff Bund."

2.4    Representative Plaintiffs S. Scott James and Noel L. James.  S. SCOTT JAMES and NOEL L. JAMES (collectively, "the Jameses") are a married couple who owned real property located at 1005 Harvard Avenue, Wenatchee, Washington (the "James Property").

2.5    The Jameses have agreed to act as Class representatives in this matter as "Plaintiffs James" or "Representative Plaintiffs James."

FOURTH AMENDED COMPLAINT FOR CLASS ACTION
AND DAMAGES (2:16-cv-920-MJP)
Page 4
42O6829

JEFFERS, DANIELSON, SONN & AYLWARD, P.S.
Attorneys at Law
(509) 662-3685 / FAX (509) 662-2452
2600 Chester Kimm Road / P.O. Box 1688
Wenatchee, WA  98807-1688

2.6     <u>Defendant</u>.   Defendant SAFEGUARD PROPERTIES, LLC ("Safeguard" or "Defendant") is a Delaware limited liability company, with its primary place of business at 7887 Safeguard Circle, Valley View, Ohio 44125.

2.7     Safeguard transacts business throughout the state of Washington, and contracts with and employs agents throughout Washington to provide property inspection and preservation services for homes located in Washington that are in default under the terms of their loan agreement, but which homes have not been foreclosed upon.

2.8     Safeguard is a citizen of Delaware and Ohio.

2.9     Safeguard is the nation's largest privately-held mortgage field services provider.

2.10    For purposes of this Third Amended Complaint, any references to Safeguard shall mean such acts and practices that were performed by Safeguard, its employees, agents, representatives, subcontractors, and all persons or entities directly or indirectly under Safeguard's control.

## III.    JURISDICTION AND VENUE

3.1     This is an action for damages.  Jurisdiction is vested in this Court pursuant to 28 U.S.C. §§ 1332(d), 1441(a), 1453(b).

3.2     Venue is appropriate in this Court pursuant to 28 U.S.C. §§ 1391(b)(2), 1441(a); LCR 3(d)(1).

## IV.    BACKGROUND REGARDING SAFEGUARD'S COMMON POLICIES AND PRACTICES

4.1     For purposes of this Third Amended Complaint, "default properties" shall refer to homes where the borrower is in default on their mortgage, but no foreclosure has been initiated.

4.2     Properties "pre-foreclosure" shall refer to homes where a judicial or non-judicial

JEFFERS, DANIELSON, SONN & AYLWARD, P.S.
Attorneys at Law
(509) 662-3685 / FAX (509) 662-2452
2600 Chester Kimm Road / P.O. Box 1688
Wenatchee, WA  98807-1688

foreclosure has been initiated, but not completed.

4.3     "Foreclosed properties" shall refer to properties that have had a judicial or non-judicial foreclosure completed and a foreclosure and sale at law has been completed.

### *Safeguard's Unfair and Deceptive Business Practices*

4.4     On its website, Safeguard advertises its services to potential clients as follows:

> Safeguard leads the industry in delivering a full spectrum of inspection, maintenance, preservation, property registration, repairs and rehab services on vacant, defaulted and foreclosed properties.
>
> What distinguishes Safeguard is our commitment to delivering excellent customer service and performing at the highest levels of quality, timeliness and cost-effectiveness. Our investment in technology supports that commitment, with faster and more accurate property updates and data-gathering capabilities that inform our clients' and our own decision-making processes.
>
> Through a process of ongoing training and rigorous quality control, both for our national vendor network and our internal staff, we measure and monitor all aspects of service delivery to assure that we continuously meet or exceed industry guidelines and client expectations.

www.safeguardproperties.com/services.aspx (last accessed May 23, 2016)

4.5     Safeguard provides to mortgage lenders and servicers property inspection and preservation services for delinquent, pre-foreclosure, and foreclosed properties.

4.6     All borrowers' upon whose property Safeguard enters are subject to substantively the same form Entry Provision that Safeguard relies upon to: (i) enter borrowers' properties in the event of default but prior to completion of foreclosure; and (ii) conduct its illegal services.

4.7     As will be further explained, on July 7, 2016, in *Jordan v. Nationstar Mortgage, LLC*, No. 92081-8, the Washington State Supreme Court held such form Entry Provisions

unenforceable as contrary to Washington State law, thereby eroding any purported legal justification for Safeguard's entry onto borrowers' properties, forcible entry into the borrowers' homes, removal of borrowers' locks, installation of Safeguard's lock and lock boxes, damage to borrowers' homes, and removal of borrowers' personal property prior to the completion of foreclosure.  Exhibit M.

### *Safeguard's Retention of Subcontractors*

4.8     Safeguard's involvement with a residential property usually begins once a homeowner becomes delinquent or defaults on his or her mortgage.

4.9     Upon that occurrence, Safeguard is retained by a lending or servicing institution to perform inspection and preservation services on the home.

4.10    Safeguard performs such services through a network of subcontractors trained and supervised by Safeguard via a common set of practices.

4.11    Upon a Washington borrower's delinquency or default, Safeguard will instruct a Washington subcontractor to inspect the home to determine its occupancy status.

4.12    Safeguard does not instruct its vendors on making determinations or distinctions between "vacant" homes versus "abandoned" homes.

4.13    Once the home is deemed "vacant" or "abandoned," Safeguard instructs its subcontractors to forcibly enter the home and perform services, such as securing the home by boarding up the doorway or windows, turning off utilities to the home, and placing lockboxes or padlocks on the doors to the home.

4.14    Such common instructions also include that the subcontractor should forcibly enter the home to perform destructive acts, including destroying and removing existing lock(s) on a home, damaging doors or smashing windows if necessary for entry, and removing personal

JEFFERS, DANIELSON, SONN & AYLWARD, P.S.
Attorneys at Law
(509) 662-3685 / FAX (509) 662-2452
2600 Chester Kimm Road / P.O. Box 1688
Wenatchee, WA  98807-1688

property found in the home.

4.15    These common actions result in damage to the borrower's real and personal property, interference with the borrower's full use and enjoyment of the home, removal of personal property located within the home, and they exceed the scope of any form deed of trust provision relied upon by Safeguard when instructing its agents to conduct preservation services upon a borrower's home.

4.16    Subcontractors perform these services as agents of Safeguard and pursuant to specific common orders and directives from Safeguard.

4.17    Safeguard promulgates and utilizes extensive and comprehensive policies, procedures, and manuals to regulate its vendors' conduct. It retains the right to control every aspect of its vendors' work. For example, among other things, Safeguard's policies and procedures purport to control each vendor's geographic area, the training of those vendors, the details of each work order (including what tools are needed, what vendors can and cannot wear, and when the work must be completed), as well as how the vendors respond to complaints and speak to homeowners or third parties. Safeguard requires each vendor immediately submit a comprehensive report upon completing each work order; every report is reviewed and vendors who do not comply with Safeguard's expectations do not get paid. Safeguard's policies and procedures purportedly prohibit vendors from removing non-hazardous personal property from borrowers' homes prior to the completion of any foreclosure, unless specifically ordered to do so by Safeguard.

4.18    Despite extensive use of vendors and Safeguard's comprehensive policies, procedures, and manuals, and despite having the right to control nearly every facet of vendor behavior, Safeguard has no common practice of adequately training or supervising its

JEFFERS, DANIELSON, SONN & AYLWARD, P.S.
Attorneys at Law
(509) 662-3685 / FAX (509) 662-2452
2600 Chester Kimm Road / P.O. Box 1688
Wenatchee, WA  98807-1688

subcontractors to ensure compliance with its policies and procedures governing property-related activities conducted by subcontractors for Safeguard.

4.19    Safeguard, likewise, has no common practice of screening its subcontractors' employees by way of reviewing qualifications or performing a background check that would uncover any criminal history.

### *Safeguard's Process for Determining Occupancy Status and Securing Default and Pre-Foreclosure Homes*

4.20    Safeguard's process in inspecting and securing a default or pre-foreclosure home starts when Safeguard orders a subcontractor to determine the occupancy status of the home.

4.21    Safeguard does not provide its subcontractors with clear standards for determining the occupancy status of the home.

4.22    Safeguard stresses that subcontractors should make occupancy determinations quickly.

4.23    Safeguard tells its subcontractors that an occupancy status report of "unknown" is unacceptable and that subcontractors will not be compensated for subsequent inspections to clarify the occupancy status.

