UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| JOHN R. BUND II, et al., | CASE NO. C16-920 MJP |
|---|---|
| Plaintiffs, | ORDER ON MOTION TO DISMISS |
| v. | |
| SAFEGUARD PROPERTIES LLC, | |
| Defendant. | |

The above-entitled Court, having received and reviewed:

1. Defendant's Motion to Dismiss Fourth Amended Complaint (Dkt. No. 244),

2. Plaintiffs' Response to Defendant's Motion to Dismiss Fourth Amended Complaint (Dkt. No. 266),

3. Defendant Safeguard's Reply in Support of Its Motion to Dismiss Fourth Amended Complaint (Dkt. No. 272),

all attached declarations and exhibits, and relevant portions of the record, and rules as follows:

IT IS ORDERED that the motion to dismiss is DENIED.

## Background

Defendant contracts with mortgage lending and service organizations to provide "property preservation services" on the homes of borrowers in default. (Dkt. No. 224, Fourth Amended Complaint ("4AC") ¶¶ 1.1, 4.9.) The company then contracts with a vendor network which enters the properties, drills out and replaces existing locks (or places padlocks or lockboxes on the doors), and performs other "preservation services" such as winterizing the home prior to foreclosure and sale. (Id. ¶¶ 1.1, 1.2, 1.4, 1.9, 4.9-4.36.) Plaintiffs allege that damage to property and removal of personal property is not uncommon. (Id. ¶¶1.7, 1.8, 1.12, 4.14, 4.15, 4.27, 4.38, 4.40-45, 5.10, 5.36, Exs. A-C.)

The lenders, servicers and their agents purport to derive their authority to conduct these activities prior to the completion of foreclosure from language in the form deeds of trust known as "entry provisions." (Id. ¶ 1.2.) In a lawsuit brought against a mortgage lender, the entry provisions were found to be unenforceable, an unauthorized violation of possessory rights in derogation of RCW 7.28.230. Jordan v. Nationstar Mortgage, LLC, 185 Wn.2d 876, 888-89 (2016).

The Court has certified a class in this litigation which is defined as:

> All current and former citizens of Washington State who own or owned residential property in Washington State subject to a loan that was in default, which residence was entered by Safeguard or its agents and the lock(s) changed prior to completion of a foreclosure and within the applicable statute of limitations.

(Dkt. No. 204, Order on Class Certification at 2.) The Court denied a request to certify a sub-class with conversion clams and, in a related order, dismissed the claims of named plaintiffs with conversion claims against Defendant (Dkt. No. 223, Order on Summary Judgment), which left the class with a single named plaintiff.

Plaintiffs have filed a Fourth Amended Complaint (Dkt. No. 224; "4AC") which is the subject of the instant motion to dismiss. Plaintiffs added an additional set of named plaintiffs (S. Scott James and Noel L. James) and allege causes of action for intentional and negligent common law trespass, statutory trespass and violations of the Washington Consumer Protection Act ("CPA"). Defendant moves to dismiss all claims.

## Discussion

### Standard of review

A court ruling on a 12(b)(6) motion is required to accept the plaintiff's allegations as true and construe them in the light most favorable to the plaintiff. Cousins v. Lockyer, 568 F.3d 1063, 1067 (9th Cir. 2009). Upon a finding that the plaintiff has plead "enough facts to state a claim to relief that is plausible on its face," the Court will deny a motion to dismiss. Bell Atlantic. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). The plausibility standard simply requires the complaint to "raise a reasonable expectation that discovery will reveal evidence to support the allegations." Starr v. Baca, 652 F.3d 1202, 1217 (9th Cir. 2011)(*quoting* Twombly, 550 U.S. at 556).

### Timeliness

Plaintiffs make an initial challenge to this motion on grounds that it is untimely. They cite FRCP 12(g)(2), which prohibits, on a second or successive FRCP 12 motion, raising an objection which was previously available. It is not meritorious.

