UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JOHN R. BUND II, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>SAFEGUARD PROPERTIES LLC,<br><br>Defendant. | CASE NO. C16-920 MJP<br><br>ORDER ON CROSS-MOTIONS<br>FOR SUMMARY JUDGMENT |

The above-entitled Court, having received and reviewed:

1. Plaintiffs' Motion for Summary Judgment (Dkt. No. 242), and Defendant's Opposition to Plaintiffs' Motion for Summary Judgment (Dkt. No. 276);

2. Defendant's Motion for Partial Summary Judgment (Dkt. No. 245), Plaintiff's Response to Defendant's Motion for Partial Summary Judgment (Dkt. No. 269), and Safeguard's Surreply and Motion to Strike (Dkt. No. 278); and

3. all attached declarations and exhibits, and relevant portions of the record,

rules as follows: IT IS ORDERED that motion for summary judgment of preclusion of all claims on the basis of claim splitting is DENIED. IT IS FURTHER ORDERED that the motion for dismissal of Plaintiffs' statutory claims for all pre-Jordan class members is GRANTED.

The Court declines to rule on Plaintiffs' requests for summary judgment on the trespass and Washington Consumer Protection Act ("CPA") claims at this time.

## Background

Defendant Safeguard Properties LLC is in the "property preservation" business. At the behest of lenders, investors and loan servicers, Safeguard hires vendors to enter the properties of borrowers in default whom it believes have vacated or abandoned the premises and perform various preservation services; among them, replacing the locks on primary or secondary doors of the residences to permit future access for further preservation services (e.g., "winterizing" a home).

Defendant and its clients derive their authority for such activities from "entry provisions": clauses in form contracts which purport to allow the mortgagor and its agents or assignees to enter into a property where the loan is in default but before foreclosure has actually been finalized. At the heart of this litigation is Jordan v. Nationstar Mortgage LLC 185 Wn.2d 876 (2016), wherein the Washington Supreme Court determined that such provisions violated RCW 7.28.230 and were unenforceable. Id. at 883-84.

In January 2018, this Court certified the following class:

> All current and former citizens of Washington State who own or owned residential property in Washington State subject to a loan that was in default, which residence was entered by Safeguard or its agents and the lock(s) changed prior to completion of a foreclosure and within the applicable statute of limitations.

(Dkt. No. 204, Order Certifying Class at 2.)

## Discussion

Standard and Scope of Review

The legal standard governing the granting of summary judgments is well known. Summary judgment is appropriate where the non-moving party lacks competent evidence to establish a *prima facie* case. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The moving party meets its burden by showing that the non-moving party lacks the requisite evidence; once that showing is made, the burden shifts to the non-moving party to rebut the movant's proof. Id. at 325. Summary judgment is warranted where the non-moving party fails to demonstrate the existence of an element essential to the case on which that party bears the burden of proof. Id. at 322-23.

It was the Court's intention that the parties brief, in the form of cross-motions, two issues which appeared capable of quick resolution on strictly legal principles: (1) whether the claims of plaintiffs who were involved in other, similar class actions against mortgage companies (e.g., Plaintiff Bund, who is a member of the Jordan class) were precluded from proceeding on the grounds of an impermissible practice of "claim splitting"; and (2) whether Defendant could be held liable for statutory violations for its conduct prior to Jordan. It is to these issues which the Court turns its attention here.

Preclusion on the Basis of Claim Splitting

Both sides acknowledge that the Court has *discretionary* authority to dismiss claims on this basis, which is basically, a modified, pre-trial version of *res judicata*/collateral estoppel. M.M. v. Lafayette Sch. Dist., 681 F.3d 1082, 1091 (9th Cir. 2012). The Court finds, on balance, that the factors favor *not* exercising its discretion in this manner.

