UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JOHN R. BUND II, et al., | CASE NO. C16-920 MJP |
| Plaintiffs, | ORDER ON MOTION FOR DECERTIFICATION OF CLASS |
| v. | |
| SAFEGUARD PROPERTIES LLC, | |
| Defendant. | |

The above-entitled Court, having received and reviewed:

1. Defendant Safeguard Properties Management LLC's Motion to Decertify Class (Dkt. No. 309), Plaintiffs' Response to Defendant's Motion to Decertify Class (Dkt. No. 321), Defendant's Reply in Support of Its Motion to Decertify Class (Dkt. No. 323), and Plaintiffs' Surreply and Motion to Strike Portions of Defendant's Reply in Support of Its Motion to Decertify Class (Dkt. No. 327);

2. Plaintiffs' Supplemental Brief Regarding Defendant's Motion to Decertify Class (Dkt. No.332), and Defendant Safeguard Properties Management LLC's

1    Supplemental Brief on the Impact of the Court's Ruling Dismissing Pre-Jordan

2    Statutory Claims on the Issue of Decertifying the Class (Dkt. No. 335);

3        3.   Defendant Safeguard Properties LLC's Supplemental Authority Regarding Motion to

4             Decertify Class (Dkt. No. 340);

5        4.   Letter from Clay M. Gatens (Dkt. No. 344)[1];

6    all attached declarations and exhibits; and relevant portions of the record, rules as follows:

7        IT IS ORDERED that Plaintiffs' motion to strike portions of Defendant's evidence and

8    briefing is PARTIALLY GRANTED and PARTIALLY DENIED.

9        IT IS FURTHER ORDERED that the motion to decertify the class and dismiss this action

10   is GRANTED.

11

12                              **Background**

13       The above-entitled case is a putative class action challenging the legality of Defendant's

14   "property preservation services" on homes which have gone into default but not yet been

15   foreclosed.   Defendant's services run the gamut from winterization to lawn care, but it is the

16   practice of removing and replacing locks on the homes that is the focus of this litigation.   The

17   case alleges causes of action for trespass (statutory and common law) and Consumer Protection

18   Act violations, and is one of a related series of cases in the State of Washington brought against

19   mortgage holders and their agents regarding these post-default, pre-foreclosure practices.[2]

20

21   ───────────────────

22   [1] While the Court received and reviewed this document, it was not considered in reaching the Court's final decision; *see infra* at § II.D, "Plaintiffs' Counsel/Class Counsel."

23   [2] Jordan v. Nationstar Mortg., LLC, No. 14-cv-00175-TOR, E.D. Wash. (Rice, J.); Haynes v. Bank of America, N.A., No. 18-cv-05190-BHS, W.D. Wash. (Settle, J.); Bess v. Ocwen Loan Servicing, LLC, No. 15-cv-0520-BHS, W.D. Wash. (Settle, J.); Rhodes v. Wells Fargo Bank, N.A., No. 17-cv-00093-SMJ, E.D. Wash. (Mendoza, J.);

24   Britton v. ServiceLink Field Services, LLC, No. 18-cv-00041-TOR, E.D. Wash. (Rice, J.).

This matter was originally filed in Island County Superior Court in Washington State; at that time, the sole named plaintiff was John R. Bund II ("Bund"), who was identified in the caption and the pleadings as "Executor of the Estate of Richard C. Bund, deceased." (Dkt. No. 1-1.) Defendant removed the matter to federal court on June 16, 2016. (Dkt. No. 1.)

A second amended complaint was filed on January 4, 2017, adding as proposed representatives Mandy and Garett Hanousek ("the Hanouseks"). (Dkt. No. 44.) One year later, the Hanouseks were dismissed based on the Court's finding that their only evidence that Safeguard's agents had been at their home (a Safeguard sticker on their door) – unaccompanied by any evidence that the company had actually been hired to perform preservation activities on their property at that time – was insufficient to survive summary judgment. (Dkt. No. 203.)

A third amended complaint was filed on June 20, 2017, and a third class representative was proposed: Plaintiff Crystal Haynes ("Haynes"). (Dkt. No. 82.) On February 7, 2018, Haynes was dismissed on the basis of a joint stipulation that she was not only not a typical class member, she was not even a member of the certified class. (Dkt. No. 217.)

On January 12, 2018, the Court certified a class in this matter, defined as

> All current and former citizens of Washington State who own or owned residential property in Washington State subject to a loan that was in default, which residence was entered by Safeguard or its agents and the lock(s) changed prior to completion of a foreclosure and within the applicable statute of limitations.

