UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JOHN R. BUND II, et al.,<br><br>              Plaintiffs,<br><br>       v.<br><br>SAFEGUARD PROPERTIES LLC,<br><br>              Defendant. | CASE NO. C16-920 MJP<br><br>ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

This matter comes before the Court on Defendant's Motion for Summary Judgment. (Dkt. No. 372.) Having reviewed the Motion, the Opposition (Dkt. No. 377), the Reply (Dkt. No. 379), and all supporting materials, the Court GRANTS the Motion.

**BACKGROUND**

Plaintiffs Scott and Noel James claim that Defendant Safeguard Properties LLC trespassed at their home in Wenatchee when it replaced the lock on an exterior door. It is uncontested that Safeguard replaced the lock on one of three exterior doors at the behest of the Jameses' lender, Bank of America, after the Jameses defaulted on their loan and after the

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 1

1  Jameses vacated the house. The Parties agree that the deed of trust securing the Jameses' house
2  stated that Bank of America (or its agent) could "inspect the Property if the Property is vacant or
3  abandoned or the loan is in default." (Exhibit 5 to the Declaration of Jaime Allen (Dkt. No. 375-5
4  at 5 (Deed of Trust § 5).) And the Parties agree the deed of trust stated that Bank of America (or
5  its agent) could "take reasonable action to protect and preserve such vacant or abandoned
6  Property." (Id.)
7       Notwithstanding these undisputed facts, the Parties tussle over whether the Jameses have
8  shown any competent evidence of damages. Although their initial disclosures identified a range
9  of damages, the Jameses concede in their opposition that the only damages they claim relates to
10 the lock change. (Compare Allen Decl. Ex. 43 (Dkt. No. 374-28 at 7-9) with Pls. Opp. (Dkt. No.
11 377 at 17-18).) To prove damages the Jameses rely exclusively on a bill from Safeguard to Bank
12 of America. (Dkt. No. 374-15 at 2.) The bill invoiced Bank of America for: (1) "Deadbolt . . . 1
13 @ $20.00"; (2) "Lock Changed . . . 1 @ $40"; (3) "Lockbox Installed . . . 1 @ $35." (Allen Decl.
14 Ex. 35 (Dkt. No. 374-15 at 2).) The Jameses provide no testimony from Safeguard or anyone to
15 explain what the invoice line items reflect. The Jameses offer no other evidence of the damages,
16 though they make passing reference to expert testimony that may be used to prove classwide
17 damages. (Dkt. No. 377 at 18.)

18                                    **ANALYSIS**

19 **A.    Legal Standard**

20       Summary judgment is proper "if the pleadings, the discovery and disclosure materials on
21 file, and any affidavits show that there is no genuine issue as to any material fact and that the
22 movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether
23 an issue of fact exists, the Court must view all evidence in the light most favorable to the
24

1  nonmoving party and draw all reasonable inferences in that party's favor. Anderson v. Liberty
2  Lobby, Inc., 477 U.S. 242, 248-50 (1986). A genuine issue of material fact exists where there is
3  sufficient evidence for a reasonable factfinder to find for the nonmoving party. Id. at 248. The
4  moving party bears the initial burden of showing that there is no evidence which supports an
5  element essential to the nonmovant's claim. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).
6  Once the movant has met this burden, the nonmoving party then must show that there is a
7  genuine issue for trial. Anderson, 477 U.S. at 250. If the nonmoving party fails to establish the
8  existence of a genuine issue of material fact, "the moving party is entitled to judgment as a
9  matter of law." Celotex, 477 U.S. at 323-24.

10 **B.    Abandonment Not a Defense**

11      Safeguard argues that abandonment is a defense to intentional and negligent trespass
12 notwithstanding the decision in Jordan v. Nationstar Mortg., LLC, 185 Wn.2d 876 (2016). The
13 Court disagrees.

14      "[I]t is well settled that Washington law prohibits lenders from taking possession of
15 borrowers' property before foreclosure." Jordan, 185 Wn.2d at 884. The court's longstanding
16 interpretation of "RCW 7.28.230(1) . . . mean[s] that a mortgagor's default does not disrupt the
17 mortgagor's right to possession of real property, and that the mortgagor retains the right to
18 possession until there has been foreclosure and sale of the property." Id. at 885 (citing Howard v.
19 Edgren, 62 Wn.2d 884, 885 (1963)). So a deed of trust provision allowing the lender to take
20 possession of a borrower's property prior to foreclosure "conflict[s] with a Washington law that
21 prohibits a lender from taking possession of property prior to foreclosure." Id. at 879.