4.24    Frequently, Safeguard or its subcontractors inaccurately determine the occupancy status of a home.

4.25    If Safeguard or its subcontractor deems the home vacant or abandoned, Safeguard orders its subcontractor to gain access to the home by forcibly entering the home through locked doors or windows.

4.26    Safeguard stresses to its subcontractors that the goal is to put the home back on the market as quickly as possible.

4.27    Via its comprehensive policies and procedures, Safeguard forbids its

JEFFERS, DANIELSON, SONN & AYLWARD, P.S.
Attorneys at Law
(509) 662-3685 / FAX (509) 662-2452
2600 Chester Kimm Road / P.O. Box 1688
Wenatchee, WA  98807-1688

subcontractors from removing any non-hazardous personal property or belongings from the home during interior entries absent a specific work order from Safeguard to do so.   However, Safeguard's subcontractors often remove some or all personal property from the home anyway.

4.28    Once some or all personal property is removed from a borrower's home, Safeguard does not require its subcontractors to store, preserve, or track the items that were removed from the borrower's home, and Safeguard does not have any practicing policy or procedure for returning removed belongings and personal property to borrowers.

4.29    Safeguard instructs its subcontractors to place their own locks and lock boxes on the borrower's home and post a notice upon the borrower's home instructing the borrower to contact Safeguard for access to the home.

4.30    When Safeguard learns that a homeowner wants access to his or her home, Safeguard does not immediately provide access to the homeowner.

4.31    When Safeguard learns that a homeowner wants access to his or her home, Safeguard does not immediately remove the locks that it had placed on the home.

4.32    When Safeguard learns that a homeowner wants access to his or her home, Safeguard neither restores the homeowner's locks to the home nor returns the locks to the homeowner.

4.33    When Safeguard learns that a homeowner wants the personal property that was removed from the home returned, Safeguard does not return the personal property.

4.34    When Safeguard learns that a homeowner wants to be reimbursed for the value of the personal property removed from the home, Safeguard has no reasonable or consistent policy for reimbursing homeowners or ensuring that vendors return missing property.

4.35    When Safeguard learns that a homeowner wants the damage to the home

JEFFERS, DANIELSON, SONN & AYLWARD, P.S.
Attorneys at Law
(509) 662-3685 / FAX (509) 662-2452
2600 Chester Kimm Road / P.O. Box 1688
Wenatchee, WA  98807-1688

repaired, Safeguard does not repair the damage.

4.36     Safeguard's common pattern and practice of using subcontractors to forcibly enter default and pre-foreclosure homes, cause damage to the borrower's real and personal property, convert the borrower's personal property and belongings located within the home, and interfere with the borrower's full use and enjoyment of the home prior to completion of a foreclosure is unlawful and causes injury to Washington residents.

### *Safeguard's Activities are Widespread*

4.37     Safeguard has a widespread common practice of forcible entry, resultant damage, removal of personal property from homes, and denial of the owner's full use and enjoyment of their home.

4.38     In fact, Safeguard recently reported that, between October 2011 and October 2015, there were "53,467 properties in Washington that Safeguard might have entered during that time period," and of the borrowers who then made claims against Safeguard requesting compensation for damaged properties, "No claimant in that time period demanded less than $1,000.  More than 85 percent of the claimants demanded more than $1,000.  More than 75 percent demanded $1,500 or more.  More than 50 percent of the claimants demanded more than $3,500."  Exhibit L.  Thus, Safeguard's unlawful acts and practices are widespread throughout Washington State.

4.39     Various news reports detail specific examples of Safeguard's common practices.

4.40     In a 2012 article, borrowers reported returning home following Safeguard's forcible entry to find personal possessions smashed with a sledgehammer in the front yard, damaged china and family photos, a lost coin collection, and even a missing family cat.  *See* Exhibit A.

JEFFERS, DANIELSON, SONN & AYLWARD, P.S.
Attorneys at Law
(509) 662-3685 / FAX (509) 662-2452
2600 Chester Kimm Road / P.O. Box 1688
Wenatchee, WA  98807-1688

4.41    In 2013, another borrower reported personal property stolen from a home by Safeguard: "Among the missing items were two shotguns, hunting clothing, an expensive hunting bow and even family photos that were hanging on the wall."  <u>Exhibit B</u> at p. 4.

4.42    Another borrower reported Safeguard's theft of two dozen VHS tapes of his daughters as they were growing up.  <u>Exhibit C</u> at p. 1.

4.43    Still another borrower reported Safeguard shut off his sump pump which caused flooding in his basement thereby damaging his property.  <u>Id.</u> at p. 2.

4.44    These are just a handful of a long line of similar stories evidencing Safeguard's common pattern and practices.

4.45    A 2013 article offers further detail into the breadth and depth of Safeguard's practices via a detailed account of a former Safeguard's complaint department employee who "gained a starkly different perspective on his company's pursuits as allegations of incompetence, malevolence and larceny rolled in day after day."  <u>Exhibit B</u> at p. 1.  According to the employee, "[p]eople with legal title to their property called to complain that Safeguard contractors had broken into their homes and carted off family heirlooms, valuable artwork and weapons . . . .   People living next door to foreclosed properties complained that Safeguard mixed up addresses and locked them out of their own homes."  <u>Id.</u> at pp. 1-2.

4.46    As for Safeguard's practice for responding to consumer complaints:

> [The employee] said . . . [t]he most common strategy . . . was to
> stall – ignore the claim for as long as possible with the hope that
> the person who called in would give up.  "We would wear them
> down with paperwork and make them go away," he said.

<u>Id.</u> at p. 3.

4.47    A 2013 news article summarized the lack of screening performed by Safeguard to ensure its subcontractors employ reputable and qualified individuals:

JEFFERS, DANIELSON, SONN & AYLWARD, P.S.
Attorneys at Law
(509) 662-3685 / FAX (509) 662-2452
2600 Chester Kimm Road / P.O. Box 1688
Wenatchee, WA  98807-1688

> Many of the contractors willing to engage in the dirty work of cleaning and repairing these homes have landed there by way of joblessness – among them laid-off loan officers and other mortgage industry refugees striving to make an honest living in a bad economy.
>
> Others are felons or cheats drawn to a sector that boomed after the housing bubble popped, seeking opportunity in an industry with a history of underpaying its workers and neglecting background checks.  Fierce competition among the businesses that hire these contractors and weak supervision by banks and federal agencies have prompted some workers to take shortcuts and to do work they are not licensed to do.

Exhibit D at p. 3.

4.48    It appears that Safeguard's long history of illegal acts and common practices nationwide is beginning to catch up to the company.  A December 11, 2013, article uncovered 68 federal lawsuits filed against Safeguard in 27 separate states.  Exhibit C at p. 1.

### *The Illinois Attorney General's Action Against Safeguard*

4.49    In September 2013, Safeguard was sued by the Attorney General's Office of the State of Illinois for the same unfair and deceptive business practices injurious to consumers targeted by the present action.  *See* Exhibit E.

4.50    In the Complaint, the Illinois Attorney General explained specific examples of Safeguard's unlawful conduct (*id.* at ¶¶ 33-68), including the following:

4.50.1  "The Illinois Attorney General's Office is aware of over 200 complaints from Illinois consumers against Safeguard concerning the removal of personal property."  *Id.* at ¶ 52.

4.50.2  "In at least one instance, Safeguard's subcontractor removed vital medical supplies, including the tenant's asthma pumps, from a legally-occupied home."  *Id.* at ¶ 64.

FOURTH AMENDED COMPLAINT FOR CLASS ACTION
AND DAMAGES (2:16-cv-920-MJP)
Page 13
42O6829

JEFFERS, DANIELSON, SONN & AYLWARD, P.S.
Attorneys at Law
(509) 662-3685 / FAX (509) 662-2452
2600 Chester Kimm Road / P.O. Box 1688
Wenatchee, WA  98807-1688

4.50.3   In another instance, Safeguard broke down a door with a sledgehammer and left it off the hinges upon departing.  *Id.* at ¶¶ 93, 96, 99-100.

4.50.4   In another, Safeguard broke a back window to gain entry to a residence. *Id.* at ¶ 118.

4.50.5   And in still another instance, Safeguard shattered a borrower's glass shower door while performing so-called preservation services.  *Id.* at ¶ 128.

4.51    In an article about the lawsuit, Illinois Attorney General Lisa Madigan was quoted as follows: "This case shows the lengths that banks and their service providers will go to abuse and intimidate borrowers in foreclosure[.]  . . . This company [Safeguard] was illegally breaking into people's homes, removing all their possessions and locking them out.  It is a homeowner's worst nightmare."  Exhibit F.