1    In the first place, Defendant has not brought a prior motion to dismiss pursuant to FRCP
2    12. Its earlier motion to dismiss class allegations was brought under FRCP 23. (S*ee* Dkt. No.
3    14.) The Court cited a 12(b) standard in ruling on the motion, but it was analyzed and decided
4    under the requirements of Rule 23. (Dkt. No. 43, Order at 8.) Secondly, the rule in the Ninth
5    Circuit is that, "on filing a [new] amended complaint which carrie[s] over the causes of action of
6    the [previous] amended complaint, the [defendants are] free to challenge the entire new
7    complaint." Sidebotham v. Robinson, 216 F.2d 816, 823 (9th Cir. 1954).
8    Defendant's motion to dismiss is timely in its entirety.

**Application of *Jordan***

Defendant devotes several pages of briefing to arguing that Jordan v. Nationstar Mortgage, LLC, 185 Wn.2d 876 (2016) is inapplicable. It argues that the case concerned *lender* liability and says nothing about "mortgage service providers" such as Safeguard. It goes on to contend that, since possession and control are "exclusive," Plaintiffs cannot simultaneously pursue recovery against lenders and mortgage service providers on a theory that each exercised "exclusive possession" over the borrowers' property.

The Court does not intend at this juncture to make a definitive general ruling on the applicability of Jordan, but does note that, although the opinion itself is narrowly drawn, the Jordan court did not explicitly limit its ruling to mortgage lenders. If the legal principles it enunciated are applicable in other contexts, the Court is perfectly within its authority to apply them. Additionally, the opinion refers to the "right to exclusive possession" of the borrowers, and the interference with that right. There is nothing in the opinion about the lenders having

exercised (or having to exercise) "exclusive possession" in order to be liable, and nothing that says that more than one entity cannot *interfere* with the right to exclusive possession.

Furthermore, although the amended complaint does allege that <u>Jordan</u> applies to Safeguard, the Court does not find it appropriate in the context of a motion to dismiss (which tests whether Plaintiffs have adequately stated a claim upon which relief can be granted) to make a sweeping ruling that a precedent does or does not apply to the facts of the instant case. Where appropriate, the Court will analyze Plaintiffs' causes of action in light of the legal principles announced in <u>Jordan</u>, and decide whether they are applicable to Defendant or not on a claim by claim basis. The most the Court will say in response to Defendant's opening argument is that it cannot rule, as a general matter, that <u>Jordan</u> *does not* apply in this circumstance.

**Common law tort claims (Count I: common law trespass; Count III: negligent trespass; Count V: negligent supervision[1])**

*Independent duty doctrine*

Defendant first argues that all the tort claims must be dismissed under the independent duty doctrine, which states that no claims under tort can arise out of a contractual relationship unless the defendant breached a duty which arises independently of the contract. <u>Eastwood v. Horse Harbor Fdn., Inc.</u>, 170 Wn.2d 380, 389 (2010).

This is a curious argument, since it relies on (1) a contract provision which has been declared unenforceable by the Washington Supreme Court and (2) a contract to which Defendant is not a party. Furthermore, elsewhere in its briefing (regarding the CPA claim), Defendant goes to great lengths to articulate how its practices have no impact on the public at large because it

---

[1] Plaintiffs have abandoned this claim.

does not target consumers (and therefore presumably has no commercial/contractual relationship with them), only mortgage lenders and servicers.

Additionally, the test for the applicability of an "independent duty" analysis rests on the ability to identify whether an obligation exists and, if it exists, what the measure of care is and to whom it is owed. Vanishing Prices, LLC v. Bella's Voice, 195 Wn.App. 1060 (2016). The obligation is clear in this context: the obligation not to trespass on the property of another or in any other way improperly interfere with someone else's exclusive right to possession of their property.

The independent duty doctrine does not entitle Defendant to dismissal of Plaintiffs' tort claims.

*Count I: Common law trespass*

The elements of this tort are

> (1) an invasion of property affecting an interest in exclusive possession, (2) an intentional act, (3) reasonable foreseeability that the act would disturb the plaintiff's possessory interest, and (4) actual and substantial damages.

Grundy v. Brack Family Trust, 151 Wn.App. 557, 567 (2009)(quoting Wallace v. Lewis County, 134 Wn.App. 1, 15 (2006)).