1       As an initial matter, the Court notes that the cases Defendant cites in support of its position (Seattle-First Nat'l Bank v. Kawachi, 91 Wn.2d 223 (1978); Rains v. State, 100 Wn.2d 660 (1983); Knuth v. Beneficial Washington, Inc., 107 Wn.App. 727, 732 (2001)) are, at best, only partially helpful. Defendant's legal authority is comprised of rulings concerning classic *res judicata*/collateral estoppel situations; i.e., secondary litigation in the wake of prior concluded cases (finalized by judgment, settlement, or dismissal) where the movant is arguing that dismissal of the later-filed cases is <u>mandatory</u> because of the pre-existing judgment. These cases are only partially useful in providing guidance in the circumstance where the primary litigation is pending (i.e., not concluded) and a defendant is arguing for a discretionary act of preclusion based on the existence of the other, ongoing lawsuit. The Court understands that many of the basic principles of identity of issues and parties and other concerns of equity and jurisprudence are equally applicable, but the situations are not the same, the difference is fundamental, and Defendant does little to explain how the principles in one context translate to the facts before this Court.

      That being said, the Court has applied the principles and justifying rationales for preclusion based on *res judicata*/collateral estoppel and finds that the following factors mitigate strongly against a finding of preclusion on the basis of "claim splitting":

<u>Unnecessary</u>: The remedy sought by Defendant operates, if at all, to protect a party from multiple suits – Defendant has not been named in any of the other suits which it claims should have a preclusive effect on this litigation.

<u>Untimely</u>: One of the principle benefits of the application of the doctrine is judicial economy. This lawsuit is over two years old and that benefit has now been lost (not to mention

that one of the lawsuits which Defendant argues should be accorded preclusive effect – Haynes v. Bank of Am., No. 18-5190BHS (W.D. Wash.) – is only about six months old).

Different Parties: Defendant has not been named as a party in any of the other "preclusive" suits. Defendant cites authority that *res judicata*/collateral estoppel has been found where the defendants were in privity with each other (Ensley v. Pitcher, 152 Wn. App. 891, 902 (2009)) and where the named plaintiffs in a pending suit were class members in a previous (settled) class action. Knuth, 107 Wn. App. at 732. Plaintiffs argue that no contracts were produced, but it is undisputed at this point that Defendant was hired by Nationstar (and many other mortgage service entities).[1] This factor weighs in Defendant's favor to some extent, but that weight is counterbalanced by the fact that the named Plaintiffs here are not named Plaintiffs in any of the other suits and, therefore, had no control over which entities were named as Defendants and which were not. Chief Judge Rice, presiding over the Jordan matter in federal court, observed:

> Nationstar and Safeguard's concern on double recovery is not persuasive where this risk can be easily addressed by providing the defendant with an offset against any recovery that the overlapping Class members obtain in their litigation.

Jordan v. Nationstar, No. 14-0175TOR, Dkt. No. 332 (E.D. Wash. Apr. 16, 2018). This Court is guided by Judge Rice's wisdom in this regard.

Plaintiffs suggest, almost as an aside, that if the Court is concerned about claim splitting it could transfer this matter to the Eastern District of Washington and let Judge Rice consolidate it with his matter. Defendant filed a surreply to strike this portion of the briefing; the Court does

---

[1] Plaintiffs also suggest that the fact that the contracts (which they clearly have examined) identify Defendant as an "independent contractor" may account for Defendant's failure to submit them. The Court, however, has already ruled that Defendant's vendors were acting as its agents (see Order Certifying Class, Dkt. No. 204 at 16) and no party has argued that Defendant was not (1) contracted by its clients to perform its services and/or (2) is not the agent of the mortgage lenders and servers which employed it and, thus, in privity with them.

not find it necessary as (1) Plaintiffs are not actually requesting transfer and consolidation at this time and (2) the Court would naturally require a formal motion and more considered argument and analysis before seriously considering transferring the matter anywhere.

The Court declines to exercise its discretion regarding a finding of preclusion based on claim splitting. Defendant's motion in that regard is denied. If there is a judgment or settlement in Jordan before this case is concluded, Defendant can bring a dispositive motion on *res judicata*/collateral estoppel grounds at that stage.