(Dkt. No. 204 at 2.) At that point, the only remaining named plaintiff was Bund, still in his capacity as the executor of the Bund Estate.

In March 2018, the parties stipulated to the entry of a fourth amended complaint, which (among other things) added a fourth set of plaintiffs, S. Scott and Noel James ("the Jameses"). (Dkt. No. 224.) Defendant filed the instant motion for decertification in July of 2018; while that motion was still pending, the Court issued rulings on a series of dispositive motions. (Dkt. Nos.

319, 320.)  Most relevant to the pending motion was a summary judgment ruling which held that the class would not be permitted to pursue its statutory claims (violations of statutory trespass and the Washington Consumer Protection Act ["CPA"]) for any act of Defendant which occurred prior to the Washington Supreme Court's decision in <u>Jordan</u>.  (Dkt. No. 320.)  Both Bund and the Jameses are "pre-<u>Jordan</u>" plaintiffs.

Also relevant to the outcome of this motion was the discovery by Defendant that, in February 2013, Bund (acting as the personal representative of the Bund Estate) had undertaken to create the Richard C. Bund Family Trust ("the Trust"), and in November of that same year had transferred ownership of the property at issue in this litigation ("the Property") to the Trust.  (*See* Dkt. No. 310, Decl. of Allen, Exs. C, D, and Q.)   Thus, at the time that the lawsuit was filed and at the time that the class was certified with Bund as its sole named plaintiff and class representative, the Estate did not have title to the Property at issue.[3]

Plaintiffs responded to this situation initially by filing a Motion to Substitute Party, requesting that Bund in his capacity as Trustee for the Trust be substituted for Bund in his capacity as Executor/Personal Representative of the Estate.  (Dkt. No. 287.)  Prior to the noting date, however, Plaintiffs withdrew that motion.  (Dkt. No. 308.)  Bund opted instead to prepare a Non-Judicial Binding Agreement ("NJBA;" Dkt. No. 322, Decl. of Terrell, Ex. 1) which was signed by all the beneficiaries of the Estate and purported to render the creation of the Trust a nullity on the grounds that Bund had no authority to transfer the Property to the Trust.[4]

---

[3] The Court notes that Plaintiffs dispute this characterization; *see* Discussion section *infra* at § II.B for the analysis of the "Trust v. Estate" issue.

[4] "The beneficiaries further agree that because the transfer of the Property to the Trust was invalid it shall be deemed as if it never occurred and the trust never existed…"  <u>Id.</u> at 4.

Of further relevance to these proceedings is the fact that settlements have been reached (pending final approval) in two related matters: Jordan v. Nationstar Mortgage, LLC, *supra*; and Rhodes v. Wells Fargo Bank, N.A., No. 2:17-cv-00193-SMJ (E.D. Wash.)("Wells Fargo"). (*See* Terrell Decl., Exs. 3 and 4.) Both settlement proposals contain "opt-out" requirements; i.e., class members must affirmatively exclude themselves from receiving a payout from the settlement. (Id.) Bund is a member of the Jordan class, and neither side disputes that the Jordan and Wells Fargo classes overlap with the class certified with this lawsuit. Neither side disputes that accepting a settlement in either case would operate to release Safeguard from liability to the settling class member. However, Plaintiffs represent (without citation to the record) that Bund "has previously stated his intention to exclude himself and his father's estate from the Nationstar settlement." (Dkt. No. 321, Response at 7.)

Finally, there is one additional aspect of this case which is germane to the Court's ruling herein. Although the Court certified a class in this matter, class counsel was never appointed, as required by FRCP 23(g)(1). While the absence of any formal motion in this regard[5] serves as a partial explanation for this oversight, at the end of the day it is the Court's duty to attend to such requirements and the Court bears the responsibility for the omission. (*See* "Plaintiffs' Counsel/Class Counsel" section of the Discussion *infra* at § II.D.)

---

[5] Plaintiffs' Motion to Certify merely included, in portions of two sentences in the brief, a request to "appoint Jeffers, Danielson, Sonn & Aylward, P.S. as Class counsel" without supporting argument or documentation. (Dkt. No. 86 at 11, 31.)

# Discussion

## I.      Motion to Strike

Preliminarily, the Court will address the motions to strike raised in Plaintiffs' Surreply. (Dkt. No. 327.)