22      Considering the facts before it, the Court in Jordan found that the deed of trust's entry
23 provisions ran afoul of RCW 7.28.230(1). There, the deed of trust allowed for Nationstar to
24

1  "secure" the property after default or abandonment. Jordan, 185 Wn.2d at 884. The Court
2  concluded that "because the [relevant deed of trust] provisions allow Nationstar to take
3  possession of the property after default, [it] conflicts with the statute." Id. at 879. The Court's
4  decision turned in part on the fact that Nationstar had installed a new lock on the sole point of
5  entry. This, the Court concluded, was an assertion of control and therefore possession over the
6  plaintiff's home in violation of RCW 7.28.230(1). Id. at 887 ("Under any definition, the conduct
7  allowed under the entry provisions constitutes possession because Nationstar's actions satisfy the
8  key element of possession: control.") The Court noted that "rekeying the property also had the
9  effect of communicating to Jordan that Nationstar now controlled the property" and that it "left
10 Jordan with no method of entering her own property." Id. at 888.

11      Considering the decision in Jordan, the Court finds that the entry provision in the
12 Jameses' deed of trust invalid. While the deed allows for lock replacement only in the event of
13 abandonment, the Court finds that this still violates the principals set out in Jordan—that any act
14 of possession prior to foreclosure violates RCW 7.28.230(1). See Jordan, 185 Wn.2d at 884-85.
15 And the Court finds that Safeguard's replacement of the lock of one of several doors was an
16 assertion of control sufficient to constitute possession. Id. at 887. Changing a lock interfered with
17 the James's sole and exclusive ownership of the house because it gave Safeguard the right to
18 access the property as it wished. The fact that the Jameses still had two other points of access
19 does not undermine Safeguard's assertion of control. It strains credulity to think that a reasonable
20 homeowner would feel in full possession of their home if a stranger installed its own lock, even
21 just on one of several doors. Nor is the Court convinced that the outcome in Jordan turned on the
22 fact that Nationstar replaced the lock on the only point of entry. The Court in Jordan considered
23 that fact but noted more the broader effect of the "rekeying [of] the property . . . [which] had the
24

effect of communicating to Jordan that Nationstar now controlled the property." Id. at 888. That same principal applies here even if there were other points of entry.

Safeguard argues that Jordan is limited to deeds of trusts that allow for entry upon default alone, and has no bearing on the enforceability of deed of trust provision like the Jameses' that allows for entry only upon abandonment. The Court disagrees. The Jordan Court's decision is far broader than what Safeguard posits. The Court acknowledged that "the [deed of trust's entry] provisions authorize the lender to enter and rekey the property solely upon default, regardless of whether the borrower has abandoned the property." Jordan, 185 Wn.2d at 884. But the Court did not suggest that the deed provision could have been saved had Jordan abandoned the property. Moreover, the Court cited favorably Howard v. Edgren, a Supreme Court case which held that "[a] mortgagor does not lose his right to the possession of mortgaged real property by failing to make payments on the mortgage, or by moving out of the community." Howard v. Edgren, 62 Wn.2d 884, 885 (1963) (emphasis added). If abandonment could have saved the deed of trust at issue in Jordan, then the Court would not have cited Howard—a case that flatly undermines Safeguard's position. The Court therefore rejects Safeguard's reading of the Jordan case.

Safeguard's reliance on two other Supreme Court cases does not convince the Court that a mortgagee's possession upon abandonment comports with RCW 7.28.230. (Dkt. No. 372 at 20-22 (citing Zane v. Hinds, 136 Wash. 352 (1925); Crook v. Tudor, 28 Wn.2d 289 (1947)). Both Zane and Crook concerned real estate contracts—not mortgages. This fact matters. A seller in a real estate contract does not relinquish title to the property until the entire contract is completely paid. See Ashford v. Reese, 132 Wash. 649, 650 (1925) ("[A]n executory contract of sale in this state conveys no title or interest, either legal or equitable, to the vendee. . . ."); 18 Wash. Practice § 21.2 ("The essence of the real estate contract (REK) is that a purchaser of land promises to pay