4.52    The Illinois AG action resulted in a settlement whereby Safeguard agreed to pay $1,000,000, nearly all of which was paid to Illinois residents who filed complaints over Safeguard's practices.  Exhibit G.

4.53    Under the settlement, Safeguard also agreed to "follow 40 operating standards in conducting inspections and other services relating to Illinois properties set by Madigan's office to ensure homeowners' rights are protected."  *Id.*  These standards included the following:

(a) "Inspectors must support their inspections with photographs and an affidavit;"

(b) "The company must increase its oversight and quality control of its subcontractors;"

(c) "Safeguard must maintain a 24-hour hotline for fielding consumer complaints;" and

JEFFERS, DANIELSON, SONN & AYLWARD, P.S.
Attorneys at Law
(509) 662-3685 / FAX (509) 662-2452
2600 Chester Kimm Road / P.O. Box 1688
Wenatchee, WA  98807-1688

(d) "The company is prohibited from removing non-perishable and non-hazardous personal property prior to foreclosure unless it has a court order, and if Safeguard makes a mistake, it must restore a consumer's possession of the home, restore utility service, and return or reimburse any personal property that has been removed."

*Id.*

4.54    Remarking on the settlement, Illinois AG Madigan commented: "I am pleased that this settlement will provide some compensation for the nightmare they caused these homeowners and that it will ensure that Safeguard does not employ these brazen practices moving forward." *Id.*

### *The Maryland Attorney General's Action Against Safeguard*

4.55    Following the Illinois AG action, the Maryland Attorney General sued Safeguard for the same wrongful conduct perpetrated against Maryland residents.

4.56    On August 28, 2015, Maryland Attorney General Brian Frosh announced a settlement with Safeguard "resolving claims that the company's inadequate policies and procedures resulted in Marylanders being wrongfully locked out of their homes or having their property damaged and belongings taken." *See* <u>Exhibit H.</u>

4.57    In the lawsuit, the Maryland Attorney General Consumer Protection Division "alleged that Safeguard failed to properly screen, train and supervise its network of vendors who perform inspection and preservation work in Maryland.  Consumers have made hundreds of complaints to Safeguard about improper conduct at their homes by Safeguard agents." *Id.*

4.58    Under the settlement, Safeguard agreed to pay $167,000 in restitution to Maryland residents harmed by the challenged actions, and to enact specific reforms including

JEFFERS, DANIELSON, SONN & AYLWARD, P.S.
Attorneys at Law
(509) 662-3685 / FAX (509) 662-2452
2600 Chester Kimm Road / P.O. Box 1688
Wenatchee, WA  98807-1688

the following:

    (a) "Implementing stringent background check requirements for employees and vendor agents, including evaluating prior misdemeanor convictions and prohibiting work by those with felony convictions;"

    (b) "Assuring its vendors that they will not be penalized if they report in good faith that they don't know whether a property is occupied;"

    (c) "Prohibiting the removal of non-hazardous personal property prior to foreclosure, except pursuant to court order;"

    (d) Employing appropriate personnel to supervise and audit its Maryland vendors to ensure compliance with the settlement;" and

    (e) "Maintaining records of all Maryland consumer complaints and, after notice, recording all calls from Maryland consumers to Safeguard's toll free consumer hotline."

*Id.*

### *The Washington Supreme Court's Decision Invalidating the Deed of Trust Provisions in Jordan v. Nationstar Mortgage, LLC, No. 92081-8*

    4.59    In 2012, a lawsuit entitled *Jordan v. Nationstar Mortgage, LLC*, was filed in Washington State Superior Court in Chelan County under Cause No. 12-2-00385-2. This lawsuit challenged the legality and enforceability of the form deed of trust entry provisions relied upon by mortgage lenders and servicers to enter borrowers' homes and "secure" their properties upon default, abandonment, or vacancy. *See* Exhibit I.

    4.60    Following the grant of class certification in 2014, counsel for Nationstar removed the Complaint to the United States District Court for the Eastern District of Washington, where it was assigned to the Hon. Thomas O. Rice under Cause No. 2:14-cv-

JEFFERS, DANIELSON, SONN & AYLWARD, P.S.
Attorneys at Law
(509) 662-3685 / FAX (509) 662-2452
2600 Chester Kimm Road / P.O. Box 1688
Wenatchee, WA  98807-1688

1   00175-TOR.

2        4.61   In 2015, the parties filed cross-motions for partial summary judgment, and on

3   August 10, 2015, Judge Rice issued an Order Certifying Questions to Washington Supreme

4   Court on the following bases:

> Put succinctly, this Court has been asked to decide whether so-called Entry Provisions within the deeds of trust of Plaintiff and other class members are enforceable under Washington law absent post-default consent of the borrower or permission from a court.  Nationstar contends the Provisions—akin to a limited license or similar non-possessory interest in land—merely grant the lender the ability to enter, maintain, and secure the encumbered property and that such conduct does not constitute possession in violation of Washington's lien theory of mortgages.  Ms. Jordan, on the other hand, contends the Entry Provisions unlawfully deprive a borrower of her exclusive right to possession prior to foreclosure and that the borrower cannot agree by contract to relinquish such right prior to default.  Instead, Ms. Jordan asserts that the lender either must obtain post-default consent of the borrower or a court-appointed receiver pursuant to RCW chapter 7.60.
>
> Because of the complexity of the state law issues presented in the parties' cross-motions for partial summary judgment and their significant policy implications, this Court finds that the Washington Supreme Court, which has not had occasion to settle these issues, "is better qualified to answer the certified questions in the first instance." . . . Further, this Court finds the Washington Supreme Court's answers are "necessary . . . in order to dispose of [this] proceeding."

Exhibit J at pp. 3-4 (internal citations omitted).

     4.62   Judge Rice then certified, *inter alia*, the following question of law to the

Washington Supreme Court:

> Under Washington's lien theory of mortgages and RCW 7.28.230(1), can a borrower and lender enter into a contractual agreement prior to default that allows the lender to enter, maintain, and secure the encumbered property prior to foreclosure?

FOURTH AMENDED COMPLAINT FOR CLASS ACTION
AND DAMAGES (2:16-cv-920-MJP)
Page 17
42O6829

JEFFERS, DANIELSON, SONN & AYLWARD, P.S.
Attorneys at Law
(509) 662-3685 / FAX (509) 662-2452
2600 Chester Kimm Road / P.O. Box 1688
Wenatchee, WA  98807-1688

*Id.* at p. 10.

4.63    On August 18, 2015, the Washington Supreme Court sent a letter accepting Judge Rice's Order Certifying Questions under Supreme Court No. 92081-8, and set a briefing schedule for the parties.  Exhibit K.

4.64    The parties timely submitted their briefs, and oral argument took placed before the Washington Supreme Court on January 19, 2016.

4.65    On July 7, 2016, the Washington Supreme Court issued its *En Banc* Opinion in *Jordan v. Nationstar Mortgage, LLC*, No. 92081-8, answering "the first certified question in the negative."  Exhibit M at p. 6.  The Court explained, "Our case law is clear that Washington law prohibits a lender from taking possession of property before foreclosure of the borrower's home."  *Id.* at p. 8.  The Court concluded that the deed of trust Entry Provisions allow the lender to take possession of the borrower's home in advance of the conclusion of a foreclosure of the borrower's home:

> From any approach, we find that Nationstar's conduct constituted possession.  . . .  Nationstar's vendor's actions constituted possession because its actions are representative of control.  The vendor drilled out Jordan's existing locks and replaced the lock with its own.  . . . [A]lthough [Jordan] was able to obtain a key by calling, the process made Nationstar the "middle man."  She could no longer access her home without going through Nationstar. . . . Nationstar effectively ousted Jordan by changing her locks, exercising control over the property.  . . . Changing the locks is akin to exercising control, which is the key element of possession.  By changing the locks, Nationstar took possession of the property.  Since these actions are authorized by the entry provisions, the entry provisions allow the lender to take possession of the property.  Because Washington law prohibits lenders from taking possession of the borrower's property before foreclosure, the provisions are in conflict with state law.  Therefore, we must answer the first certified question in the negative and find that the entry provisions are unenforceable.

*Id.* at pp. 12-14.