Defendant argues that this claim should be dismissed because, as a matter of law, it is their lender/clients, not Safeguard, which come into possession of the property. This is a misreading of the requisite elements, which require only "an invasion… *affecting an interest in exclusive possession*." Whether the trespassing party "comes into possession" of the property by means of their trespass is irrelevant. Plaintiffs allege that Defendant's practices affect their interest in exclusive possession, which is all that is required.

1     Defendants next contend that, because the entry onto the property of the named plaintiffs 2 (Bund and the Jameses) occurred pre-<u>Jordan</u>, any injuries occurring to them were not reasonably 3 foreseeable. The Court agrees with Plaintiffs: this argument relies on information outside of the 4 complaint and thus is inappropriate for a motion to dismiss. In addition, the definition of the 5 class is such that it includes borrowers whose properties were entered upon *after* <u>Jordan</u> – 6 Defendant does not address the legal significance of that fact.

*Count III: Negligent trespass*

    Liability under this tort is dependent upon the classic negligence elements: duty, breach, causation, and damages. <u>Spencer v. Luton</u>, 180 Wn.App. 1002 (2014). Defendant again interposes its "no duty" argument, citing the absence of any "relationship" with the consumers who comprise the class in this action – no contracts, no orders, no payments from the class members.

    Defendant cites to no case or statutory authority that such a relationship is required before a duty can arise. In fact, it seems rather axiomatic that *everyone* has a duty not to trespass that is independent of any specific relationship with the trespassee. "Duty may be predicated on violation of a statute or common law principles of negligence." <u>Bernethy v. Walt Failor's, Inc.</u>, 97 Wn.2d 929, 932 (1982).

    Defendant's motion to dismiss this count will be denied.

**Statutory tort claim (Count II: RCW 4.24.630, intentional trespass)**[2]

The statute defines this tort as the act of "go[ing] onto the property of another and either (1) "remov[ing] timber, crops, minerals, or other similar valuable property from the land, or (2) wrongfully caus[ing] waste or injury to the land, or (2) wrongfully injur[ing] personal property or improvements to real estate on the land." RCW 4.24.630(1).

Defendant's argument for dismissal of this cause of action rests on a curiously selective reading of Plaintiffs' allegations whereby Safeguard claims that Bund only alleges that personal property was stolen, while the Jameses "do not present sufficient facts from which a court could plausibly infer that Safeguard wrongfully injured their personal property." (Motion at 14.) In fact, both Plaintiffs allege that Safeguard damaged the locks on the doors of their property. (4AC at ¶¶ 8.3, 8.4.)

Defendant is not entitled to dismissal of this count.

**Consumer Protection Act (RCW 19.86 *et seq.*)**

Defendant attacks this cause of action on multiple grounds.

*Failure to satisfy FRCP 9(b)*

Defendant cites a long line of cases applying the FRCP 9(b) heightened pleading standard to CPA claims. (*See* Motion at 15.) That standard requires plaintiffs to plead with particularity the time, place, and content of the false representations to which it objects, as well who is responsible for the representations and what is false or misleading about them. In re GlenFed, Wn. Sec. Litigations, 42 F.2d 1541, 1547 n.7, 1548 (9th Cir. 1994).

---

[2] Defendant makes passing reference to an "improper claim splitting" argument, but just refers the Court to its motion for partial summary judgment. This is not an issue for a motion to dismiss.

The heightened standard is applied not only to claims specifically alleging fraudulent misrepresentations, but also to claims which are "grounded in fraud" or "sound in fraud:" claims where a plaintiff alleges "a unified course of fraudulent conduct and rel[ies] on that course of conduct as the basis of a claim." <u>Vess v. Ciba-Geigy Corp.</u>, 317 F.3d 1097, 1103-04 (9th Cir. 2003). Plaintiffs argue that they have not asserted any claims which specifically assert fraud or "sound in fraud."