Pre-Jordan Statutory Claims

Defendant also moves for dismissal of all statutory claims against it with regard to any "property preservation" activities conducted before the Washington Supreme Court's ruling in Jordan. Defendant divides its arguments on why it should not be held liable for any pre-Jordan conduct into CPA and statutory trespass sections, but the arguments on both claims effectively are that Defendant had no reason, prior to Jordan, to know that what it was doing was violative of Washington law.

Regarding the CPA, Defendant cites case law that an act is not "unfair" (relative to the CPA requirement of an "unfair or deceptive act") if it is "done in good faith under an arguable interpretation of existing law." Perry v. Island Saving & Loan Assoc., 101 Wn.2d 706, 810-11 (1984). And violation of RCW 4.24.630 requires "wrongfully injur[ing] personal property or improvements to real estate" where an act is "wrongful" only "if the person intentionally and unreasonably commits the act or acts while knowing, or having reason to know, that he or she lacks authorization to so act."

Defendant provides a long list of the factors that it relied upon in assuming, pre-Jordan, that it was permitted to provide its property preservation services post-default/pre-foreclosure;

chief among them, it relied on its clients "to ensure their loan agreements [were] in compliance with the law." (Dkt. No. 276, Defendant's Response at 23.) Other reliance factors included communications with the Washington Attorney General's Office[2], the ongoing licensing of its vendors by the state's Labor Industry Board (Dkt. No. 247, Decl. of DeVet, Ex. F at 16-17), its membership in industry groups which provide updates on the law, and the complete absence of any pre-Jordan judicial determination that the entry provisions were improper.

Plaintiffs' counterargument focuses on a single point: at no time did Defendant undertake any legal investigation or analysis of the legality of the lock changes or any other conduct based on the entry provisions. Plaintiffs basically seek a ruling that the absence of any legal research and analysis concerning the legality of Defendant's conduct equates to a *per se* absence of "good faith" reliance on an "arguable interpretation of existing law." They cite no case authority for this argument and the Court finds no appeal in precedent, logic, or intuition. The idea that every business must conduct ongoing legal research and analysis to ensure that its services comport with the law belies common sense; lay people (and businesses) have to be able to rely on the sophistication of their clients, the ongoing endorsement (even by *non*-action) of government agencies, and the absence of any official judicial determination that something is illegal as proof that their conduct is permissible. It is neither reasonable nor fair to expect the public to perform legal research before they conduct *any* business endeavor; they must be able to rely on other indicators of legality, including those cited by Defendant here.

Additionally, Plaintiffs cite to (1) the antiquity of the statute which the Jordan court determined had been violated by the entry provisions (RCW 7.28.230 is over 100 years old) and

---

[2] In 2014, the Washington Attorney General ("AG") issued a Civil Investigative Demand to Safeguard which resulted in audits of ten of its property files; the AG's review resulted in no action being taken against Defendant, including no indication that the AG believed that the mortgage contracts' entry provisions were illegal or otherwise unenforceable. (Dkt. No. 247, Decl. of DeVet, Exs. K-L.)

(2) a number of pre-Jordan cases which upheld the absolute possessory rights of homeowners pre-foreclosure[3] as further evidence that Defendant had reason to know that it was acting without authority in entering on their property. Plaintiffs quote language from the Jordan opinion ("Our case law is clear that Washington law prohibits a lender from taking possession of property before foreclosure . . ."; "Under any definition [of 'possession'], the conduct allowed under the entry provision constitutes possession . . .;" 185 Wn.2d at 884, 887-88)) to corroborate their argument that it should have been "obvious" that what Defendant was doing was impermissible.

Basically, these are all just variations on the "Defendant should have done its legal research" argument and are all negated by the combined facts that (1) prior to Jordan, no other court thought these entry provisions were unenforceable, and (2) even the Jordan decision was 6-3, indicating that reasonable minds could differ on this outcome.