1. Declaration of Goffe (Dkt. No. 325): Goffe is an attorney with Stoel Rives produced by Defendant to provide "expert testimony" on the legality of the NJBA and the other documents associated with the transfer of the Bund Property from the Trust to the Estate. Goffe was not listed as an expert witness, thus depriving the opposition of the opportunity to question her or challenge her expertise. Further, the submission of the "expert legal opinion" of a lawyer hired by Defendant appears to the Court as several pages of extra argument dressed up as an evidentiary attachment. The motion to strike the Declaration of Goffe is GRANTED.

2. Chart of inconsistent statements (Dkt. No. 324, Ex. J): This is a 6-page, single-spaced chart of "contradictory statements of plaintiff and plaintiff's counsel" which includes argument on why the statements are erroneous/inconsistent. This also appears to simply be additional briefing disguised as evidence. The motion to strike it is GRANTED.

3. Excerpts from Bund Deposition (Dkt. No. 324, Ex. C): Plaintiffs object to the citations in Defendant's Reply to a deposition taken two days after Plaintiffs' Response was filed, and argue that it should be stricken because they had no opportunity to correct the "mischaracterizations" of Bund's testimony. The Court is capable of comparing Bund's

actual testimony to Defendant's characterization of Bund's testimony and determining where that characterization has strayed from what was actually said.  DENIED.

4. "Binding judicial admissions:" In its Reply, Defendant characterizes a group of statements and legal documents Bund signed as "Trustee" of the now-defunct Bund Family Trust as "binding judicial admissions."  (Reply, § III.B.3.)  Plaintiffs object to this characterization appearing for the first time in a reply brief and further assert that there is no such legal concept as "binding judicial admissions;" i.e., if what Defendant is trying to assert is "judicial estoppel," it must prove that Plaintiffs obtained a benefit or advantage from the prior admissions, which it failed to do.  New Hampshire v. Maine, 532 U.S. 742, 750-51 (2001).  Defendant was aware of the "Trust v. Estate" issue prior to the filing of the motion and the Court sees no reason Defendant could not have raised this contention in its opening brief.  The Court GRANTS the motion to strike and will disregard this portion of Defendant's argument.

5. Defendant's argument re: Order on Cross-Motions for Summary Judgment (Reply, § III.B.3): Plaintiffs object to Defendant's argument/characterizations of what the Court meant in its Order on Cross-Motions for Summary Judgment, issued after Plaintiffs' response but before Defendant's reply.  In view of the fact that the Court later ordered briefing from both sides on the impact of that order, the Court finds this request moot.  DENIED.

## II.  Motion to Decertify

### A.  Legal Standard

The Court enjoys considerable discretion in its consideration of class decertification or modification.  United Steel v. ConocoPhillips Co., 593 F.3d 802, 809 (9th Cir. 2010)("[A]

district court retains the flexibility to address problems with a certified class as they arise, including the ability to decertify.")  Decertification is a "drastic step," not to be taken lightly.  3 Newburg on Class Actions § 7:37 (5th ed. 2011.).  "Prior to decertification, the Court must consider all options available to render the case manageable."  <u>Chisolm v. TranSouth Financial Corp.</u>, 194 F.R.D. 538, 554 (E.D. Va. 2000).

Decertification is appropriate if the existing class fails to meet the requirements of Rule 23.  Decertification may be warranted if the class lacks adequate representation (<u>Phillips Petroleum Co. v. Shutts</u>, 472 U.S. 797, 812 (1985), *citing* <u>Hansberry v. Lee</u>, 311 U.S. 32, 42-43 (1940)), if the Court finds as the case develops that the evidence fails to support the predominance of common issues (<u>Kelley v. Microsoft</u>, 2009 WL 413509 (W.D. Wash. 2009)), or if the class counsel requirements of FRCP 23(g) are not met.  <u>Sheinberg v. Sorenson</u>, 2007 WL 496872, at *3 (D. N.J. 2007)(*citation omitted*).

## B.  Lack of Standing

Standing cannot be waived and must be present in every case.  <u>United States v. Hayes</u>, 515 U.S. 737, 742 (1995).  Standing is determined as of the date that the action is filed (<u>Roe v. Ferguson, 515 F.2d 279</u>, slip op. at 3 (6th Cir. 1975)), and subsequent changes or developments do not cure lack of standing if none existed when the action was commenced.  <u>Senter v. General Motors Corp.</u>, 532 F.2d 511, 520 (6th Cir. 1976).