an agreed price for it over a period of time, and the vendor promises to convey title when he has fully paid."). In both <u>Zane</u> and <u>Crook</u>, the real estate contract seller returned to secure the property after abandonment but before the real estate contract was complete. In both instances, this was not a trespass because the seller still held title. <u>See</u> <u>Ashford</u>, 132 Wash. at 650; 18 Wash. Practice § 21.2. This stands in contrast to a mortgage, where the lender has no right to possession before foreclosure. <u>See</u> RCW 7.28.230(1); <u>Jordan</u>, 185 Wn.2d at 879. The Court is also unpersuaded by Safeguard's argument that there is no functional difference between a real estate contract and a mortgage. (<u>See</u> Dkt. No. 379 at 10 (citing <u>Tomlinson v. Clarke</u>, 118 Wn.2d 498, 509-10 (1992); <u>In re McDaniel</u>, 89 B.R. 861, 869 (Bankr. E.D. Wash. 1988)).) Neither <u>Tomlinson</u> nor <u>McDaniel</u> considered whether estate contracts are identical to mortgages with regard to pre-foreclosure possession or RCW 7.28.230. Neither decision offers support for Safeguard's argument. And neither case holds that real estate contracts are subject to RCW 7.28.230(1), the statute on which the <u>Jordan</u> decision turns. The Court rejects Safeguard's reliance on <u>Zane</u> and <u>Crooks</u>.

Lastly, the Court disagrees with Safeguard's argument that <u>Jordan</u> carved out abandonment as a potential affirmative defense to trespass claims. The Court in <u>Jordan</u> made no such ruling despite the fact that it was relevant to the deed of trust at issue which allowed for entry upon abandonment. The dissent in <u>Jordan</u> believed that abandonment is a defense to trespass. <u>See</u> <u>Jordan</u>, 185 Wn.2d at 896-97. But that opinion did not persuade the majority. Had the majority agreed, it would have so stated because it would have impacted the resolution of the claims once the case returned to the District Court after the Supreme Court answered the certified questions. And had the majority agreed with the dissent, it would not have endorsed the <u>Howard</u> decision, which stands for the proposition the mortgagor retains possession even if they

"mov[e] out of the community." Howard, 62 Wn.2d at 885. Unless and until the dissent's view becomes the majority, the Court rejects Safeguard's position.

**C.      Good Faith Not a Defense**

Safeguard also argues that even if the deed of trust's entry provision is invalid and that abandonment is not a defense, then it faces no liability because it reasonably believed the deed of trust legally authorized the entry before Jordan was decided. (Dkt. No. 372 at 22.) This argument conflates two unrelated concepts and does not withstand scrutiny.

The first concept Safeguard appears to address is the principle that consent is an affirmative defense to trespass. See Bradley v. Am. Smelting & Refining Co., 104 Wn.2d 677, 682, 689 (1985) ("In trespass an intentional invasion of the plaintiff's possession is itself a tort, and liability follows unless the defendant can show a privilege.") But as the Jameses correctly point out, a mistaken belief as to consent is not a valid defense. Under Section 164 of the Restatement (Second) of Torts, "[o]ne who intentionally enters land in possession of another is subject to liability to the possessor of the land as a trespasser, although he acts under a mistaken belief of law or fact, however reasonable. . . ." See also 87 C.J.S. trespass § 33. So even if Safeguard believed it had consent flowing from the deed of trust, the affirmative defense is inapplicable because the deed of trust's entry provision is invalid. Safeguard tries to sidestep this fact by selectively quoting Comment D from Section 167 of the Restatement (First) of Torts. This comment states in relevant part that "the delivery of a deed believed to be valid <u>and intended to transfer an interest in land,</u> is a consent to an entry by the intended grantee, although the deed is void." Restatement (First) of Torts § 167 cmt. d (emphasis added). Safeguard omits the underlined portion with no explanation. (Dkt. No. 372 at 22-23.) The omitted language is

dispositive and undermines Safeguard's position, because there is no evidence the Jameses' deed of trust intended to convey an interest to Bank of America.