FOURTH AMENDED COMPLAINT FOR CLASS ACTION
AND DAMAGES (2:16-cv-920-MJP)
Page 18
42O6829

4.66    The Court concluded: "[T]he entry provisions are in direct conflict with state law and are unenforceable." *Id.* at p. 20.

4.67    Based on *Jordan*, Safeguard has no legal right to engage in its common practice of forcible entry into pre-foreclosure homes, damage to borrowers' real and person property, removal of borrowers' personal property and belongings located within the home, and interference with borrowers' full use and enjoyment of their properties prior to the completion of a foreclosure.

## V.    REPRESENTATIVE PLAINTIFFS

5.1    The Representative Plaintiffs are just several examples of Safeguard's common pattern and practice of unlawfully entering upon borrowers' properties in advance of any foreclosure proceedings, damaging borrowers' real property, converting borrowers' personal property, and denying borrowers' the full use and enjoyment of their property prior to completion of a foreclosure.

### *Representative Plaintiff John Bund*

5.2    Mr. Bund is Executor of the Estate of Richard C. Bund, which Estate owns the Bund Property at 2485 Timaru Lane, Oak Harbor, Washington.

5.3    Mr. Bund, as Executor, stands in the shoes of the Estate as the owner of the Property and has standing to bring this litigation on behalf of the Estate.  *See* RCW 11.48.010 ("The personal representative shall be authorized in his or her own name to maintain and prosecute such actions as pertain to the management and settlement of the estate, and may institute suit to collect any debts due the estate or to recover any property, real or personal, or for trespass of any kind or character."); RCW 11.48.090 ("Actions for the recovery of any property or for the possession thereof, and all actions founded upon contracts, may be

JEFFERS, DANIELSON, SONN & AYLWARD, P.S.
Attorneys at Law
(509) 662-3685 / FAX (509) 662-2452
2600 Chester Kimm Road / P.O. Box 1688
Wenatchee, WA  98807-1688

maintained by and against personal representatives in all cases in which the same might have been maintained by and against their respective testators or intestates."); *see also, e.g., Davenport v. Elliott Bay Plywood Machines Co.*, 30 Wash. App. 152, 155, 632 P.2d 76 (1981) (the personal representative of an estate has the "right to possession and control of all of the estate property"); *Collins v. Northwest Cas. Co.*, 180 Wash. 347, 351, 39 P.2d 986 (1935) (internal quotation marks omitted) ("It is the settled law of this state that executors and administrators are entitled to possession and control of the property both real and personal of estates while being administered by them, as against heirs and devisees as well as all other persons.").

5.4     Mr. Bund was Executor of the Estate when the Bund Property was entered upon by Safeguard.

5.5     At the time of the entry, the loan securing the Bund Property was in default, but no foreclosure proceedings had been initiated.

5.6     At the time of the entry, the form deed of trust Entry Provision purporting to authorize Safeguard's presence on the Bund Property in the event of default was unenforceable as contrary to Washington State law, pursuant to *Jordan v. Nationstar Mortgage.*

5.7     At the time of the entry, Mr. Bund was in daily communication with the lender for the Bund Property.

5.8     At the time of the entry, the Bund Property was neither vacant nor abandoned.

5.9     To gain entry to the Bund Property, Safeguard damaged the Bund Property, including damaging a lock, door, and shed latch on the Bund Property.

5.10     While on the Bund Property, Safeguard changed the locks and placed a lock-box upon the Bund Property.  Safeguard also removed personal property from the Bund Property,

JEFFERS, DANIELSON, SONN & AYLWARD, P.S.
Attorneys at Law
(509) 662-3685 / FAX (509) 662-2452
2600 Chester Kimm Road / P.O. Box 1688
Wenatchee, WA  98807-1688

including the lock that was originally on the garage man door, adjacent to the garage vehicle door.

5.11    Before leaving, Safeguard left a sticker on the garage man door of the Bund Property directing the owner to call Safeguard's phone number for access to the Bund Property and additional information.

5.12    Upon returning to the Bund Property several days later, Mr. Bund discovered the Bund Property had been entered upon and the locks had been changed.  His key would not open the lock to the door, and he could not access the interior of the house, garage, or shed.

5.13    Mr. Bund called the number for Safeguard written on the sticker.  The Safeguard agent who answered Mr. Bund's call told him to call the lender, and then hung up without further discussion.

5.14    Additional phone calls by Mr. Bund to Safeguard were received with equal insensitivity and Mr. Bund was not given access to the Bund Property at that time.

5.15    Safeguard did not remove its locks or lock box from the Bund Property, despite being contacted by Mr. Bund.

5.16    Safeguard did not return or replace the original locks upon the Bund Property despite being contacted by Mr. Bund.

5.17    Rather, Mr. Bund was later provided a key to enter to the residence on the Bund Property, but he was told to leave it in the lock box on the door upon leaving.

5.18    Upon entering the home, Mr. Bund discovered the home had been damaged from Safeguard's entry, and personal property was missing.

5.19    Mr. Bund reported the missing items and the damage to Safeguard and requested return of the missing property and reimbursement and/or repairs to the damaged property.

JEFFERS, DANIELSON, SONN & AYLWARD, P.S.
Attorneys at Law
(509) 662-3685 / FAX (509) 662-2452
2600 Chester Kimm Road / P.O. Box 1688
Wenatchee, WA  98807-1688

5.20     Safeguard refused to return the missing property, to reimburse the Estate, or to repair the damaged property.

5.21     To date, Safeguard has not repaired the damage it caused to the Bund Property and has not reimbursed the Estate for the costs to repair such damage or the lost rental value during the time the Estate was denied the full use and enjoyment of its real and/or personal property.

5.22     Safeguard received revenue from its lender/investor client as a result of the property preservation activities it conducted on the Bund Property.

5.23     Safeguard has not returned or paid for the personal property it removed from the Bund Property.

5.24     The exact value of the personal property removed from the Bund Property is unknown at this time, but is believed to exceed $600.00.

5.25     The exact value of the damage to the Bund Property is unknown at this time, but multiple doors and locks suffered damage.

5.26     The exact value of the precluded rents arising from the denial of the full use and enjoyment of the Estate's real and/or personal property is unknown at this time.

5.27     On information and belief, the actions and inactions alleged above are part of Safeguard's common business acts and practices.

### *Representative Plaintiffs S. Scott and Noel James*

5.28     The Jameses owned the James Property located at 1005 Harvard Avenue, Wenatchee, Washington.

5.29     During the period of the Jameses' ownership, the James Property was entered upon by Safeguard.

FOURTH AMENDED COMPLAINT FOR CLASS ACTION
AND DAMAGES (2:16-cv-920-MJP)
Page 22
42O6829

JEFFERS, DANIELSON, SONN & AYLWARD, P.S.
Attorneys at Law
(509) 662-3685 / FAX (509) 662-2452
2600 Chester Kimm Road / P.O. Box 1688
Wenatchee, WA 98807-1688

5.30    At the time of the entry, the loan securing the James Property was in default, but foreclosure proceedings had not concluded.

5.31    At the time of the entry, the form deed of trust provision purporting to authorize Safeguard's presence on the James Property in the event of default was unenforceable as contrary to Washington State Law, pursuant to the *Jordan* Decision.

5.32    At the time of the entry, the James property was not abandoned and contained some of the Jameses' personal belongings.

5.33    Safeguard damaged the James Property in order to gain entry to the James Property, including by damaging the door and a lock on the door of the James Property.

5.34    While on the James Property, Safeguard changed the locks on the front door and carport door and installed lock boxes on each door.

5.35    Upon returning to the Jameses' Property thereafter, the Jameses discovered that their property had been entered upon, and their locks had been changed. As a result, the Jameses believed that they were no longer lawfully entitled to possess or enter their home and never entered their home thereafter.

5.36     By looking through the windows, the Jameses learned that their personal property, including their chop saw and reciprocating saw, had been removed from the James Property during the entry.

5.37    To this date, Safeguard has not reimbursed the Jameses for the damage to their real property or compensated them for the denial of the full use and enjoyment of their real property. Safeguard has not returned the Jameses' missing personal property or compensated them for that property.

5.38    The exact value of the damage to the James Property is unknown at this time.

JEFFERS, DANIELSON, SONN & AYLWARD, P.S.
Attorneys at Law
(509) 662-3685 / FAX (509) 662-2452
2600 Chester Kimm Road / P.O. Box 1688
Wenatchee, WA  98807-1688

5.39    The exact value of the loss to personal property is unknown at the time but is believed to exceed $500.

5.40    The exact value of the denial of the full use and enjoyment of the Jameses' real property is unknown at this time.