The Court finds that, while Plaintiffs clearly advocate for the *deceptive* quality of Defendant's conduct, the acts which form the basis of their complaint do not constitute "fraudulent misrepresentations" in the sense that Defendant is not alleged to have intentionally attempted to mislead Plaintiffs through direct misrepresentation. The effect of its conduct is alleged to have been deceptive, but this is not the same thing as alleging that Defendant affirmatively represented that it had a right to do something which, in reality, it had no right to do. In this regard, there is no fraud alleged in the amended complaint which triggers the heightened pleading requirements for which Defendant advocates.

*Not deceptive or unfair*

Defendant argues that dismissal of the CPA is required because its practices are neither deceptive nor unfair.

The seminal CPA case defines "deceptive" as having the "capacity to deceive a substantial portion of the public." <u>Hangman Ridge Riding Stables v. Safeco Title Ins. Co.</u>, 105 Wn. 2d 778, 785 (1985). Defendant argues that Plaintiffs have failed to allege in what way their actions have deceived anyone. In fact, Plaintiffs do allege that "[Defendant's] acts are deceptive because when Safeguard performs them, the property owner is unaware that they are occurring, and such acts are not authorized via any form deed of trust provision." (4AC at ¶ 10.1.3.) It is

1 | not a strong articulation of "deceit" and, interestingly, is *not* what Plaintiffs argue in their brief
2 | when pressed to establish the adequacy of their pleading of "deception." Their briefing relies on
3 | the stronger argument that the act of rekeying deceptively implies that Defendant has a right to
4 | interfere with the class members' possession of their homes, an allegation which appears
5 | nowhere in their complaint.

6 | Defendant's second argument regarding the failure of the "deceptive acts" pleading is
7 | that its conduct has no capacity to deceive a substantial portion of the public because its business
8 | does not "target consumers." Not only does this argument have no appeal in logic (a business
9 | does not have to "target consumers" for its actions to have an impact on the public), but the case
10 | law runs directly contrary to the position. *See* Panag v. Farmers Ins. Co. of Washington, 166
11 | Wn.2d 27, 50 (2009) ("We hold that a private CPA action may be brought by one who is not in a
12 | consumer or other business relationship with the actor against whom the suit is brought.").

13 | Defendant also argues that Plaintiffs have failed to state a claim that its conduct is
14 | "unfair." "Unfairness" can be adequately plead through allegations of conduct that "offends
15 | public policy as established by statutes or the common law." Klem v. Wash. Mutual Bank, 176
16 | Wn.2d 771, 785 (2013)(*citing* Magney v. Lincoln Mut. Savings Bank, 34 Wn.App. 45, 57
17 | (1983)). Safeguard argues that its "[p]roperty preservation activities – including lock changes –
18 | [ ] do not violate any statute." (Motion at 26.) But Jordan calls into question this defense with
19 | its ruling that changing the locks on a home prior to foreclosure is a violation of RCW 7.28.230.
20 | (Jordan, 185 Wn.2d at 888-89.) And Plaintiffs have plead as much in their complaint. (4AC at ¶
21 | 10.1.2.)

While Plaintiffs' pleading of "deceptive" acts is not strong, the statute only requires that the act be "deceptive *or* unfair" and Plaintiffs have adequately plead the "unfair" element of this portion of their CPA claim.

*No acts "in trade or commerce"*

In support of the argument that its activities do not occur "in trade or commerce," Defendant cites to a case which held that, for CPA purposes, trade or commerce "includes only the entrepreneurial or commercial aspects of professional services, not the substantive quality of services provided." Michael v. Mosquera-Lacy, 165 Wn.2d 595, 602-03 (2009). This means, Safeguard claims, that

> 'acts or practices in the conduct of any trade or commerce' only refers to acts or practices intended to solicit, obtain, or retain business, not the acts or practices of actually performing the task for which an entity was hired.

Id. at 603. Defendant claims that, because lock changes are merely "mechanical tasks," this activity cannot be characterized as the kind of "entrepreneurial" conduct that Michael says the CPA is confined to. This is total misreading of the Michael ruling regarding "entrepreneurial" activity, which is clearly aimed at "learned professionals" (Id. at 602; a periodontist in Michael) One has only to look at the Washington Pattern Instructions Committee Comment on WPIC 310.09 ("Trade or Commerce") – a CPA jury instruction – to learn that

> In Michael v. Mosquera-Lacy [*citation omitted*], the Washington Supreme Court held that the Consumer Protection Act applies to only the entrepreneurial activities that are part of professional service business (e.g., medical, legal, and dental practices).