Furthermore, Plaintiffs should be judicially estopped from claiming that Jordan was obvious – or, as they put it, "not a momentous declaration of new law" (Dkt. No. 242 at 17-18) – on the grounds that they have previously argued that "Jordan signals a *significant and critical change in the law* by the Washington Supreme Court." (Dkt. No. 37, Plaintiffs' Reply in Support of Motion for Leave to File Second Amended Complaint at 5; emphasis supplied.) Judicial estoppel exists to prohibit the practice of claiming that the law means one thing in one instance, but a different thing in another instance when it suits a party's purposes.

All things considered, the Court finds Defendant has the better argument that, prior to Jordan, it rightfully and in good faith relied on a variety of evidence that its business practices were legal.

---

[3] Howard v. Edgren, 62 Wn.2d 884, 885 (1963); Western Loan & Bldg. Co. v. Miffin, 162 Wn. 33, 39-42 (1931); Norfor v. Busby, 19 Wn. 450, 453 (1898).

One other point deserves to be addressed. Plaintiffs conclude their briefing on this issue by pointing out that "not unfair" is not the same thing as "not deceptive;" i.e., the CPA addresses practices which are "unfair *or* deceptive," and the "acts done in good faith under an arguable interpretation of existing law" argument only addresses the "unfair" portion of the equation. There is case law that provides that

> . . . the terms "unfair" and "deceptive" are separate concepts. While [Defendant's] good faith may not be a defense to a claim that it engaged in deceptive practices, [its] good faith is a defense to a claim that its practices were per se unfair.

Watkins v. Peterson Enter., 57 F. Supp. 2d 1102, 1111 (E.D. Wash. 1999) (citations omitted).

The distinction is not lost on the Court, but in this instance, is still not sufficient to persuade it that Defendant can be held liable for CPA violations pre-Jordan. First, Watkins is another District Court case, so has persuasive value at best. Second, the case says good faith "*may not* be a defense" to a claim of deceptive practices; not "cannot" or "is not."[4] Third, Plaintiffs cite the Jordan holding that a lock change is "deceptive because it had the capacity to lead borrowers to believe they could no longer occupy their homes" (2017 WL 5616362 at *7) in support of their "deceptive even if not unfair" argument. But Plaintiffs' Fourth Amended Complaint did not allege that Defendant's conduct was deceptive on that basis (as this Court pointed out in the recently-filed Order on Motion to Dismiss; *see* Dkt. No. 319 at 8-9).

The Court finds this "good faith" argument is equally applicable to the claims of statutory trespass pre-Jordan; i.e., a party acting on a good faith belief that their conduct is within the law cannot "know[], or hav[e] reason to know, that he or she lacks authorization to so act." Defendant is entitled to summary judgment as a matter of law on its request that it be held not

---

[4] Plaintiffs' brief states categorically that Watkins stands for the holding that "there is no good faith defense to a claim that conduct was deceptive under the CPA" (Plaintiffs Response at 30); that is not what the case says.

liable on the statutory claims against it for any conduct occurring prior to the issuance of the <u>Jordan</u> opinion.

<u>Plaintiffs' Motion for Summary Judgment</u>

Plaintiffs also requested summary judgment on their claims of trespass and violations of CPA. The Court finds at this juncture that it would be premature to rule on the additional issues brought by Plaintiffs. The parties will be able to assess how to most effectively proceed with this litigation once they have digested this ruling and the upcoming ruling on the pending motion to decertify the class.

## **Conclusion**

The Court DENIES summary judgment to Defendant on the issue of preclusion on the basis of claim splitting and GRANTS summary judgment to Defendant on the issue of its non-liability on the statutory claims against it for any pre-<u>Jordan</u> conduct.

The clerk is ordered to provide copies of this order to all counsel.

Dated August 20, 2018.

Marsha J. Pechman
United States District Judge