Whether the Estate had standing to sue is determinative of the survival of this action.  At the time that the suit was initiated, Bund was the sole named plaintiff; following certification, he was the sole class representative.  At all times, he was designated as a plaintiff by virtue of his position as Executor for the Bund Estate.  If the Estate had no standing, the Court never had

jurisdiction over the subject matter of this litigation, a defect which cannot now be cured retroactively.

Plaintiffs attempt to resolve this dilemma in two ways. First, they argue that the NJBA (1) represents public and legal acknowledgement that Bund (as Executor) never had the authority under the will to create the Trust in the first place, and (2) renders the Trust a nullity and "re-sets" the circumstances of the ownership of the Property back to its status prior to the creation of the Trust. The NJBA was created under the authority of RCW 11.96A.010 *et seq*., and Plaintiffs contend that the statute gives the beneficiaries the power to resolve any matter in a fashion which "shall be binding and conclusive on all persons interested in the estate and the trust." RCW 11.96A.220.

The Court agrees that the beneficiaries may resolve amongst themselves to do anything with the Estate that is legally permissible, and that any such agreement is "binding and conclusive *on all persons interested in the estate and the trust*." But that is the defining parameter and limit of the NJBA. Plaintiffs have presented no authority that such an agreement is legally binding on anyone who does <u>not</u> have an interest in the estate and/or the trust; that is, in this case, anyone else (e.g., the public at large or the courts) who might have relied on the representation by Bund that the Trust had title to the Property. For purposes of this proceeding, the NJBA has no effect on the fact that Bund filed a lawsuit on behalf of the Estate regarding a property to which the Estate did not hold title at the time of filing. He had no standing to file this suit and the Court had no jurisdiction over it.

Second, Plaintiffs presented for the first time at the hearing on this motion a related argument that, because Bund had no authority under the will to create the Trust, the Estate was <u>always</u> the holder of title to the Property and thus suit was properly brought by Bund in his role

as Executor. The Court observes that (1) the argument has never been briefed and was presented without citation to legal authority and (2) the supporting evidence alluded to at oral argument[6] was created after the "Estate v. Trust" issue came to light and is vigorously challenged by Defendant on the basis of both the terms of the will which define Bund's power as Executor/Personal Representative and legal documents concerning the Property executed by Bund in the name of the Trust as late as July of 2018.[7]

It is the finding of this Court that, on the basis of the legal status of the Property at the initiation of the lawsuit, Bund had no standing as Executor of the Estate to bring suit. In the absence of standing on the part of the sole named plaintiff at the outset of the litigation, the law of the Ninth Circuit is clear: the class must be decertified and the matter dismissed. Lierboe v. State Farm Mut. Auto. Ins. Co., 350 F.3d 1018, 1022 (9th Cir. 2003).

Plaintiffs attempt to distinguish Lierboe on the grounds that the dismissal of the plaintiff in that case meant there was no named plaintiff at all, whereas the Jameses are currently named as plaintiffs in this lawsuit and available to substitute as class representatives. This distinction avails Plaintiffs nothing. In the first place, standing is determined as of the date the lawsuit was filed – at that point, Bund was the only named plaintiff. Because the only named plaintiff had no standing on that date, the court had no jurisdiction over the case, a defect which cannot be remedied by the later addition of other plaintiffs.

Furthermore, the Lierboe court did consider the scenario which confronts this Court; namely,

---

[6] Plaintiffs' counsel cited Dkt. No. 334, Ex. A, a "Personal Representative Deed" signed by Bund on August 14, 2018 in his capacity as the Estate's Personal Representative.

[7] See "Addendum/Amendment to Purchase Sale Agreement" executed by Bund in the name of the "Richard C. Bund Family Trust." Dkt. No. 324, Ex. G.

whether the suit must be dismissed without more, or if other proceedings may follow under which it may be possible that the suit can proceed as a class action with another representative, subject to the district court's assessment whether a substitute representative is adequate for Rule 23 class purposes.

Id. at 1023. Lierboe is clear: the class representative's lack of standing could not be cured by substituting another representative, and dismissal is required. Id. Here, the case for dismissal is even stronger, as the proposed substitute is a plaintiff named two years after the initiation of the suit.

Defendant's motion is granted: the class will be decertified and this matter dismissed without prejudice.

### C. Adequacy of Class Representation

Although the Court has made a determinative ruling on decertification on the basis of Bund's lack of standing, in the interests of completeness (and being mindful of the likelihood that this decision will be appealed), this order will address the further subject of Bund's suitability as a class representative above and beyond the standing issue.