From the principle of consent, Safeguard then argues that its own belief about the validity of the deed of trust's entry provision before Jordan was decided negates the third element of the Jameses' intentional trespass claim: "reasonable foreseeability that the act would disturb the plaintiff's possessory interest." Hurley v. Port Blakely Tree Farms L.P., 182 Wn. App. 753, 772 (2014) (quoting Wallace v. Lewis Cty., 134 Wn. App. 1, 15 (2006)). Safeguard argues that before Jordan was decided "Safeguard could [not] reasonably foresee that its conduct would disturb the James' possessory interest." (Dkt. No. 372 at 22.) There are two problems with this argument. First, the test of foreseeability is an objective one. See Hurley, 182 Wn. App. at 772. Whatever Safeguard subjectively believed is irrelevant. Second, an invalidly-obtained consent to entry does impact the plaintiff ability to show that the defendant's rekeying of a door was a reasonably foreseeable act that disturbed the plaintiff's possessory interest in the home. Unremarkably, Safeguard cites to no case law supporting its argument. The Court finds no merit to the strained arguments Safeguard presses.

**D.    The Jameses Fail to Show Damages**

The Court finds that Safeguard is entitled to summary judgment because the Jameses provide no competent evidence to sustain a claim of damages for either trespass claim.

To prove their intentional trespass claim the Jameses must demonstrate: "(1) an invasion of property affecting an interest in exclusive possession, (2) an intentional act, (3) reasonable foreseeability that the act would disturb the plaintiff's possessory interest, and (4) actual and substantial damages." Hurley, 182 Wn. App. at 772; see Bradley v. Am. Smelting & Refining Co., 104 Wn.2d 677, 692 (1985). To succeed on their negligent trespass claim, the Jameses must

| | |
|---|---|
| 1 | prove: "duty, breach, injury, and proximate cause." Id. The proper measure of damages is |
| 2 | relevant to the Motion. If a trespass is "permanent, the damages would be the reduction in market |
| 3 | value due to [the trespass], and if it was temporary, the damages would be the cost of restoration |
| 4 | and the loss of use." Keesling v. City of Seattle, 52 Wn.2d 247, 253 (1958); see also Colella v. |
| 5 | King County, 72 Wn.2d 386, 393 (1967). Regardless of the precise nature of damages, they |
| 6 | "must be supported by competent evidence." Transpac Dev., Inc. v. Oh, 132 Wn. App. 212, 221 |
| 7 | (2006). "Evidence is sufficient if it affords a reasonable basis for estimating the loss and does not |
| 8 | subject the trier of fact to speculation and conjecture." Id. Once a party establishes damages, they |
| 9 | "will not be denied recovery on the basis that the amount of damage cannot be exactly |
| 10 | ascertained." Id. |
| 11 |      The Jameses appear to argue that the trespass was temporary and that they are entitled to |
| 12 | restoration damages only—a point not squarely addressed in the briefing which cites no |
| 13 | authority. (Dkt. No. 377 at 17-18.) The Jameses' argue that they "must prove that they suffered |
| 14 | actual and substantial damages from Safeguard drilling out the lock on their door and replacing it |
| 15 | with Safeguard's own lock." (Dkt. No. 377 at 17.) And they identify the cost of "remov[ing] |
| 16 | Safeguard's lock and replac[ing] it with their own" as the measure of damages. (Id. at 18.) In |
| 17 | other words, the Jameses have identified a temporary trespass, whose damages are measured by |
| 18 | the cost of restoration. See Keesling, 52 Wn.2d at 253. |
| 19 |      The Jameses fail to identify any competent evidence of the restoration damages. First, the |
| 20 | Jameses do not provide any evidence of what actions are necessary to restore the lock to its pre- |
| 21 | trespass condition—a functioning lock over which the Jameses had exclusive control. The |
| 22 | Jameses do not provide evidence of why complete replacement is necessary as opposed to any |
| 23 | other act, such as rekeying the lock or simply obtaining all of the keys Safeguard possessed. |
| 24 | |