## VI.    PROPRIETY OF CLASS ACTION PROSECUTION

### *Proposed Class Definition*

6.1    The members of the proposed Class include all Citizens of Washington State:

(a) who own or owned real property in Washington State subject to a loan that was in default;

(b) which property, within the applicable statute of limitations, was entered upon by Safeguard and/or its agents prior to the completion of any judicial or non-judicial foreclosure; and

(c) which entry upon the property by Safeguard was the proximate cause of damage to the homeowner by:

(i)    damaging the homeowner's real or personal property; and/or

(ii)    converting the homeowner's personal property or belongings; and/or

(iii)    interfering with the homeowner's full use and enjoyment of the home.

### *CR 23(a)(1):  Numerosity*

6.2    The exact number of persons and/or entities similarly situated to the Representative Plaintiffs is currently unknown.

6.3    However, Safeguard recently reported that, between October 2011 and October

JEFFERS, DANIELSON, SONN & AYLWARD, P.S.
Attorneys at Law
(509) 662-3685 / FAX (509) 662-2452
2600 Chester Kimm Road / P.O. Box 1688
Wenatchee, WA  98807-1688

2015, there were "53,467 properties in Washington that Safeguard might have entered during that time period," and of the borrowers who then made claims against Safeguard requesting compensation for damaged properties, "No claimant in that time period demanded less than $1,000.  More than 85 percent of the claimants demanded more than $1,000.  More than 75 percent demanded $1,500 or more.  More than 50 percent of the claimants demanded more than $3,500."  Exhibit L.  Thus, Safeguard's unlawful acts and practices are widespread throughout Washington State.

6.4     In addition, Safeguard holds itself out as the largest mortgage field services company in the country.

6.5     For these reasons, it is estimated that the number of persons similarly situated to the Representative Plaintiffs number in the tens of thousands; therefore, joinder of each individual proposed Class Member is impracticable.

6.6     In addition, the exact number of persons similarly situated to the Representative Plaintiffs may be identified from Safeguard's records of residences serviced in Washington State during the applicable statute of limitations, and such persons may be identified with particularity through appropriate judicial discovery procedures, such that it would be possible to give such persons actual notice of these proceedings, if required.

### *CR 23(a)(2):  Commonality*

6.7     There are questions of law and fact common among the claims of the proposed Class Members, including but not limited to:

(a) the common actions Safeguard takes on the proposed Class Members' properties prior to completion of foreclosure;

(b)  Safeguard's common policies or practices vis-à-vis actions it takes upon the

FOURTH AMENDED COMPLAINT FOR CLASS ACTION
AND DAMAGES (2:16-cv-920-MJP)
Page 25
42O6829

JEFFERS, DANIELSON, SONN & AYLWARD, P.S.
Attorneys at Law
(509) 662-3685 / FAX (509) 662-2452
2600 Chester Kimm Road / P.O. Box 1688
Wenatchee, WA  98807-1688

proposed Class Members' properties;

    (c) Safeguard's common policies or practices for hiring agents to perform the actions it takes upon the proposed Class Members' properties;

    (d) the manner in which Safeguard instructs or trains it agents that take action upon the proposed Class Members' properties;

    (e) the level of supervision offered by Safeguard over its agents who take action on the proposed Class Members' properties.

6.8    Additional common questions of law and fact are addressed below under *CR 23(b)(3): Predominance*.

### *CR 23(a)(3):  Typicality*

6.9    The claims of the Representative Plaintiffs are typical of the claims of the Class.

6.10    As to Representative Plaintiff Bund, Mr. Bund is the Executor of the Estate.  As Executor, Mr. Bund stands in the shoes of the Property owner.  *See, e.g.,* RCW 11.48.010; RCW 11.48.090; *Davenport*, 30 Wash. App. at 155; *Collins*, 180 Wash. at 351.

6.11    Likewise, Representative Plaintiffs James owned the James Property at the time it was entered upon by Safeguard.

6.12    As such, the Estate via Representative Plaintiff Bund, Representative Plaintiffs James,  and all Members of the Class own or owned real property in Washington State, who, prior to completion of any judicial or non-judicial foreclosure, had their property entered upon by Safeguard or its agents for purposes of conducting property preservation services upon their property, had their real or personal property located thereon damaged and/or removed by Safeguard or its agents, and were denied the full use and enjoyment of their real and/or personal property by Safeguard or its agents.

JEFFERS, DANIELSON, SONN & AYLWARD, P.S.
Attorneys at Law
(509) 662-3685 / FAX (509) 662-2452
2600 Chester Kimm Road / P.O. Box 1688
Wenatchee, WA  98807-1688

6.13    As a result, the Estate via Representative Plaintiff Bund, Representative Plaintiffs James,  and all putative Class Members have been damaged by Safeguard's actions, which actions constitute common violations of laws enacted for the protection of Washington State citizens.

6.14    Furthermore, Safeguard's defenses to the claims of the Estate via Representative Plaintiff Bund, Representative Plaintiffs James, and the proposed Class Members will be identical due to:  (i) Safeguard's reliance on a form of deed of trust provision purporting to allow so-called preservation services; and (ii) Safeguard's common policies and practices vis-à-vis its retention and supervision of subcontractors, performance of preservation services, scope of preservation services performed, its response to consumer complaints, and its response to borrower requests for repair to and return of their property and requests for restoration of full and unfettered access to their property.

6.15    In short, because all claims implicate common facts and questions of law, Safeguard's defenses will too.

### *CR 23(a)(4):  Adequacy of Representation*

6.16    The Estate via Mr. Bund and Representative Plaintiffs James will fairly and adequately protect the interests of the Class.

6.16.1 The Representative Plaintiffs come before this Court as owners of Property that has been trespassed upon, damaged, converted, and interfered with.

6.16.2 The Representative Plaintiffs are in the same capacity as any other litigant seeking redress for grievances and class relief for the harm which has occurred.

6.16.3 The Representative Plaintiffs do not have any interests which are antagonistic to those of the Class and are ready and willing to bring this class action in a

FOURTH AMENDED COMPLAINT FOR CLASS ACTION
AND DAMAGES (2:16-cv-920-MJP)
Page 27
42O6829

JEFFERS, DANIELSON, SONN & AYLWARD, P.S.
Attorneys at Law
(509) 662-3685 / FAX (509) 662-2452
2600 Chester Kimm Road / P.O. Box 1688
Wenatchee, WA  98807-1688

representative capacity on behalf of the proposed Class.

6.17    Plaintiff's counsel will fairly and adequately prosecute the case on behalf of the proposed Class.

6.17.1  Attorneys Jeffers, Danielson, Sonn & Aylward, P.S., are experienced trial attorneys who have engaged in extensive trial practice and have considerable experience in all aspects of class action litigation from several other class action cases.

6.17.2  Plaintiff's counsel have the necessary skills, expertise, and competency to adequately represent the Representative Plaintiffs' interests and those of the Class.

### *CR 23(b)(2):  Injunctive Relief*

6.18    Safeguard has acted or refused to act on grounds generally applicable to Plaintiffs and all Class Members, thereby making appropriate final injunctive relief.

6.19    As detailed throughout this Fourth Amended Complaint, Safeguard or its agents have a common practice of entering upon Washington borrowers' properties for purposes of conducting property preservation services thereupon, damaging or removing borrowers' real and/or personal property located therein, and denying borrowers the full use and enjoyment of their real and/or personal property.

6.20    Safeguard further has a common practice of not adequately training and supervising its agents in the performance of so-called property preservation services, and even instructing its agents to perform certain destructive and disruptive acts.

6.21    Safeguard further has a common practice of not repairing, replacing, or reimbursing borrowers when they report property damage as a result of the above acts.

6.22    Safeguard has acted in such manners as applicable to Plaintiffs and all Class Members.

JEFFERS, DANIELSON, SONN & AYLWARD, P.S.
Attorneys at Law
(509) 662-3685 / FAX (509) 662-2452
2600 Chester Kimm Road / P.O. Box 1688
Wenatchee, WA  98807-1688

6.23    For these reasons, Plaintiffs seek class-wide injunctive relief against Safeguard to restrain and enjoin these behaviors.

### *CR 23(b)(3):  Predominance*

6.24    "'Considering whether 'questions of law or fact common to class members predominate' begins, of course, with the elements of the underlying cause of action.'" *Abdullah v. U.S. Sec. Assoc., Inc.*, 731 F.3d 952, 964 (9th Cir. 2013) (quoting *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 131 S. Ct. 2179, 2184 (2011)).