25 Wash. Prac. § 18:310.09 (3d ed.).[3]

---

[3] Further scholarly support may be found in the Washington Practice series: "With regard to claims against professionals *such as doctors and lawyers*, Washington courts have distinguished between those claims that involve the failure to observe the professional standard of care and claims based upon unfair or deceptive practices arising from the entrepreneurial aspects of the profession. An allegation that the professional has breached the standard of

Defendant's business does not fall within the classification of a "learned profession" and its conduct clearly occurs within "trade or commerce" for purposes of the CPA.

*No "public interest" impact*

CPA plaintiffs are required to show "that the challenged acts or practices affect the public interest." Dix v. ICT Group, Inc., 160 Wn.2d 826, 837 (2007)(*citing* Hangman Ridge, 105 Wn.2d at 788). Safeguard cites case law which defines "public interest impact" according to the following factors:

1. Whether the acts were committed in the course of Defendant's business;
2. Whether Defendant advertised to the public in general;
3. Whether Defendant actively solicited the particular Plaintiff; and
4. Whether Plaintiff and Defendant have unequal bargaining positions.

Trujillo v. NW Trustee Svcs., Inc., 183 Wn.2d 820, 836 (2015). Under this test, Defendant's business activities would certainly seem unqualified as regards any "public interest impact" – Safeguard does not advertise to the general public, did not solicit any of the named plaintiffs here, and entered into no bargain with them. However, Defendant neglects to quote the language which follows the Trujillo court's recitation of these factors: "The plaintiff need not establish all of these factors and none is dispositive." Id.

The fact that (1) the acts were unquestionably committed in the course of Safeguard's business and (2) since the Plaintiffs (and the other class members) were not a party to the contract between Safeguard and its lender clients, they were certainly in an unequal bargaining position, is sufficient to satisfy the "public interest" element of the CPA cause of action.

---

care does not give rise to a CPA claim, but an allegation of an unfair or deceptive practice in advertising or billing could be pursued under the CPA." 16 Wash. Prac. §8:2 (4th ed.)(emphasis supplied).

Furthermore, the CPA statute itself states that "a claimant may establish that the act is injurious to the public interest because it… (3)(a) injured other persons; (b) had the capacity to injure other persons or (c) has the capacity to injure other persons." RCW 19.86.093. Plaintiffs' allegations that they and the members of their class were injured by Defendant's actions is sufficient to satisfy the "public interest" requirement.

Defendant's motion to dismiss the CPA claim will be denied.

**Restitution/unjust enrichment**

Plaintiffs do make mention in the latest complaint of their intention to seek restitution. (4AC at ¶ 6.28.7.) Defendant argues that Plaintiffs have not adequately plead either restitution or unjust enrichment. Since Plaintiffs do not state a claim for "unjust enrichment" anywhere in the complaint, the Court will confine its analysis to the restitution issue.

Regarding restitution, Defendant argues that it requires that a benefit be conferred from one party to another (*see* Chem. Bank v. Washington Pub. Power Supply Sys., 102 Wn.2d 874, 910 (1984)), and since it received no benefit from Plaintiffs, any theory of restitution fails. But the same case cited by Defendant also states:

As noted in comment *b* to the Restatement of Restitution § 1 (1937),

> [a] person confers a benefit upon another if he gives to the other possession of or some other interest in money, land, chattels, or choses in action, performs services beneficial to or at the request of the other, satisfies a debt or a duty of the other, or in any way adds to the other's security or advantage.

Id. (citation omitted). It could certainly be said that, in presuming to enter upon Plaintiffs' property to perform its services, Defendant has been "give[n]… some other interest in… land"

from which it unquestionably derives a "security or advantage" (i.e., it gets paid); in other words, a benefit.