FRCP 23(a)(4) requires that the class representative fairly and adequately represent the interests of the class. The Court finds, in the first place, that Bund is no longer a typical nor an adequate representative for this class. The Court's ruling that pre-Jordan class members (including Bund and the Jameses) cannot assert the statutory liability claims available to the post-Jordan class members is sufficient in and of itself to render Bund atypical. Even Plaintiffs concede "Plaintiffs are probably not adequate to represent the entire class." (Dkt. No. 332, Plaintiffs' Supp. Brief at 4.)

Despite Plaintiffs' representation that Bund intends to opt out of the Jordan settlement, the Court continues to be troubled by the impact of both settlements on the viability of this class. First, the Court has seen no indication that Bund's intention reflects the will of the remainder of

the beneficiaries of the Bund Estate who will be impacted by a decision to release the bird in the hand for the possible two in the bush – a concern justified by evidence that Bund created the Trust which has so thoroughly muddied the waters of this case without the knowledge of the other family members/beneficiaries.  (*See* Allen Decl., Ex N at 47:21-23, Ex. O at 32:23-25).  Second, the Court is concerned that the settlements may impact the ability of Plaintiffs' counsel to effectively and ethically represent the interests of clients who are members of overlapping lawsuits, some with settlements and some currently without.  That issue is analyzed in depth in the "Plaintiffs' Counsel/Class Counsel" section *infra* at § II.D.

The Court is also mindful of the principle that "certification is inappropriate where a class representative is subject to unique defenses which threaten to become the focus of the litigation." Hanon v. Dataproducts Corp., 976 F.2d 497, 508-09 (9th Cir. 1992).  Setting aside for a moment (a) the ultimate legal impact of Bund's creation of the Trust; (b) Bund's transfer of the Property to the Trust; (c) Bund's failure to apprise apparently even his own counsel of that fact for several years; and (d) his last-minute attempt to rectify the error by creating a legal document which purports to undo the creation of the Trust, the Court is concerned that the "Estate v. Trust" issue has already created a legal "tempest in a teapot" that threatens to occupy counsel for both sides (and the Court) for some time to come.

Plaintiffs argue that (1) Bund as Personal Representative of the Estate had no power to transfer title to the Property to the Trust and (2) the NJBA is a legally-sanctioned and effective means to render the Trust a nullity and establish an enforceable legal fiction that the Estate was always the holder of title; Defendant argues that Bund had full authority under the will to create the Trust and the NJBA is a legal "sham" which cannot operate to undo the ongoing misrepresentation (intentional or not) resulting from Bund's failure to divulge the Trust's

ownership of the Property. Were the Court to permit Bund to remain as class representative, there is no doubt that this issue would continue to demand the attention of all concerned for months to come, in a case which is already over two years old. The Court must agree with Defendant on this point: it is hard to imagine a clearer example of a class representative "subject to unique defenses."

As concerning as the Court finds all these factors, they are not ultimately determinative of the decertification issue. The Court is mindful that "[p]rior to decertification, the Court must consider all options available to render the case manageable." Chisolm, 194 F.R.D. at 554. Plaintiffs propose two alternatives to decertification in the face of Bund's unsuitability:

(1) *Sending notices to absent class members inviting those whose locks were changed post-Jordan to join as class representatives*: Plaintiffs cite FRCP 23(d)(1)(B) as authority for this unusual procedure, but the Court finds no support for such a step in the language of that rule, and Plaintiffs cite no further authority or precedent permitting them to use the judicial mechanisms created to manage class actions for the purpose of advertising for class representatives for their litigation.

(2) *Revising the class definition to include only pre-Jordan members*: Under other circumstances, this might have been an acceptable alternative to decertification. The class still has a set of named, pre-Jordan plaintiffs, the Jameses. Under the Court's rulings to date, the pre-Jordan portion of the class still has colorable claims for common law trespass. Redefining the class would appear, under other circumstances, to be an alternative to decertification. However, the Court has determined that this lawsuit, in which the only named plaintiff had no standing to sue, cannot be permitted

to go forward.  Given the configuration of this case, there is no alternative to decertification.

### D.  Plaintiffs' Counsel/Class Counsel

While the Court has acknowledged its responsibility in neglecting to appoint class counsel at the point of certification, the ruling decertifying the class and dismissing the lawsuit essentially renders the issue of the appointment of class counsel moot; there is no class to represent, and no case to prosecute.