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 9

Second, even assuming the lock must be replaced, the Jameses provide no competent evidence from which a fact finder could reasonably determine damages or that such damages would be "actual and substantial." The Jameses cite to no evidence of any costs they personally incurred or any estimates of the cost to restore the lock. There is no evidence of any personal harm or costs incurred. Instead, the Jameses rely exclusively on the billing invoice from Safeguard to Bank of America and argue that it "reflects the physical damage done to the Jameses' home when Safeguard changed the lock." (Dkt. No. 377 at 17.) But the invoice does not reflect an injury to the Jameses or the cost of restoration—the critical inquiry. Construed in the Jameses' favor, the document only shows what Safeguard invoiced Bank of America for lock change-related services. (Dkt. No. 374-15 at 2.) The invoice refers tersely to "Deadbolt" and "Lock Changed" without any explanation of what work was performed, how much time was spent, or the cost of any of the materials.[1] The Jameses offer no testimony from Safeguard to explain the invoice or whether the billed amounts reasonably reflect the costs that are necessary to give the Jameses exclusive control over a functional lock. The invoice does not show damages the Jameses' incurred or would incur to restore the lock. This invoice alone is not competent evidence of restoration damages because it does not provide "a reasonable basis for estimating the loss" and would "subject the trier of fact to speculation and conjecture." Transpac, 132 Wn. App. at 221. The Jameses try to paper this gap by suggesting that "[i]t would have cost the Jameses' at least that much to remove Safeguard's lock and replace it with their own." (Dkt. No. 377 at 18.) But this attorney argument merely confirms the speculative nature of the evidence. This single invoice does not contain sufficient evidence of the cost of restoration and it cannot sustain the

---

[1] The invoice also has an entry for "Lockbox Installed." (Dkt. No. 374-15 at 2.) This cost appears entirely unrelated to the cost of the installation of the new lock and the Jameses nowhere explain that this work would be necessary to any calculation of restoration damages.

damages element of either trespass claim. Even if the invoice were acceptable evidence, it does not show an "actual and substantial" damage to the property where the cost of restoration (rekeying or replacement) is de minimis or minor. See Grundy v. Brack Fam. Tr., 151 Wn. App. 557, 568 (2009) (finding no actual or substantial damages where plaintiff's property suffered water intrusion and damage the yard). Safeguard is entitled to judgment as a matter of law on both claims.

**E.   Class Representation**

Safeguard also asks the Court to find that the Jameses are not adequate or typical class representatives. The Court agrees in part as to typicality.

**1.   Adequacy**

Rule 23(a)(4) requires the class representatives "to fairly and adequately protect the interests of the class." This factor requires: (1) that the proposed representative plaintiff have no conflicts of interest with the proposed class; and (2) that plaintiffs are represented by qualified and competent counsel. See Hanlon v. Chrysler Corp., 150 F.3d 1011, 1020 (9th Cir. 1998).

Safeguard makes three attacks to the James' adequacy.

First, Safeguard argues that the Jameses cannot be adequate class representatives because they are members of another putative class action pending in this District where the plaintiff is represented by the same counsel: Haynes v. Bank of America, N.A., No. C18-5190 BHS (W.D. Wash.). The Jameses note that in Haynes no class has been certified and the case has been stayed. While the Court has concerns about potential conflicts, they are not apparent at this stage of the litigation. The Court does not find this a basis to deem the Jameses inadequate.

Second, Safeguard argues that the Jameses do not know enough about this case to be adequate representatives and have essentially abandoned their role to counsel. The Court disagrees. It is hardly surprising that the Jameses do not know every twist and turn that this 5-

year old case has taken. In a case on which Safeguard relies, the court noted that "[i]t is not necessary that a representative be intimately familiar with every factual and legal issue in the case[;] rather, it is enough that the representative understand the gravamen of the claim." Lee v. Pep Boys–Manny Moe & Jack of Cal., No. 12-CV-05064-JSC, 2015 WL 9480475, at *10 (N.D. Cal. Dec. 23, 2015). Here, the Jameses understand the gravamen of the action even if they are not intimately familiar with every facet of the action. The Court does not find this as a basis to find them inadequate representatives.

Third, Safeguard attacks the Jameses' credibility. While Safeguard has pointed out some inconsistencies in the Jameses' testimony, the Court is not convinced the Jameses are incredible on the core factual issues relevant to their claims in this case. This is not a basis on which the Court finds them to be inadequate class representatives

**2.     Typicality**

Typicality is satisfied if "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." Ellis v. Costco Wholesale Corp., 657 F.3d 970, 984 (9th Cir. 2011) (citation and quotation omitted).

Safeguard makes three arguments against the Jameses' typicality.

First, Safeguard correctly argues that the Jameses are not typical because they have not shown any evidence of damages. Because typicality requires the Jameses to have the "same or similar injury" to the class, the Court finds that they lack typicality necessary to be class representatives. See Ellis, 657 F.3d at 984.