6.25    "A plaintiff class need not prove that each element of a claim can be established by classwide proof[.]"  *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 858 (6th Cir. 2013).

6.26    Rather, the Court should "balance against the issues requiring individualized proof, any questions of law or fact common to . . . class members . . . ."  *Kelly v. Microsoft Corp.*, 2010 WL 3556196, at *1 (9th Cir. Sept. 14, 2010) (quoting *In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 571 F.3d 953, 959 (9th Cir. 2009):  "it is reversible error to 'rely[] on [one factor] to the near exclusion of other factors relevant to the predominance inquiry'").

6.27    Thus, certification is appropriate unless individual questions "*overwhelm* questions common to the class." *Amgen, Inc. v. Conn. Retirement Plans & Trust Funds*, ---U.S. ---, 133 S.Ct. 1184, 1193, 1196, 1204, 185 L.Ed.2d 308 (2013) (emphasis added).

6.28    Numerous legal and factual questions pertaining to the proposed Class Members predominate over any questions affecting only individual members, including but not limited to the following:

6.28.1  Form Contract Provisions.   Plaintiffs will be able to establish the elements of the claims using evidence common to the Class because Safeguard finds its

JEFFERS, DANIELSON, SONN & AYLWARD, P.S.
Attorneys at Law
(509) 662-3685 / FAX (509) 662-2452
2600 Chester Kimm Road / P.O. Box 1688
Wenatchee, WA  98807-1688

purported authority to enter upon borrowers' properties from unlawful form contract provisions applicable to all borrowers' properties.  These contract provisions are substantively identical in all cases.  All such substantively identical form deed of trust provisions were found on July 7, 2016, to be "in direct conflict with state law and . . . unenforceable" by the Washington Supreme Court in *Jordan v. Nationstar Mortgage*.  <u>Exhibit M</u> at p. 20.  Such provisions are common to all putative Class Members and do not involve individualized inquiries.

   6.28.2  <u>The Identity of the Property Owner.</u>  Still another element subject to common proof is the identity of the property owner.  As the proposed Class concerns only those properties entered upon by Safeguard prior to completion of any judicial or non-judicial foreclosure, there are no individual questions concerning the identity of the rightful property owner—*the borrower* owned the property at the time of entry, not anyone else.  This is further detailed in the *Jordan v. Nationstar Mortgage* opinion, in which the Washington Supreme Court reaffirmed the borrower's right to exclusive possession of the property prior to the completion of any foreclosure proceedings.  <u>Exhibit M</u>.

   6.28.3  <u>Safeguard's Relationship with its Subcontractors.</u>  Plaintiffs will be able to establish the elements of their claims using evidence common to the Class because the primary inquiries involve *Safeguard*'s conduct.  That is, Safeguard has a common policy and practice of training and instructing its agents to enter properties prior to completion of any foreclosure.  Safeguard further instructs its agents to use whatever means necessary to enter properties, including drilling out the borrower's locks, and, once inside, agents are trained and instructed to, *inter alia*, "trash out" the premises by taking and carrying away personal property found therein.  Thus, evidence common to all Members of the Class includes:  Safeguard's selection of subcontractors and screening of employees; Safeguard's training of subcontractors;

JEFFERS, DANIELSON, SONN & AYLWARD, P.S.
Attorneys at Law
(509) 662-3685 / FAX (509) 662-2452
2600 Chester Kimm Road / P.O. Box 1688
Wenatchee, WA  98807-1688

Safeguard's instructions to its subcontractors; and Safeguard's oversight of its subcontractors' work.   This theory is common to all putative Class Members and does not involve individualized inquiries.

6.28.4   The Conduct of Safeguard's Subcontractors in Entering and Damaging or Converting Borrowers' Property.  Plaintiffs will be able to establish the elements of their claims using evidence common to the Class because, as to all putative Class Members, Safeguard's subcontractors acted similarly while on borrowers' properties; namely, they committed unauthorized entry upon borrowers' properties, conducted unlawful forcible entries involving damage to existing locks, doors and/or windows, damaged and converted personal property found thereon, and interfered with borrowers' full use and enjoyment of their property. This theory is common to all putative Class Members and does not involve individualized inquiries.

6.28.5  Safeguard's Policies and Procedures for Responding to Customer Complaints.  Plaintiffs will be able to establish the elements of their claims using evidence common to the Class because Safeguard's policies and procedures for responding to customer complaints of its agents' entry, removal of borrowers' property, and interference with borrowers' full use and enjoyment of their property are the same in all cases.  That is, Safeguard does not immediately restore possession of the property to the owner, does not return or replace the property's original locks, does not remove its locks from the property upon demand, and does not return or replace personal property removed from the property.  These facts are common to all putative Class Members and do not involve individualized inquiries.

6.28.6 Safeguard's Practices in Response to Complaints Regarding Removal of Personal Property. Plaintiffs will be able to establish the elements of their claims using evidence

JEFFERS, DANIELSON, SONN & AYLWARD, P.S.
Attorneys at Law
(509) 662-3685 / FAX (509) 662-2452
2600 Chester Kimm Road / P.O. Box 1688
Wenatchee, WA  98807-1688

common to the Class because Safeguard's records demonstrate that it was aware of and received hundreds of complaints alleging that Safeguard's vendors unlawfully removed personal property. Although Safeguard claims that it never unlawfully authorized its vendors to remove personal property from borrowers' homes prior to the completion of foreclosure, these complaints, particularly when combined with Safeguard's policies and procedures for responding to such complaints demonstrate that Safeguard failed to adequately supervise its agents when on borrowers' properties and failed to remedy its vendors' pervasive practice of removing personal property from borrowers' homes, even when it became aware of such practices. These facts are common to all putative Class Members and do not involve individualized inquiries.

6.28.7 <u>Class Members' Damages.</u>  Plaintiffs will be able to establish the elements of their claims using evidence common to the Class because all putative Class Members suffered the same type of damage; namely, injury to real and/or personal property from Safeguard's forcible entry, damage to, and/or loss of personal property, restitution in the amount of revenue Safeguard generated as a result of such unlawful acts, and interference with the full use and enjoyment of the property by the borrower.  This fact is common to all putative Class Members and will not require individualized inquiries.

6.29    As a result, the prosecution of a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

6.30    Individual actions are not likely to seek sufficient damages to warrant assuming the cost of litigation.  Here, the damages sustained by each putative Class Member are not large, generally including damage to doors, windows, and/or personal property within the residence. As recently admitted by Safeguard, many putative Class Members made claims against

JEFFERS, DANIELSON, SONN & AYLWARD, P.S.
Attorneys at Law
(509) 662-3685 / FAX (509) 662-2452
2600 Chester Kimm Road / P.O. Box 1688
Wenatchee, WA  98807-1688

Safeguard for less than $3,500.  Therefore, each putative Class Member will have difficulty maintaining an individual action, and a class action is a superior method to adjudicate their claims.

6.31    In addition, tens of thousands of individual actions would greatly congest the Washington State courts.

6.32    A class action is the most cost-effective way for consumers to prevent future economic and pecuniary loss to tens of thousands of Washington citizens and members of the public at large by Safeguard.

6.33    This action is superior to any other available method for the fair and efficient adjudication of the controversy.

## VII.    FIRST CAUSE OF ACTION: COMMON LAW TRESPASS

7.1    Safeguard wrongfully and intentionally entered onto—and directed its agents to enter onto—the Bund Property and the James Property, and properties owned by borrowers throughout the state of Washington in advance of the conclusion of any foreclosure proceedings.

7.2    As detailed by the Washington Supreme Court in *Jordan v. Nationstar Mortgage*, prior to the completion of any foreclosure proceedings, the borrower has the exclusive right to possess their property, and Safeguard has no legal right to be there. Exhibit M. Therefore, Safeguard's entry upon borrowers' properties is an invasion that affects the borrower's interest in the exclusive possession of their property.

7.3    Safeguard's intent to invade borrowers' possessory interests is demonstrated by its claimed authority purportedly granted in its form deed of trust provisions with lenders and loan servicers, which claim to permit such entries in the event of default or abandonment of

JEFFERS, DANIELSON, SONN & AYLWARD, P.S.
Attorneys at Law
(509) 662-3685 / FAX (509) 662-2452
2600 Chester Kimm Road / P.O. Box 1688
Wenatchee, WA  98807-1688

properties—which the Washington Supreme Court recently invalidated.