And, in fact, the Restatement recognizes a "general rule directing the restitution of benefits obtained through interference with legally protected property interests;" "a conscious wrongdoer will be stripped of gains from unauthorized interference with another's property," while an innocent wrongdoer's liability is the "value obtained in the transaction." Restatement (Third) of Restitution and Unjust Enrichment § 40, cmts. a and b.

Plaintiffs argue, based on case law from Arizona, that restitution is a proper remedy for trespass under the appropriate circumstances. Defendant counters that there is no Washington law supporting this position, and cites to a Washington case holding that a plaintiff may elect to waive rights in tort and sue *in assumpsit* (a quasi-contractual cause of action) for a restitutionary remedy. Olwell v. Nye & Nissen Co., 26 Wn.2d 282, 286 (1946). But Olwell is a 1946 case, and the Arizona cases' citation to the Restatement (*see above*) is equally applicable here. If the Court were to predict what a Washington court would do in these circumstances, it would predict that the state would recognize restitution as a remedy for trespass in the same fashion.

Defendant's final argument in this regard is that, because there is a valid contract in place which is the object of Plaintiffs' claims, their sole remedy is in contract, not in the quasi-contractual theory of unjust enrichment and its related damages theory of restitution. It is not a sound argument. As the Honorable John C. Coughenour of this district pointed out in Reading Hospital v. Anglepoint Group, Inc. "claims for unjust enrichment and restitution are unavailable *where a contract is the subject of the suit and provides the basis for relief.*" 2015 WL 13145347 at *2 (W.D. Wash. May 26, 2015)(emphasis supplied). Not only is Safeguard not a party to the contract which purported to provide them the right to enter Plaintiffs' property, but it is not the

deed of trust which is the subject of this suit nor does it provide the basis for the relief which Plaintiffs seek.

**Motions to strike**

*Defendant's motion to strike class allegations*

Defendant objects to language in the most recent amended complaint which purports to seek certification of a class that includes homeowners who allege that they seek damages based on "conversion," a cause of action which was previously dismissed. (Dkt. No. 212, Order at 1.) Plaintiffs acknowledge that they have stipulated there is no conversion claim and they are amenable to amending the complaint to conform to the class definition which is already in place. Since neither the Court nor any of the parties is under the belief that conversion is still an operative cause of action in this litigation, the amendment is not necessary.

*Plaintiffs' motion to strike*

In their responsive brief, Plaintiffs first move to strike any reference to Safeguard's policy documents. Although they acknowledge that their complaint does contain some "reference to the existence of Safeguard's policies" (Response at 12), Plaintiffs argue that Defendant's citation of 92 pages of policy documents is overreaching. But the Court is free to consider documents expressly referenced in the complaint (Biltmore Assoc's, LLC v. Twin City Fire Ins. Co., 572 F.3d 663, 665 n.1 (9th Cir. 2009)) and Defendant cites *17* references to Safeguard's policies and procedures in the Fourth Amended Complaint. (*See* Reply at 7 n.2.) The motion to strike all references to Safeguard's policy documents is denied.

Plaintiffs conclude their request to strike with a lengthy paragraph full of line citations to Safeguard's statement of facts which they claim should be stricken as "not supported" in the complaint or cited document. (Response at 13.) But Plaintiffs' "laundry list" approach is

completely devoid of any explanation of *how* the cited items are not supported, basically leaving the Court to figure out what they mean by their objections. The Court will not reward this shotgun approach to evidentiary rulings. The Court, in accordance with the 12(b)(6) standards, has treated all factual allegations of the 4AC as true and disregarded any factual allegation of Defendant's to the contrary. Plaintiffs' motion to strike will be denied in this regard as well.

**Conclusion**

Plaintiffs' Fourth Amended Complaint satisfies the requirements of FRCP 12(b)(6) and the Iqbal/Twombly standards. Having found that Plaintiffs have adequately stated claims upon which relief may be granted, Defendant's motion to dismiss will be denied.

The clerk is ordered to provide copies of this order to all counsel.

Dated August 16, 2018.

*[signature]*

The Honorable Marsha J. Pechman
United States Senior District Court Judge