However, given that there is at least one set of plaintiffs extant with colorable pre-Jordan claims and that Plaintiffs' counsel has indicated their belief that a class could be certified for post-Jordan claims if they can find a suitable named plaintiff or plaintiffs, the Court takes this opportunity to express its concern over potential representation problems which arose over the course of this case.

Specific to the confines of this particular case, the Court notes that three of the four plaintiffs (or "sets" of plaintiffs in the case of the two married couples named in the suit) proposed as class representatives have been found unsuitable for various reasons.  Counsel stipulated to the Haynes' dismissal, and has essentially conceded that neither Bund nor the Jameses are suitable representatives for the class as currently defined.  Plaintiffs' attorney respectfully stated for the record his disagreement with the disqualification of the Hanouseks.  However, the Hanouseks' only proof of liability was a sticker placed on their door, unaccompanied by any documentary evidence that Defendant had been hired to be on their property at that time.  The Hanouseks are, at best, far below standard as class representatives (*see* "subject to unique defenses" discussion *supra* at § II.C.).  Counsel's pattern of bringing suit on

behal of plaintiffs whose qualifications and/or standing are at best questionable suggests a push to litigation that is not yet ripe or simply may be ill-advised.

Of further concern is counsel's practice of filing multiple related lawsuits in various jurisdictions, and the potential for inconsistent rulings which this practice creates. There are complex legal issues here upon which reasonable judicial minds could differ, and the very real possibility for different outcomes on one or more of the legal principles involved raises the specter of wasted judicial resources, not to mention inviting accusations of forum shopping.

Even more troubling to the Court, however, are the potential conflicts of interest raised by the prosecution of multiple class action lawsuits throughout the state, cases with such closely-related legal and factual issues that, inevitably, the class members begin to overlap from suit to suit. Predictably, settlements in one or more of the matters force overlapping members to choose between lawsuits and between possible outcomes/paydays (the "bird in the hand" situation alluded to *supra*), choices which impact not only the overlapping members themselves but also the other members in the various classes, where quotas for minimum numbers of "opt-in" class members determine the viability of the settlement.

The potential for conflict extends even further as it becomes necessary for Plaintiffs' counsel to advise their clients about which settlement offers to accept and which to decline. Plaintiffs' counsel initially represented at oral argument that it is not counsels' job – indeed, may even be *unethical* – to advise their clients whether to take a settlement offer or not. (*See* Dkt. No. 344.)

Counsel attempted to refine/revise this representation with a letter to the Court which, although reviewed, will not be taken into consideration in the course of this analysis. (*See* Dkt. No. 344.) It is an inappropriate vehicle by which to communicate with the Court regarding a

pending motion – there is no provision for it in the Federal Rules of Civil Procedure, and no mechanism for the opposing side to respond.

In any event, counsel's position on the issue one way or the other would not alter the Court's understanding of the function and obligation of a competent, ethical legal representative. Attorneys are required to advise their clients on the advisability of accepting settlement offers, and when advising a client to accept a settlement may impact the likelihood of a successful resolution for members of other classes which counsel may also be representing in other cases[8], ethical concerns threaten to overtake expediency, efficiency, or any of the other rationales for waging these multi-front, multi-lawsuit legal battles.

And it is not only the fact that advising one client to take a settlement may impact other clients or class members in other cases involving the same counsel. Exercising that fundamental responsibility of representation in an area of litigation where successful settlements rise or fall on the number of class members who accept them also means, in the contingency-driven world of class action litigation, that it will ultimately impact the lawyers' own "paydays." It is a situation ripe for conflict and the Court expresses its concern for that potential and hopes that current counsel will take that concern under advisement in this (and future) class litigation.

## Conclusion

Because standing is determined at the time of filing and the class's sole named plaintiff and class representative had no standing to sue in his capacity of Executor/Personal Representative at the time this lawsuit was filed, this Court had no jurisdiction over this matter

---

[8] The Court is equally clear that, once an attorney is appointed as class counsel, he or she is representing the *entire* class, with the attendant professional and ethical obligations to all members, "absent" or not.

from the beginning. Ninth Circuit law dictates that such a situation requires a decertification of the class and a dismissal without prejudice of the lawsuit, and it is so ordered.

The clerk is ordered to provide copies of this order to all counsel.

Dated October 19, 2018.

The Honorable Marsha J. Pechman
United States Senior District Court Judge