Second, Safeguard argues the Jameses are not typical because they cannot pursue claims on behalf of the proposed class whose members may have statutory trespass and Consumer Protection Act claims. But because these two claims are no longer at issue in this case, and the Jameses have not yet asked for a specific class to be certified, the Court finds that this not fatal to their typicality.

Third, Safeguard argues that the Jameses will be subject to unique defenses because they abandoned the property or because their locks were changed before Jordan was decided. Because the Court has found both defenses invalid, neither impacts typicality.

**F.     Motion to Strike**

The Jameses move to strike page 72 lines 3-12 and page 99 lines 1-10 of the deposition of Diane Lang. Lang is a nonparty witness who was not represented by counsel. During the deposition, Safeguard's attorney, John Robinson asked her questions. After Robinson stated on the record that he had completed his questioning, a second attorney for Safeguard, Leonid Feller, then took another 32 pages of testimony. Feller did not explain why he needed to ask questions, and the transcript reflects aggressive questioning. As the excerpt below shows, Feller engaged in argumentative and intimidating lines of questions:

> Q. Ma'am, I need you to listen very carefully to my questions.
>
> A. I'm trying to.
>
> Q. You aren't trying to. And I'm going to remind you, again, that you are testifying here under oath and under penalty of perjury, okay? And I will not hesitate to refer to the Court if I believe that you're not being candid and truthful in your testimony, okay?
>
> So again, I'm asking you very simple and very straightforward. Do you have a specific recollection in your mind – don't tell me what you believe, don't tell me what must have happened. Don't tell me what you thought happened.

1  I'm asking you, do you have a very specific recollection in your mind of seeing Noel go to a door with a set of keys on this occasion on some year and some date you can't tell?
2  Do you remember seeing -- do have an image of that in your minds?

3  A. At this point, I cannot be sure.

4  Q. So the answer to my question is no, you can't remember actually seeing her go to a door?

5  
6  A. I cannot be sure.

7  Q. So the answer to my question is no, you do not remember that?

8  A. That's what you're saying. I'm saying I cannot be sure.

9  Q. You can't be sure of what?

10  A. What you're inferring, that she went to the door and whichever door it was. I mean you –

11  Q. Ma'am, I'm not inferring anything. This is your testimony. All I'm trying to get your testimony which you're refusing to give.

12  
13  A. And I'm trying to give it to you.

14  Q. Well, again, is the answer to my question no, you do not have a specific recollection in your mind of Noel going to a door with a set of keys?

15  A. Yes, I do.

16  (Lang Dep. at 78:21-80:7).

17  Feller's decision to ask Lang questions after his colleague completed his examination was

18  improper. Rule 30(c)(1) requires depositions to be conducted as they would "at trial." And under

19  this District's Local Rules, only one attorney may question a witness at trial. See Local Rule

20  43(a)(2). Read together, these rules permit only one attorney to question a witness at a

21  deposition. Safeguard points to a Ninth Circuit decision which held that two attorneys

22  questioning one witness is not "per se" abuse. See Rockwell Int'l, Inc. v. Pos-A-Traction Indus.,

23  Inc., 712 F.2d 1324, 1325 (9th Cir. 1983). But here the record shows that Feller's decision to ask

24

questions was unnecessary and his conduct during the deposition unreasonably aggressive. The Court therefore STRIKES the testimony on page 72 lines 3-12 and page 99 lines 1-10. The Court reminds Feller and all counsel that they must conduct themselves in a respectful manner during a deposition, just as they would in open court before the Court and public. Browbeating witnesses, particularly unrepresented nonparty witnesses, is inexcusable and improper.

## CONCLUSION

The two trespass claims the Jameses pursue require competent evidence of actual and substantial damages to allow the jury to reasonably determine the loss. The threadbare evidence the Jameses identify does not suffice. As the Jameses' own briefing confirms, they ask the finder of fact to speculate as to the damages. This is improper. The Court GRANTS the Motion for Summary Judgment and Safeguard is entitled to judgment as a matter of law on both trespass claims. Separately, the Court notes that the Jameses are not typical plaintiffs as required by Rule 23.

The clerk is ordered to provide copies of this order to all counsel.

Dated April 20, 2021.

Marsha J. Pechman
United States Senior District Judge