7.4    Such intent to enter is further evidenced by Safeguard's acts of changing borrowers' locks, performance of so-called "preservation services" on borrowers' properties, and the notices it left for homeowners to contact Safeguard to obtain entry to their properties.

7.5    Safeguard remained on the Bund Property, on the James Property, and on borrowers' properties during the period of entry and thereafter by changing the locks and requiring borrowers to contact Safeguard in order to regain full access to their properties.  For example, even when Mr. Bund contacted Safeguard and requested access to the Property and removal of the locks, that request was repeatedly denied.  Likewise, Safeguard changed the locks on the James Property, leaving its own lock there.  Other borrowers experienced the same results.

7.6    It was reasonably foreseeable that Safeguard's unauthorized and unlawful entries onto borrowers' properties in advance of the conclusion of any foreclosure proceedings would invade borrowers' possessory interests in those properties.

7.7    As a result of Safeguard's acts as detailed above, Representative Plaintiffs and Washington borrowers suffered the damages detailed herein in an amount to be proven at trial.

## VIII.   SECOND CAUSE OF ACTION: INTENTIONAL TRESPASS (RCW 4.24.630)

8.1    Safeguard entered onto the Bund Property, the James Property, and properties owned by borrowers throughout the state of Washington.

8.2    Safeguard intentionally, unreasonably, and forcibly entered onto such properties, and intentionally and unreasonably damaged or removed property thereon.

8.3    For example, Safeguard damaged the lock on the door of the Bund Property, kept the lock, damaged the garage man door on the Bund Property, removed personal property

FOURTH AMENDED COMPLAINT FOR CLASS ACTION
AND DAMAGES (2:16-cv-920-MJP)
Page 34
42O6829

JEFFERS, DANIELSON, SONN & AYLWARD, P.S.
Attorneys at Law
(509) 662-3685 / FAX (509) 662-2452
2600 Chester Kimm Road / P.O. Box 1688
Wenatchee, WA  98807-1688

1   from the Bund Property, and denied the Estate the full use and enjoyment of the personal

2   property and the real property.

3          8.4     Likewise, Safeguard damaged the lock on the door of the James Property, kept

4   the lock, removed personal property from the James Property, and denied Plaintiffs James the

5   full use and enjoyment of their real and personal property.

6

7          8.5     Safeguard intended to act in this manner, as evidenced by its instruction to its

8   subcontractors to engage in these behaviors, and its deliberate acts to engage in these behaviors.

9          8.6     Safeguard knew or had reason to know that it had no authorization to engage in

10  such behaviors because the form contract provisions relied upon by Safeguard – while unlawful

11  – nevertheless do not authorize damage to real or personal property, do not authorize removal

12  of personal property located upon or within a property, and do not authorize interference with

13  the owner's (or other lawful occupant's) full use and enjoyment of the property.

14

15         8.7     Safeguard engaged in the above actions wholly without permission of Plaintiffs

16  or other Washington borrowers.

17         8.8     It was substantially certain that Safeguard's and/or its agents' above-described

18  actions would damage the Bund Property, the James Property,  and the properties of other

19  Washington borrowers.

20

21         8.9     Safeguard's actions are part of its common practice relative to countless

22  Washington borrowers.

23         8.10    As a result, Safeguard wrongfully caused waste or injury to these properties, or

24  wrongfully injured personal property or improvements to real estate on land.

25         8.11    Safeguard's actions above each constitute separate violations of RCW 4.24.630.

26         8.12    As a direct and proximate result of Safeguard's and/or its agents' violations of

27

RCW 4.24.630, Plaintiffs have suffered damages to their real properties and the personal property located therein in an amount to be proven at trial.

8.13    Safeguard is liable to Plaintiffs for treble the amount of damages caused by its violations of RCW 4.24.630.

8.14    Safeguard is liable to Plaintiffs for their reasonable attorneys' fees and costs pursuant to RCW 4.24.630.

8.15    Safeguard is liable to Plaintiffs for their reasonable attorneys' fees and costs pursuant to RCW 4.24.630. Safeguard is similarly liable to the tens of thousands of Washington borrowers who experienced the same or similar wrongs as Plaintiffs.

## IX.    THIRD CAUSE OF ACTION:
## NEGLIGENT COMMON LAW TRESPASS

9.1    Trespass occurs when a person intentionally or negligently intrudes onto the property of another. *Jackass Mt. Ranch v. S. Columbia Basin Irr. Dist.*, 305  P.3d 1108, 1122, 175 Wash. App. 374 (2013).

9.2    Safeguard acted negligently when it entered upon the properties of Plaintiffs, or directed its vendors to enter upon the properties of Plaintiffs, and interfered with their right to exclusive possession of the properties.

9.3    Safeguard is similarly liable to the countless Washington borrowers who experienced the same or similar wrongs as the Representative Plaintiffs.

## X.    FOURTH CAUSE OF ACTION:
## VIOLATION OF CONSUMER PROTECTION ACT (RCW 19.86, *et seq.*)

10.1    <u>Safeguard Engaged in Unfair or Deceptive Acts and Practices.</u>

10.1.1  The following actions of Safeguard constitute unfair *and* deceptive acts and practices for the purposes of RCW 19.86, *et seq.*:   Safeguard's common practices of

JEFFERS, DANIELSON, SONN & AYLWARD, P.S.
Attorneys at Law
(509) 662-3685 / FAX (509) 662-2452
2600 Chester Kimm Road / P.O. Box 1688
Wenatchee, WA  98807-1688

unlawfully entering borrowers' properties in advance of the conclusion of any foreclosure proceedings; forcible entries via drilling out existing door locks; keeping the locks; damaging doors and windows, removing personal property; refusing to refund, repair, or compensate for damage caused and property taken; denying owners or legal occupants the full use and enjoyment of their real and/or personal property; and failing to respond or timely respond to demands for repairs, return of property, and access to their property.

10.1.2  These acts are unfair because the Washington Supreme Court in *Jordan v. Nationstar Mortgage* recently deemed such practices a clear violation of Washington state law, and the deed of trust provisions purporting to authorize them unenforceable as contrary to law.  These acts are further unfair because of the unequal bargaining power between the individual homeowner or occupant and a large, national company that forcibly enters properties, drills out the existing locks, places its own locks on the properties, interferes with owners' or legal occupants' full use and enjoyment of the properties, converts personal property located upon the properties, and refuses to return or replace damaged or converted property to the rightful owner.

10.1.3  These acts are deceptive because when Safeguard performs them, the property owner is unaware that they are occurring, and such acts are not authorized via any form deed of trust provision.

10.1.4  Safeguard engaged in similar unfair and deceptive acts and practices vis-à-vis other Washington borrowers.

10.2   Safeguard's Acts Occurred in Trade or Commerce.  Safeguard's unfair and deceptive acts occurred in trade or commerce because Safeguard is the largest mortgage field services company in the country and was servicing the properties at the time of the challenged

JEFFERS, DANIELSON, SONN & AYLWARD, P.S.
Attorneys at Law
(509) 662-3685 / FAX (509) 662-2452
2600 Chester Kimm Road / P.O. Box 1688
Wenatchee, WA  98807-1688

acts.

      10.3    <u>Safeguard's Acts Impact the Public Interest.</u>

          10.3.1  Safeguard's unfair or deceptive acts impacted the public interest because they were committed in the course of Safeguard's business, Safeguard advertises similar services to the public in general, and Safeguard and Plaintiffs and Class Members (as individual consumers) occupy unequal bargaining positions.

          10.3.2  Safeguard engages in a course of conduct whereby the same or similar unfair or deceptive acts are repeated as to borrowers across Washington State.  Indeed, Safeguard reports 53,467 borrowers throughout the state of Washington whose properties may have been entered upon by Safeguard between October 2011 and October 2015.  <u>Exhibit L</u>.

          10.3.3  There exists a real and substantial potential for repetition of Safeguard's conduct in the future because Safeguard is the largest mortgage field services company in the country.

      10.4    <u>Causation.</u>

          10.4.1  Causation is satisfied through the common proof that Safeguard's policy and practice is to instruct its agents to enter borrowers' homes, to do so forcibly, to remove personal property therefrom, and to place and maintain its own locks and lock boxes on borrowers' properties.

          10.4.2  These common instructions proximately cause borrowers' damages because, *but for* Safeguard's instructions to its agents, there would be no entry, removal of personal property, or interference resulting in damage to borrowers.

      10.5    <u>Injury to Business or Property.</u>  As a direct and proximate result of Safeguard's unfair or deceptive acts as set forth above, Plaintiffs suffered injury to their property in an

**JEFFERS, DANIELSON, SONN & AYLWARD, P.S.**
Attorneys at Law
(509) 662-3685 / FAX (509) 662-2452
2600 Chester Kimm Road / P.O. Box 1688
Wenatchee, WA  98807-1688

1    amount to be proven at trial.  Putative Class Members suffered similar injuries.

2        10.6    Safeguard's above-listed unfair or deceptive acts constitute violations of

3    RCW 19.86, *et seq.*

4        10.7    Safeguard is liable to Plaintiffs for treble the amount of their damages, including

5    those arising from the interference with the full use and enjoyment of their real properties and/or

6    personal property, caused by the violations of RCW 19.86, *et seq.*

7

8        10.8    Safeguard is liable to Plaintiffs for their reasonable attorneys' fees and costs

9    pursuant to RCW 19.86, *et seq.*

10        10.9    Safeguard is similarly liable to the countless Washington borrowers who

11    experienced the same or similar wrongs as the Representative Plaintiffs.

12
                        **XI.    FIFTH CAUSE OF ACTION:**
13                            **NEGLIGENT SUPERVISION**

14        11.1    Safeguard owed the Jameses a duty to act as a reasonably careful person would

15    under the same or similar circumstances, including a duty to reasonably assess the lawfulness

16    of its conduct. Upon learning of harm caused by its property preservation activities, Safeguard

17    owed the Jameses a duty to mitigate foreseeable harm resulting from those activities.

18
        11.2    Safeguard has comprehensive policies and procedures instructing its vendors
19
     that they may not remove non-hazardous personal property prior to the completion of
20
     foreclosure from Washington borrowers' properties.
21

22        11.3    Safeguard's vendors are its agents and Safeguard expects its vendors to comply

23    with all requirements set forth in Safeguard's comprehensive policies and procedures.

24    Safeguard has the right and duty to control its vendors' conduct and to mitigate foreseeable loss

25    resulting from that conduct. However, Safeguard engages in little to no direct oversight when

26    its vendors are completing work in the field.

27

**JEFFERS, DANIELSON, SONN & AYLWARD, P.S.**
Attorneys at Law
(509) 662-3685 / FAX (509) 662-2452
2600 Chester Kimm Road / P.O. Box 1688
Wenatchee, WA  98807-1688

11.4    Despite its policies, and prior to the *Jordan* Decision and entering the James Property, Safeguard received a number of direct complaints from borrowers indicating that its personal property policies were not being followed. Specifically, complainants alleged that personal property was unlawfully removed from their homes prior to the completion of foreclosure by Safeguard and/or its vendors during the completion of property preservation activities, often conducted in the interior of the home. Safeguard never independently analyzed Washington law to assess the legality of conducting those activities in response to these borrower complaints. Safeguard did not change its policies and practices in response to these borrower complaints. Although it was well aware that vendors were removing personal property from borrowers' homes prior to the completion of foreclosure in violation of Safeguard's policies, Safeguard did not increase supervision over its vendors in response to these borrower complaints.

11.5    Even after receiving a number of these complaints, Safeguard ordered one or more vendors to change the locks on and enter the interior of the James Property. While on the James Property, one or more of those vendors removed the Jameses' personal property. Such removal was foreseeable, particularly in light of the complaints Safeguard received from other borrowers prior to the entry.

11.6    The Jameses' personal property was never returned and the James were never reimbursed for the missing personal property.

11.7    A reasonable person in the same or similar circumstances would have taken action to stop its vendors from removing personal property during property preservation actions prior to the completion of foreclosure. Safeguard did not do so. Safeguard did not supervise its vendors while they completed property preservation orders on the James Property.

JEFFERS, DANIELSON, SONN & AYLWARD, P.S.
Attorneys at Law
(509) 662-3685 / FAX (509) 662-2452
2600 Chester Kimm Road / P.O. Box 1688
Wenatchee, WA  98807-1688

11.8    By failing to take reasonable action to stop vendors from removing personal property from the James Property, and by failing to directly oversee its vendors while they were on the James Property, Safeguard breached its duty to the Jameses and negligently supervised its agents.

11.9    That negligent supervision caused the Jameses harm, including the loss of their personal property, in an amount to be proven at trial.

11.10   Safeguard is similarly liable to the countless Washington borrowers who experienced the same or similar wrongs as the Jameses.

## XI.    PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, and on behalf of others similarly situated, demand judgment against Safeguard as follows:

1.    For entry of a judgment in favor of Plaintiffs against Safeguard for damages in an amount to be proven at trial, including treble damages pursuant to RCW 4.24.630, RCW 19.86.090, and/or other applicable law;

2.    For entry of a judgment in favor of Plaintiffs and against Safeguard for reasonable attorneys' fees and costs pursuant to RCW 4.24.630, RCW 19.86.090, and/or other applicable law;

3.    For injunctive relief restraining Safeguard from further violation of RCW 19.86, *et seq.*, as alleged herein; and

4.    For such other and further relief as the Court deems just and equitable.

//

//

//

FOURTH AMENDED COMPLAINT FOR CLASS ACTION AND DAMAGES (2:16-cv-920-MJP)
Page 41
42O6829

**JEFFERS, DANIELSON, SONN & AYLWARD, P.S.**
Attorneys at Law
(509) 662-3685 / FAX (509) 662-2452
2600 Chester Kimm Road / P.O. Box 1688
Wenatchee, WA  98807-1688

1

2  DATED this 23rd day of March, 2018.

3
                    By: s/CLAY M. GATENS
4                   CLAY M. GATENS, WSBA No. 34102
                    DEVON A. GRAY, WSBA No. 51485
5                   JEFFERS, DANIELSON, SONN & AYLWARD, P.S.
                    2600 Chester Kimm Road
6                   P.O. Box 1688
                    Wenatchee, WA  98807-1688
7                   Telephone:  509-662-3685
                    Fax:  509-662-2452
8                   Email: ClayG@jdsalaw.com
9                          DevonG@jdsalaw.com

10

11                  Michael D. Daudt, WSBA #25690
                    DAUDT LAW PLLC
12                  2200 Sixth Avenue, Suite 1250
                    Seattle, Washington 98121
13                  Telephone: (206) 445-7733
                    Facsimile: (206) 445-7399
14                  Email: mike@daudtlaw.com

15

16                  Beth E. Terrell, WSBA #26759
                    Blythe H. Chandler, WSBA #43387
17                  TERRELL MARSHALL LAW GROUP PLLC
                    Attorneys for Plaintiffs
18                  936 North 34th Street, Suite 300
                    Seattle, Washington  98103
19                  Telephone:  (206) 816-6603
                    Facsimile:  (206) 319-5450
20                  Email:  bterrell@terrellmarshall.com
                    Email:  bchandler@terrellmarshall.com
21

22                  Attorneys for Plaintiffs

23

24

25

26

27

FOURTH AMENDED COMPLAINT FOR CLASS ACTION                    **JEFFERS, DANIELSON, SONN & AYLWARD, P.S.**
AND DAMAGES (2:16-cv-920-MJP)                                          Attorneys at Law
Page 42                                                      (509) 662-3685 / FAX (509) 662-2452
42O6829                                                      2600 Chester Kimm Road / P.O. Box 1688
                                                             Wenatchee, WA  98807-1688

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

## CERTIFICATE OF SERVICE

I hereby certify that on March 23, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System.  Notice of this filing will be sent to the parties listed below by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

PAMELA J. DEVET          pjd@leesmart.com
KELLAN W. BYRNE          kwb@leesmart.com

DATED at Wenatchee, Washington this 23rd day of March, 2018.

By: s/CLAY M. GATENS
CLAY M. GATENS, WSBA No. 34102
JEFFERS, DANIELSON, SONN & AYLWARD, P.S.
2600 Chester Kimm Road
P.O. Box 1688
Wenatchee, WA  98807-1688
Telephone:  509-662-3685
Fax:  509-662-2452
Email: ClayG@jdsalaw.com
Attorneys for Plaintiff

JEFFERS, DANIELSON, SONN & AYLWARD, P.S.
Attorneys at Law
(509) 662-3685 / FAX (509) 662-2452
2600 Chester Kimm Road / P.O. Box 1688
Wenatchee, WA  98807-1688